# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### (MILWAUKEE DIVISION)

|  |  |  |
|---|---|---|
| NANCY A. STENCIL, DANIEL C. RUSSLER, LISA C. MUELLER, CHERYL L. MARANTO, GERARD D. LISI, JAMES B. KURZ, MARGARET L. DEMUTH, PAUL DEMAIN, JAMES R. BOTSFORD and RICHARD BECHAN, | § § § § § § § § § | |
|  | § | Case No: 2:22-cv-00305 |
| *Plaintiffs*, | § § | Hon. Lynn Adelman |
| v. | § § | |
| RONALD H. JOHNSON, THOMAS P. TIFFANY, and SCOTT L. FITZGERALD, | § § § § | |
| *Defendants*. | § § | |

---

## DEFENDANTS THOMAS P. TIFFANY AND SCOTT L. FITZGERALD'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants Thomas P. Tiffany and Scott L. Fitzgerald, by and through their counsel of record, Dickinson Wright PLLC and Schober Schober & Mitchell, S.C., hereby file this Motion to Dismiss Plaintiffs' Complaint. This Motion is brought pursuant to Fed. R. Civ. P 12(b)(1) & (6), and is supported by the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, and any oral argument this Court may consider.

Dated: April 15, 2022

Respectfully submitted,

*/s/ Charles R. Spies*

Charles R. Spies (MI Bar # P83260)
Dickinson Wright PLLC
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
(202) 466-5964
(844) 670-6009 (Fax)
cspies@dickinsonwright.com

Robert L. Avers (MI Bar #P75396)
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 623-1672
(844) 670-6009 (Fax)
ravers@dickinsonwright.com

Thomas G. Kreul (WI Bar #1003947)
Schober Schober & Mitchell, S.C.
2835 South Moorland Road
New Berlin, WI 53151-3743
(262) 785-1820
tgkreul@schoberlaw.com

*Attorneys for Defendants Thomas P. Tiffany
and Scott L. Fitzgerald*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## (MILWAUKEE DIVISION)

| | | |
|---|---|---|
| NANCY A. STENCIL, DANIEL C. RUSSLER, LISA C. MUELLER, CHERYL L. MARANTO, GERARD D. LISI, JAMES B. KURZ, MARGARET L. DEMUTH, PAUL DEMAIN, JAMES R. BOTSFORD and RICHARD BECHAN, | § § § § § § § | |
| | § | Case No: 2:22-cv-00305 |
| *Plaintiffs*, | § § | Hon. Lynn Adelman |
| v. | § § | |
| RONALD H. JOHNSON, THOMAS P. TIFFANY, and SCOTT L. FITZGERALD, | § § § § | |
| *Defendants*. | § § | |

## DEFENDANTS THOMAS P. TIFFANY AND SCOTT L. FITZGERALD'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................... 4

    A. The Parties ................................................................................................ 4

    B. Plaintiffs' Allegations ............................................................................... 4

III. LEGAL STANDARDS ........................................................................................ 5

    A. Subject Matter Jurisdiction ....................................................................... 5

    B. Failure to State a Claim upon which Relief can be Granted ..................... 6

IV. ARGUMENT ...................................................................................................... 6

    A. The Complaint must be dismissed because Plaintiffs lack standing to seek a declaratory judgment. ................................................................... 7

        1. Plaintiffs have not suffered any legally cognizable injury .......... 8

        2. Plaintiffs' alleged injury cannot be redressed by a favorable decision. ...................................................................................... 13

    B. This Court does not have authority to issue a declaratory judgment because the Constitution vests each House with the sole authority to determine the qualifications of its Members. ......................................... 14

    C. Any decision by this Court would constitute an improper advisory opinion. .................................................................................................. 19

    D. The issue of whether Defendants are qualified for reelection is not ripe. ........... 21

    E. The manner in which the Legislature exercises its discretion in determining the qualifications of its Members is a political question. ............... 22

    F. Plaintiffs' Complaint fails to state a claim upon which relief can be granted. .................................................................................................. 26

V. CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) .................................................................. 7

*Amling v. Harrow Indus. LLC*, 943 F.3d 373 (7th Cir. 2019) ................................................. 7, 21

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ................................................ 28

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .............................. 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 6, 28

*Azul–Pacifico Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir. 1992) ................................... 27

*Baker v. Carr*, 369 U.S. 186 (1962) ................................................................................... passim

*Barkley v. O'Neill*, 624 F. Supp. 664 (S.D. Ind. 1985) ............................................................. 24

*Barry v. United States ex rel. Cunningham*, 279 U.S. 597 (1929) ............................ 13, 16, 17, 18

*Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728 (7th Cir. 1994) ..................................... 27

*Becker v. Fed. Election Comm'n*, 230 F.3d 381 (1st Cir. 2000) ...................................... 11, 12, 13

*Belknap v. Bd. of Canvassers of Ionia Cnty.*, 54 N.W. 376 (Mich. 1893) ................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 6

*Bell v. Hood*, 327 U.S. 678(1946) ........................................................................................... 28

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) .............................................................. 11, 12, 13

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)
.................................................................................................................................... 28, 29

*Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102 (1974) ............................................. 21

*Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021) ................................................. 6

*Burchell v. St. Bd. of Election Comm'rs*, 68 S.W.2d 427 (Ky. 1934) ......................................... 16

*Burns-Toole v. Byrne*, 11 F.3d 1270 (5th Cir. 1994) ................................................................ 27

*Cale v. City of Covington, Va.*, 586 F.2d 311 (4th Cir. 1978) .................................................... 28

*Coleman v. Miller*, 307 U.S. 433 (1939) .................................................................................. 20

ii

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923) ................................................ 8

*Cox v. McCrery*, 2007 WL 97142 (W.D. La. Jan. 5, 2007) ........................................................ 16

*Crist v. Comm'n on Pres. Debates*, 262 F.3d 193 (2d Cir. 2001) ............................................... 13

*Davis v. Passman*, 442 U.S. 228 (1979) .................................................................................. 28

*Dyer v. Blair*, 390 F. Supp. 1291 (N.D. Ill. 1975) ..................................................................... 20

*Ex parte Levitt*, 302 U.S. 633 (1937) ................................................................................ 9, 11

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ............................................ 6

*Fairchild v. Hughes*, 258 U.S. 126 (1922) ................................................................................. 8

*Foster v. Ctr. Twp. of LaPorte Cty.*, 798 F.2d 237 (7th Cir. 1986) ............................................ 8

*Gammage v. Compton*, 548 S.W.2d 1 (Tex. 1977) ................................................................... 15

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) ............................................................................ 9, 11

*Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989) .................................. 29

*Golden v. Zwickler*, 394 U.S. 103 (1969) ................................................................................ 20

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ............................................................................ 28

*Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618 (D.C. Cir. 1998) ............................................ 12

*Hansberry v. Lee*, 311 U.S. 32 (1940) ..................................................................................... 20

*Hartman v. Moore*, 547 U.S. 250 (2006) ................................................................................. 28

*Hedges v. Dixon County*, 150 U.S. 182 (1893) ........................................................................ 28

*Hernandez v. Mesa*, 140 S.Ct. 735 (2020) .............................................................................. 28

*Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016) ......................................................................... 6

*I.N.S. v. Pangilinan*, 486 U.S. 875 (1988) .............................................................................. 28

*In re Williams' Contest*, 270 N.W. 586 (Minn. 1936) .............................................................. 16

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) .............................................. 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................................. 5

*Lance v. Coffman*, 549 U.S. 437 (2007) ........................................................................ 8, 10, 11

Case 2:22-cv-00305-LA   Filed 04/15/22   Page 6 of 41   Document 19

*Laxalt v. Cannon*, 397 P.2d 466 (Nev. 1964) ............................................................. 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................ 8

*Lyons v. Sundquist*, 41 F. App'x 832 (6th Cir. 2002) .................................................. 19

*Manion v. Holzman*, 379 F.2d 843 (7th Cir. 1967) ...................................................... 16

*McIntyre v. Fallahay*, 766 F.2d 1078 (7th Cir. 1985) ....................................... 13, 18, 23

*McLeod v. Kelly*, 7 N.W.2d 240 (Mich. 1942) ............................................................. 16

*Med. Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010) ......................................... 27

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........................................... 7

*Medina v. Clinton*, 86 F.3d 155 (9th Cir. 1996) .......................................................... 13

*Miami Nation of Indians of Indiana, Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342 (7th Cir. 2001) ................................................................................................................. 23

*Morgan v. United States*, 801 F.2d 445 (D.C. Cir. 1986) ............................................ 18

*Morris v. Manufacturers Life Ins. Co.*, 1997 WL 534156 (S.D. Ind. Aug. 6, 1997) ................. 27

*NewPage Wisc. Sys. Inc. v. United Steel Workers Int'l Union*, 651 F.3d 775 (7th Cir. 2011) ...................................................................................................................... 26

*Nixon v. United States*, 506 U.S. 224 (1993) ....................................................... 24, 25

*Odegard v. Olson*, 119 N.W.2d 717 (Minn. 1963) ..................................................... 16

*People of State of Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935 (7th Cir. 1983) ......................................................................................................................... 20

*Powell v. McCormack*, 395 U.S. 486 (1969) .................................................... passim

*Reed v. County Comm'rs of Delaware Cnty., Penn.*, 277 U.S. 376 (1928) ................. 16

*Rees v. Watertown*, 86 U.S. 107 (1874) ..................................................................... 29

*Reynolds v. Sims*, 377 U.S. 533 (1964) ...................................................................... 11

*Rogers v. Barnes*, 474 P.2d 610 (Colo. 1970) ............................................................ 16

*Roudebush v. Hartke*, 405 U.S. 15 (1972) ............................................................. 16, 18

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ................. 9, 11

iv

*Schwartz v. Cruz*, 179 F. Supp. 3d 743 (S.D. Tex. 2016) .......................................................... 22

*Smith v. Polk*, 19 N.E.2d 281 (Ohio 1939) ................................................................ 16

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................... 8

*State ex rel. Chavez v. Evans*, 446 P.2d 445 (N.M. 1968) ........................................... 16

*State of Ill. v. City of Chicago*, 137 F.3d 474 (7th Cir. 1998) ..................................... 27

*State v. Crawford*, 28 Fla. 441 (1891) ...................................................................... 16

*Thomas v. Shipka*, 818 F.2d 496 (6th Cir.) .............................................................. 28

*Vieth v. Jubelirer*, 541 U.S. 267 (2004) ................................................................... 23

*Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139 (7th Cir. 2011) ...... 21

*Wisconsin's Env't Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407 (7th Cir. 1984) .......... 19

*Worthy v. Barrett*, 63 N.C. 199 (1869) .................................................................... 14

*Young v. State of Ill.*, 111 F.3d 134 (7th Cir. 1997) .................................................... 27

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .................................................................. 28

**Constitutional Provisions**

U.S. Const., Art. I, § 2 ........................................................................................ 25

U.S. Const., Art. I, § 3 ........................................................................................ 3, 24

U.S. Const., Art. I, § 4 ........................................................................................ 10

U.S. Const., Art. I, § 5 ........................................................................................ passim

U.S. Const., Art. I, § 6 ........................................................................................ 9

U.S. Const., Art. II, § 1 ....................................................................................... 12

U.S. Const., Art. III, § 2 ...................................................................................... 6

U.S. Const., Fourteenth Amendment ...................................................................... passim

**Statutes**

28 U.S.C. § 2201 ............................................................................................... 4, 6

42 U.S.C. § 1983 ............................................................................................... 27, 29

v

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 5, 6

**Other Authorities**

6 Cannon's Precedents of the House of Representatives of the United States §§ 56-57 (1935) ......................................................................................................... 19, 20, 26

**Miscellaneous**

13A Charles Alan Wright & Arther R. Miller, *Fed. Prac. & Proc. Juris.* § 3531.6 (3d ed. 2002) ................................................................................................................. 13

L. Paige Whitaker, *Contested Election Cases in the House of Representatives: 1933 to 2009,* Cong'l Research Service (Nov. 2, 2010), *available at* https://sgp.fas.org/crs/misc/98-194.pdf..................................................................... 5

# I.     INTRODUCTION

The Court should dismiss Plaintiffs' Complaint in its entirety. Plaintiffs, a group of Democrat activists, are seeking a declaratory judgment that Messrs. Tiffany and Fitzgerald, two duly-elected Republican members of the U.S. House of Representatives for Wisconsin, "engaged in insurrection or rebellion" within the meaning of Section Three of the Fourteenth Amendment (the "Disqualification Clause") to the United States Constitution. The apparent and misguided purpose of this action is to preclude Messrs. Tiffany and Fitzgerald from running for re-election.

At its core, Plaintiffs' contention is that Messrs. Tiffany and Fitzgerald engaged in a conspiracy with the object of stealing the presidential election from President Biden. Ironically, while they "pound the table" accusing Defendants of participating in a scheme to deprive voters of a duly-elected President, it is Plaintiffs who are now unapologetically attempting to subvert the will of Wisconsin voters by asking the Court to issue a decision that would, in Plaintiffs' view, prevent Congressmen Tiffany and Fitzgerald from running for re-election in the 2022 election. In other words, Plaintiffs believe they are more likely to elect the Democrat candidate of their choice if they can prevent the preferred Republican candidates from even running in the first place. Plaintiffs' allegations attack a fundamental principle of our democracy, which, as stated by Alexander Hamilton, is "that the people should choose whom they please to govern them." *Powell v. McCormack*, 395 U.S. 486, 547 (1969) (citation omitted).

While Tiffany and Fitzgerald ardently deny Plaintiffs' baseless conspiracy theory, the reality is that Plaintiffs' claims suffer from myriad legal defects, all of which are fatal to their case. For starters, Plaintiffs cannot pursue a claim for declaratory judgment because they lack standing, *i.e.* they have not suffered any concrete and particularized injury that could be redressed by a favorable decision from this Court. The Complaint appears to allege that Plaintiffs have standing

1

as (1) citizens and (2) voters. The Supreme Court, however, has emphatically rejected the notion that a plaintiff has standing as a citizen where, as here, the alleged nonobservance of the Constitution would adversely affect only the generalized interest of all citizens in constitutional governance. Similarly, Plaintiffs have not and cannot allege any disadvantage or injury with respect to their rights to vote in the upcoming election. Plaintiffs are free to support and vote for any candidate who they believe is qualified.

Even if Plaintiffs had standing, the Complaint would still fail because this Court does not have the authority to determine whether Congressmen Fitzgerald and Tiffany are qualified to serve as congressmen. The Disqualification Clause provides that "[n]o person shall be a Senator or Representative in Congress . . . who, having previously taken an oath, as a member of Congress . . . to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof." By its plain terms, this provision places a qualification on the ability to serve in Congress. That alone is fatal to Plaintiffs' Complaint, as Article I, Section 5 of the Constitution gives the House of Representatives the sole and exclusive jurisdiction to determine and adjudicate the qualifications of its own members, which means this Court has no authority to issue the relief sought by Plaintiffs in this case.

Essentially, Plaintiffs are asking this Court to issue an advisory opinion regarding how the House should decide the issue in the event Messrs. Tiffany and Fitzgerald prevail in the upcoming election. But such a claim is not ripe until such time as either Mr. Tiffany or Mr. Fitzgerald actually wins re-election. And even then, the House has the sole authority to adjudicate the qualifications of its Members and, as such, no decision by this Court would have any bearing on the ability of Messrs. Tiffany and Fitzgerald to run for re-election. If they win re-election, it will be entirely up to the House to determine whether they have met the Constitutional qualifications to serve as

2

Members. Tellingly, while the Constitution permits Congress to expel a Member by a two-thirds majority, *see* Article I, Section 3, no such proceedings have been initiated as a result of the January 6th riot. Simply put, any decision by this Court on whether Messrs. Tiffany and Fitzgerald "engaged in insurrection or rebellion" would not be binding on the House, as that chamber has the sole authority to decide the issue for itself.

For the same reasons, the Complaint presents a non-justiciable political question. The first and most important test for determining the existence of a political question is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker v. Carr*, 369 U.S. 186, 217 (1962). That is exactly the case here.

Finally, even absent the fatal jurisdictional and justiciability defects outlined above, Plaintiffs' Compliant would still require dismissal because it fails to state a claim upon which relief can be granted. The Declaratory Judgment Act does not affect the underlying substantive law and does not create a cause of action where one would not otherwise exist. Here, Plaintiffs' Complaint does not allege facts that would give rise to a cause of action in law or in equity. Plaintiffs do not claim any direct or redressable harm. Plaintiffs' mere desire to enforce the Constitution does not give rise to a private right of action, and filing suit solely under the Declaratory Judgment Act does not cure this defect as the Act only provides for an alternative remedy.

In short, a group of Plaintiffs who have not suffered a cognizable injury seek a determination from this Court that the Constitution places squarely within the authority of Congress. The Court should view this action for what it really is – a political stunt filed by members of the opposing political party meant to subvert the will of the people. For those reasons, and all the reasons further explained below, Plaintiffs' Complaint should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiffs claim to be a group of ten progressive "citizen-voters" residing in Wisconsin. (Compl. ¶ 2, ECF No. 1.)

Defendant Ronald H. Johnson is a duly-elected Member of the U.S. Senate for Wisconsin. *Id*. ¶ 24.  Defendants Thomas P. Tiffany and Scott L. Fitzgerald are duly-elected members of the U.S. House of Representatives for Wisconsin. *Id*. ¶¶ 25-26.

### B.     Plaintiffs' Allegations

Plaintiffs' eighty-page Complaint sets forth an elaborate and fantastical conspiracy theory. The details of the alleged conspiracy are largely irrelevant to the issues raised in this Motion to Dismiss. Nevertheless, the basic premise of the Complaint, which Defendants vehemently deny, is Plaintiffs' baseless claim that Defendants "engaged in insurrection or rebellion" against the United States and, as such, are disqualified from serving in the Congress under Section 3 of the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs allege that Defendants engaged in a conspiracy with the objective of ensuring that President Biden not be elected President. *Id*. ¶¶ 7-9. As part of the conspiracy, Plaintiffs allege that Defendants and "hundreds or even thousands of President Trump's surrogates" proclaimed lies about the election and its results. (Compl. ¶ 6, ECF No. 1.) Ultimately, Plaintiffs contend that the January 6, 2021 Capitol riots occurred because people were "egged on relentlessly by the flagrant lies and distortions put forth by President Trump, Johnson, Tiffany, Fitzgerald, and their co-conspirators." *Id.* ¶ 11.

The Complaint asserts a single cause of action for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a). Plaintiffs seek a judicial declaration as follows:

> Plaintiffs allege that the events alleged in this Complaint leading up to, and pursued on, January 6, 2021 constitute an 'insurrection or rebellion against the United States' as that phrase is used in Section 3 of the Fourteenth Amendment of the U.S. Constitution. They further assert that the conduct attributed to the Defendants in this Complaint (and that which will be learned in discovery) constitutes engagement in insurrection and/or the voluntary effort to assist the insurrection.

*Id*. ¶ 186. In sum, Plaintiffs allege that tweets and remarks from Fitzgerald and Tiffany advocating that every legal vote count, that elections occur in a transparent manner, and that public officials ensure integrity in the American election system somehow led to a riot in the nation's capital such that they engaged in an insurrection. Setting aside the fact that Fitzgerald and Tiffany are not the first Members of Congress to raise legitimate concerns with electoral processes—the U.S. House of Representatives has considered a total of 107 contested election cases from 1933 to 2009[1]—in reality, Plaintiffs' suit is just one component of a nationwide scheme by political opponents to put their thumb on the electoral scales by preventing sitting members of Congress from appearing on the ballot under the guise of claims that are not even justiciable. As a result, Fitzgerald and Tiffany seek dismissal of Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).

### III.     LEGAL STANDARDS

#### A.     Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a party may seek dismissal of a complaint for lack of subject matter jurisdiction. As the party asserting federal jurisdiction, Plaintiffs have the burden of demonstrating that the Court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). In fact, the presumption is that this Court lacks jurisdiction until Plaintiffs prove otherwise. *Id.*

---

[1] L. Paige Whitaker, *Contested Election Cases in the House of Representatives: 1933 to 2009*, Cong'l Research Service (Nov. 2, 2010), *available at* https://sgp.fas.org/crs/misc/98-194.pdf.

5

"Limits on a federal court's authority flow from both the Constitution and Congress." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). The Constitution restricts a federal court's jurisdiction to resolving "cases" and "controversies." *Id.*; U.S. Const., Art. III, § 2. "Further, district courts can only exercise power if authorized by Congress, so each case in federal court must rest upon an independent statutory basis for federal jurisdiction." *Id.* (citing *Exxon Mobil Corp.*, 545 U.S. at 552).

B.  <u>Failure to State a Claim upon which Relief can be Granted</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, a complaint must contain enough factual allegations to state a legally viable claim that is plausible on its face. *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While 'detailed factual allegations' are not required, the complaint must contain more than mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while this Court reviews a complaint in the light most favorable to Plaintiffs, it need not accept as true "legal conclusions" that are "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

IV.  <u>ARGUMENT</u>

Plaintiffs' Complaint purports to assert a single cause of action for declaratory judgment. The Declaratory Judgment Act provides in pertinent part: "In a case of actual controversy within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in the Declaratory Judgment Act refers to the

6

type of 'Cases' and 'Controversies' that are justiciable under Article III [of the United States Constitution]." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)). The Seventh Circuit has stated that "[t]he requirements of the Act and those of Article III are therefore coextensive." *Id*. (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)).

In this case, Plaintiffs' Complaint must be dismissed because: (1) Plaintiffs lack standing; (2) this Court does not have authority to issue a declaratory judgment because the Constitution expressly vests each House with the sole authority to determine the qualifications of its Members; (3) any decision by this Court would constitute an improper advisory opinion; (4) the issue of whether Defendants are qualified for re-election is not ripe; (5) the case presents a non-justiciable political question; and (6) the Complaint fails to state a claim upon which relief can be granted. As further explained below, each of these arguments constitute independent grounds upon which this Court should dismiss Plaintiffs' Complaint.

A. **The Complaint must be dismissed because Plaintiffs lack standing to seek a declaratory judgment.**

As a threshold matter, Plaintiffs cannot maintain a claim for declaratory judgment because they lack standing. To demonstrate standing to obtain a declaratory judgment, Plaintiffs have the burden of showing three elements by a preponderance of the evidence: (1) "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical,''; (2) "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court,'"; and (3) "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

7

decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992) (citations omitted); *Foster v. Ctr. Twp. of LaPorte Cty.*, 798 F.2d 237, 241–42 (7th Cir. 1986).

### 1. Plaintiffs have not suffered any legally cognizable injury.

Plaintiffs appear to allege injury based on their status as citizens and voters. Specifically, Plaintiffs allege that "[a]s voters and citizens of the State of Wisconsin, Plaintiffs have an interest in the outcome of this action for, among other reasons, their franchise is affected by the answer to the questions posed to the Court." (Compl.¶ 187, ECF No. 1.) Plaintiffs further allege that they are "10 citizen-voters residing in Wisconsin who are domiciled throughout the state and are constituents of the Defendants." *Id.* ¶ 2. They filed this action "to hold Johnson, Tiffany, and Fitzgerald accountable for their actions in supporting the insurrection by imposing on them the consequences dictated by Section 3 of the Fourteenth Amendment." *Id.* ¶ 12.

Plaintiffs' assertion of a general injury based on their statuses as citizens, however, is insufficient to demonstrate standing as a matter of law. Indeed, it is well-settled that federal courts are not "a forum for generalized grievances," *Lance v. Coffman*, 549 U.S. 437, 439 (2007), and that a plaintiff must have a particularized injury that "'affect[s] the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Here, Plaintiffs have not alleged any particularized injury sufficient to maintain their claim, and their Complaint should be dismissed.

First, the Supreme Court has long held that a plaintiff does not have standing where he or she has asserted only the right possessed by every citizen to require lawful government. *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922) (concluding that a plaintiff's status as a citizen did not provide standing to challenge the ratification of the Nineteenth Amendment to the United States Constitution); *see also Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)

(stating that a party seeking a judicial ruling must show that "he has sustained or is immediately in danger of sustaining some direct injury . . . , and not merely that he suffers in some indefinite way in common with people generally."); *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) ("[T]he plaintiffs may not rely on 'the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.'").

For example, in *Ex parte Levitt*, 302 U.S. 633, 636 (1937), a citizen claimed "that the appointment of Mr. Justice Black by the President and the confirmation thereof by the Senate of the United States were null and void by reason of his ineligibility under article 1, s 6, cl. 2, of the Constitution of the United States, and because there was no vacancy for which the appointment could lawfully be made." The Supreme Court rejected the argument that "a citizen and member of the bar of this Court" has standing to raise such a challenge. *Id*. "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." *Id*.

Similarly, in *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 209 (1974), the Supreme Court held that the plaintiffs lacked standing as citizens to seek declaratory relief that members of Congress are ineligible to hold a commission in the Armed Forces Reserve while in Congress and that membership in the Reserves is incompatible with membership in the Congress. In that case, citizens and taxpayers claimed to have suffered injury because Members of Congress holding a Reserve position were allegedly subject to the possibility of influence by the Executive Branch and may have inconsistent obligations. *Id*. at 212.

In analyzing the issue, the Supreme Court stated that "[t]he only interest all citizens share in the claim advanced by respondents is one which presents injury in the abstract. Respondents seek to have the Judicial Branch compel the Executive Branch to act in conformity with the Incompatibility Clause, an interest shared by all citizens." *Id*. at 217. Further, the claimed nonobservance of the Constitution "would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury." *Id*. Thus, the Court held that "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Id*. at 202. The Court explained as follows:

> Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance. Such authoritative presentations are an integral part of the judicial process, for a court must rely on the parties' treatment of the facts and claims before it to develop its rules of law. Only concrete injury presents the factual context within which a court, aided by parties who argue within the context, is capable of making decisions.

*Id*. at 220–21.

In *Lance v. Coffman*, 549 U.S. 437, 437 (2007), four citizens challenged the Colorado Supreme Court's decision invaliding a redistricting plan passed by the state legislature. The citizens claimed that a provision of the Colorado State Constitution violated their rights under the Elections Clause of the United States Constitution, Article I, Section 4, cl.1. *Id*. at 438. The Supreme Court, however, held that the plaintiffs lacked a direct injury to support standing: "The

only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id*. at 442.

So too here. Like the plaintiffs in *Ex parte Levitt*, *Schlesinger*, and *Lance*, Plaintiffs in this case assert nothing more than a generalized interest in enforcing the Constitution. Indeed, the Complaint admits this case was brought for the express purpose of enforcing Section 3 of the Fourteenth Amendment. (Compl. ¶ 12, ECF No. 1.) Plaintiffs' generalized grievances under the Disqualification Clause fall woefully short of demonstrating a particularized injury sufficient to confer standing. To the contrary, their generalized grievance applies equally to every member of the American public, and their Complaint should be dismissed accordingly.

In addition to a lack of concrete injury as citizens, Plaintiffs also cannot show any injury with respect to their voting rights. The Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature.'" *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). To show standing, a voter most allege facts "showing disadvantage to themselves as individuals." *Id*. (citing *Baker*, 369 U.S. at 206). But "absent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact that a candidate for whom she votes loses or stands to lose an election." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1247 (11th Cir. 2020); *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000) (holding that a candidate's decreased "chance of being elected" was "hardly a restriction on voters' rights and by itself [was] not a legally cognizable injury sufficient for standing").

In this case, the Complaint alleges, with no explanation, that Plaintiffs' "franchise is affected by the answer to the questions posed by the Court." (Compl. ¶ 187, ECF No. 1.) However,

Plaintiffs have not and cannot allege any specific and particularized injury to their right to vote based on the allegations in the Complaint.

Congressmen Tiffany and Fitzgerald are both duly-elected members of the U.S. House of Representatives who were elected to two-year terms in the November 3, 2020, General Election. *Id*. ¶¶ 25-26. Plaintiffs do not allege that they have suffered any individualized disadvantage to their voting rights in that election. As such, Plaintiffs have suffered no recognizable injury.

Further, although it is not clear from the Complaint, Plaintiffs seem to take issue that Representatives Tiffany and Fitzgerald have announced their intentions to run for re-election in the Wisconsin 2022 Primary, and, if they win, continue in the Wisconsin 2022 General Election. (Compl. ¶¶ 25-26, ECF No. 1.) But Plaintiffs have not alleged any facts that they would be subject to an individual disadvantage in their rights to vote in either the Primary or General elections. To the contrary, Plaintiffs have suffered no injury because they are free to vote for the candidates of their choice. *See, e.g., Berg*, 586 F.3d at 239; *Becker*, 230 F.3d at 390; *Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618, 622 (D.C. Cir. 1998) (concluding no injury in fact when voters "were free to raise funds to support their own candidates, volunteer their time to work on those campaigns, and vote for the candidate of their choice.").

The Third Circuit's reasoning in *Berg* is instructive on this point. In that case, Philip Berg, a lawyer acting pro se, sought a declaratory judgment that Barack Obama was not eligible to run for President of the United States because he was, allegedly, not a natural born citizen within the meaning of Article II, Section 1, Clause 4 of the United States Constitution. *Berg*, 586 F.3d at 237. The Third Circuit, however, concluded that Berg lacked standing to bring suit, reasoning, in part, as follows:

12

> Berg's worry that Obama, if elected, might someday be removed from office was not an injury cognizable in a federal court because it was based on speculation and was contingent on future events. As a practical matter, Berg was not directly injured because he could always support a candidate he believed was eligible.

*Id.* at 239 (citing *Becker*, 230 F.3d at 390). The Third Circuit further reasoned that "Berg's angst that the presence on the ballot of an ineligible candidate might lessen the chances that an eligible candidate might win was a non-cognizable derivative harm." *Id.* at 240 (citing *Crist v. Comm'n on Pres. Debates*, 262 F.3d 193, 195 (2d Cir. 2001)).

Just like *Berg*, Plaintiffs in this case do not have standing as voters to claim Messrs. Tiffany and Fitzgerald are ineligible to run for reelection based on an alleged violation of Section 3 of the Fourteenth Amendment. Plaintiffs cannot identify any specific cognizable injury to their right to vote, and their Complaint should be dismissed as a result.

### 2.        Plaintiffs' alleged injury cannot be redressed by a favorable decision.

In addition to the fact that Plaintiffs have suffered no injury, the claimed injury cannot be redressed by a favorable decision of this Court. "A plaintiff who stands to gain no more than abstract vindication may lack the adversary ardor of a plaintiff who stands to gain some more tangible benefit." 13A Charles Alan Wright & Arther R. Miller, *Fed. Prac. & Proc. Juris.* § 3531.6 (3d ed. 2002). As discussed in detail below, the Constitution vests the House of Representatives with exclusive authority to "judge" the "qualifications of its own members." U.S. Const. art. I, § 5; *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 619 (1929) (stating that the Senate has sole authority under the Constitution to judge the qualifications of its members). Because the House of Representatives has the sole ability to determine whether Messrs. Tiffany and Fitzgerald are qualified, there is no relief this Court can offer to Plaintiffs. *See McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985); *see also Medina v. Clinton*, 86 F.3d 155, 158 (9th Cir. 1996)

13

(concluding that the district court correctly dismissed the actions "[b]ecause enjoining the Executive Branch to comply with its responsibilities under the Act, assuming that it is not now doing so, would not likely redress plaintiffs' injury and because, in any event, the Executive Branch's exercise of discretion under the Act is not subject to judicial review.").

**B.** **This Court does not have authority to issue a declaratory judgment because the Constitution vests each House with the sole authority to determine the qualifications of its Members.**

In addition to Plaintiffs' lack of standing, this Court does not have authority to issue the declaratory relief sought by Plaintiffs. Plaintiffs ask the Court to declare that Mr. Johnson, Mr. Tiffany, and Mr. Fitzgerald engaged in an "insurrection or rebellion against the United States" within the meaning of the Disqualification Clause found in Section 3 of the Fourteenth Amendment. Plaintiffs' ultimate goal appears to be to prevent Defendants from continuing to hold or running for office in either House of Congress.

Section 3 of the Fourteenth Amendment states,

> No person shall be a Senator or Representative in Congress . . . who, having previously taken an oath, as a member of Congress . . . to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const., amend XIV, § 3. This Amendment was enacted shortly after the Civil War to bar civil officials and military officers who had joined or aided the Confederacy from serving in government. *See Worthy v. Barrett*, 63 N.C. 199, 204 (1869) ("The idea being that one who had taken an oath to support the Constitution and violated it, ought to be excluded from taking it again, until relieved by Congress.").

Citing this provision, Plaintiffs ask the Court to declare that the events that transpired at the Capitol on January 6, 2021, constituted an insurrection, that Defendants were active instigators

14

and proponents of those events, and that Defendants' relationship to those events disqualifies them from continued service in their capacities as Federal legislators. Plaintiffs' claim, however, falls outside the jurisdiction of this Court and must be dismissed. Plaintiffs' claim ignores a fundamental feature of the Constitution's separation of powers, and seeks a judicial determination of an issue that the Constitution expressly reserves for Congress.

Indeed, the Constitution emphatically and categorically vests each House of Congress with the power to establish and apply standards for the qualification of its members:

> Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members . . . . Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behavior, and, with the Concurrence of two thirds, expel a Member.

U.S. Const., art. I, § 5.

This provision is not ambiguous and it does not contain any reservations or limitations. The House of Representatives is empowered to adjudicate the qualifications of its own members, independently and absolutely. Likewise, the Senate is empowered to adjudicate the qualifications of its own members, independently and absolutely. The Senate has no power over the qualifications of members of the House of Representatives, and the House of Representatives has no power over the qualifications of Senators. Moreover, neither the Executive Branch nor the Judicial Branch may control, direct, or interfere with each Houses' determinations in these matters. The text of the Constitution is plain and direct.

Throughout the storied history of the United States Senate and House of Representatives, both Houses of Congress have consistently asserted and exercised their rights under Article 1, Section 5 to adjudicate the elections and qualifications of their respective members. And this practice has been recognized and respected by both federal and state courts. *See Gammage v. Compton*, 548 S.W.2d 1, 2 (Tex. 1977) ("Both federal and state courts have recognized that the

foregoing provision gives final and exclusive jurisdiction to each House of Congress to determine election contests relating to its members.") (citing generally *Roudebush v. Hartke*, 405 U.S. 15 (1972); *Barry*, 279 U.S. 597 (1929); *Manion v. Holzman*, 379 F.2d 843 (7th Cir. 1967); *Rogers v. Barnes*, 474 P.2d 610 (Colo. 1970); *Burchell v. St. Bd. of Election Comm'rs*, 68 S.W.2d 427 (Ky. 1934); *Belknap v. Bd. of Canvassers of Ionia Cnty.*, 54 N.W. 376 (Mich. 1893); *McLeod v. Kelly*, 7 N.W.2d 240 (Mich. 1942); *In re Williams' Contest*, 270 N.W. 586 (Minn. 1936); *Odegard v. Olson*, 119 N.W.2d 717 (Minn. 1963); *Laxalt v. Cannon*, 397 P.2d 466 (Nev. 1964); *Smith v. Polk*, 19 N.E.2d 281 (Ohio 1939)); *see also*, *State ex rel. Chavez v. Evans*, 446 P.2d 445 (N.M. 1968) (reversing the New Mexico Secretary of State's exclusion of a candidate for U.S. Congress from the ballot because "[i]t is well settled that [art.I, § 5] constitutes each house of Congress the sole and exclusive judge of the election and qualifications of its own members"); *Cox v. McCrery*, 2007 WL 97142, at *1 (W.D. La. Jan. 5, 2007), attached as <u>Exhibit A</u>[2]; *State v. Crawford*, 28 Fla. 441 (1891).

 As noted by the Supreme Court in *Reed v. County Comm'rs of Delaware Cnty., Penn.*, each House is "the judge of the elections, returns, and qualifications of its members. It is fully empowered, and may determine such matters without aid of the [other House] or the executive or judicial department." 277 U.S. 376, 388 (1928) (internal citations omitted). Inherent to this power is the "authority to take such steps as may be appropriate and necessary to secure information upon which to decide" disputes concerning the election and qualification of members. *Id.* at 388–89. Both the Senate and the House have utilized this inherent authority to establish procedures and methods for investigating and adjudicating these issues. *Id.* at 389. Far from authorizing or

---

[2] Unreported decisions cited herein are attached as exhibits in accordance with Civil L. R. 7(j)(2).

invoking the use of judicial power in such situations, the established practice of both Houses affirms that these matters are not to be referred to "the power of the Judicial Department." *Id.*

For instance, in 1929, the Supreme Court was requested to review questions related to "an inquiry instituted by the United States Senate in respect of the validity of the election of a United States Senator from Pennsylvania." *Barry*, 279 U.S. at 609. The Court held that, not only did Article I, Section 5 empower the Senate to be the sole judge of such questions, it also endowed the Senate with all quasi-judicial powers necessary to complete the investigation and adjudication of such issues: "In exercising the power to judge of the elections, returns, and qualifications of its members, the Senate acts as a judicial tribunal, and the authority to require the attendance of witnesses is a necessary incident of the power to adjudge, in no wise inferior under like circumstances to that exercised by a court of justice." *Id.* at 616. Because any determination of these issues "concerns the exercise by the Senate of an indubitable power," the Court emphasized that judicial interference would only be proper in such instances "upon a clear showing of such arbitrary and improvident use of the power as will constitute a denial of due process of law." *Id.* at 620. Without any such evidence or showing, the Court refrained from interfering with any aspect of the Senate's inquiry.

Even in cases where the Supreme Court has taken a more liberal view of its role in interpreting and applying the Constitution to the functions of the Legislature, the Court has reiterated that Article I, Section 5 is a "textually demonstrable commitment to Congress to judge only the qualifications expressly set forth in the Constitution." *Powell*, 395 U.S. at 548 (holding that Congress does not have the right to exclude duly-elected members based upon any criteria beyond those expressly enumerated in the Constitution). In other words, when the Constitution entrusts the Legislative Branch with making certain decisions based upon certain criteria, the

17

Judicial Branch is solely tasked to recognize the Legislature's duties and to affirm the Legislature's constitutional use of its authority, not to assume such duty or arrogate such authority to itself. *See Baker*, 369 U.S. at 210–11. Ultimately, the House and Senate must "be free to make an unconditional and final judgment under [Article I, Section 5]" regarding the elections and qualifications of their members. *See Roudebush*, 405 U.S. at 19.

The Seventh Circuit has echoed the Supreme Court's respect for the non-justiciability of questions that implicate the Legislature's prerogatives under Article I, Section 5:

> The House acted under Art. I, sec. 5, cl. 1 of the Constitution, which provides that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members. The House is not only "Judge" but also final arbiter. Its decisions about which ballots count, and who won, are not reviewable in any court. As the Court said in *Barry*, the House has the authority to "determine the facts and apply the appropriate rules of law, and, finally to render a judgment which is beyond the authority of any other tribunal to review."

> Nothing that we say or do, nothing the state court says or does, could affect the outcome of this election. Because the dispute is not justiciable, it is inappropriate for a federal court even to intimate how Congress ought to have decided. The doctrine of justiciability is designed to prevent meddlesome advisory opinions fully as much as it is designed to prevent unwarranted interference with decisions properly made elsewhere.

*McIntyre*, 766 F.2d at 1081 (internal citations omitted).

The D.C. Circuit was more blunt, when, in the words of then-Judge Scalia, it stated,

> The provision states not merely that each House "may judge" these matters, but that each House "shall be *the* Judge" [emphasis added by court]. The exclusion of others—and in particular of others who are judges—could not be more evident. Hence, without need to rely on the amorphous and partly prudential doctrine of "political questions," ***we simply lack jurisdiction to proceed***.

*Morgan v. United States*, 801 F.2d 445, 447 (D.C. Cir. 1986) (Scalia, J.) (cleaned up) (emphasis added).

18

Nor can there be any question that the Disqualification Clause—Section 3 of the Fourteenth Amendment—sets forth a "qualification" within the meaning of that term in Article I, Section 5 of the Constitution, which again grants the House the sole and exclusive jurisdiction to determine and adjudicate the qualifications of its own members. Indeed, the House determined just that when it refused to seat member-elect Victor L. Berger—of Wisconsin—as a result of his "giv[ing] aid or comfort to the enemies of the United States" during World War I. *See generally* 6 Cannon's Precedents of the House of Representatives of the United States §§ 56-57 (1935) (reasoning that Section 3 of the Fourteenth Amendment sets forth "a fourth qualification prescribed by the Constitution" and finding Berger "ineligible to a seat in this House").

The plain text of the Constitution, the uniform practice of Congress, and the consistent affirmation of case law all indicate that questions regarding the constitutional qualifications of members of Congress can only be determined by Congress itself. Thus, in this case, Plaintiffs have brought their case to the wrong forum. *See Lyons v. Sundquist*, 41 F. App'x 832, 833 (6th Cir. 2002), attached as <u>Exhibit B</u>. The veracity of their extensive factual allegations and the merits of their dramatic legal arguments, which Defendants fervently deny, are ultimately immaterial in light of the fact that *these issues can only be adjudicated by Congress*, not this Court. This ground alone is sufficient to support the dismissal of Plaintiffs' Complaint in its entirety.

**C.    <u>Any decision by this Court would constitute an improper advisory opinion.</u>**

Plaintiffs' Complaint should also be dismissed because it seeks an advisory opinion regarding how the House should decide the qualification issue in the event it is raised in the House. "Federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Wisconsin's Env't Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984). The prohibition on issuing advisory opinions is equally applicable in the context of

declaratory judgments. *Id.*; *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). An advisory opinion is "a decision that does not resolve an actual case or controversy." *People of State of Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941 (7th Cir. 1983).

Here, any decision by this Court would be an improper advisory opinion. As discussed in detail in Section IV(B) above, the House of Representatives has the final and exclusive authority to determine whether Messrs. Fitzgerald and Tiffany are qualified to hold office. As such, any declaration by this Court as to whether Messrs. Fitzgerald and Tiffany engaged in conduct that would disqualify them from holding office amounts to nothing more than an improper advisory opinion. *See Coleman v. Miller*, 307 U.S. 433, 459–60 (1939) (Black, J. concurring) ("Therefore, any judicial expression amounting to more than mere acknowledgment of exclusive Congressional power over the political process of amendment is a mere admonition to the Congress in the nature of an advisory opinion, given wholly without constitutional authority."); *Dyer v. Blair*, 390 F. Supp. 1291, 1309 (N.D. Ill. 1975) (declining to issue an advisory opinion on an issue controlled by the state legislature). The Court's declaration could not and would not bind the House, and the House would be free to reach the opposite conclusion. *See* 6 Cannon's Precedents of the House of Representatives of the United States § 56, at 54 (1935) (stating that the House would not be governed by prior judicial decision and would instead "determine for itself" the question of whether a Member's actions ran afoul of the Disqualification Clause).

Moreover, the Defendants in this case are individuals who were sued in their individual capacities. And, it is axiomatic that a decision from this Court does not bind nonparties who did not participate in this litigation. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made

a party by service of process."). Thus, any decision by this Court would have no impact on Defendants' ability to continue to hold office[3] or to run for reelection. At best, a Declaratory Judgment would serve as an improper advisory opinion on an issue that is exclusively reserved for Congress.

**D.**    **The issue of whether Defendants are qualified for reelection is not ripe.**

Relatedly, the Complaint must be dismissed because it is not ripe and, therefore, does not present a case or controversy. *See Amling*, 943 F.3d at 377 ("One aspect of the case-or-controversy requirement is ripeness."). "Declaratory judgment actions are ripe and otherwise justiciable when the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (cleaned up). "Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wisconsin Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). It is particularly important for this Court to avoid deciding constitutional questions that are not ripe. *See Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974) ("[T]o the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties.").

In this case, Congressmen Tiffany and Fitzgerald are currently serving as duly-elected members of the U.S. House of Representatives. In accordance with the Constitution, the only way to exclude them from continuing to serve is by a two-thirds vote of the House. U.S. Const., art. I,

---

[3] Article I, Section 5 of the Constitution requires the concurrence of two-thirds of the House of Representatives to expel its Members.

§ 5. However, the House has not taken any action or initiated any proceedings pursuant to Art. I, § 5. (Compl. ¶¶ 25-26, ECF No. 1.) Because the Constitution places the issue of expulsion within the jurisdiction of the House and the House has not taken any action, there is no live case or controversy for this Court to review. Specifically, absent a claim that the House exceeded its authority under Article I, Section 5, there is no controversy for this Court to decide. *See Powell*, 395 U.S. at 521-50 (analyzing the authority of the House pursuant to Article I, Section 5 of the Constitution).

Similarly, to the extent Plaintiffs argue that Congressmen Tiffany and Fitzgerald are not qualified to serve a new term, the claim is not ripe for adjudication. At this time, Messrs. Tiffany and Fitzgerald have only announced an intent to run for re-election. (Compl. ¶¶ 25-26, ECF No. 1.) While they both have strong support from constituents, it is nonetheless entirely speculative whether either will prevail in their Primary and General elections. And, absent winning the General election, there is simply no occasion to decide whether either "engaged in insurrection or rebellion" within the meaning of the Disqualification Clause. For this reason, Plaintiffs' claim is entirely premature. *See Schwartz v. Cruz*, 179 F. Supp. 3d 743, 750 (S.D. Tex. 2016) (dismissing a citizen action seeking a declaration that Senator Ted Cruz is ineligible to serve as President of the United States because, among other reasons, Senator Cruz "has not yet been elected President of the United States and may never be.").

### E.    The manner in which the Legislature exercises its discretion in determining the qualifications of its Members is a political question.

By asking the Court to decide an issue that the Constitution expressly reserves to Congress, Plaintiffs are seeking to adjudicate a non-justiciable political question. But when, as shown above, the Constitution exclusively entrusts Congress with the task of determining the qualifications of

its members, "it is inappropriate for a federal court even to intimate how Congress ought to have decided" any such question. *McIntyre*, 766 F.2d at 1081.

The political-question doctrine "identifies a class of questions that either are not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh, or have been committed by the Constitution to the exclusive, unreviewable discretion of the executive and/or legislative—the so-called 'political'—branches of the federal government." *Miami Nation of Indians of Indiana, Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 347 (7th Cir. 2001) (citation omitted). To that end, the Supreme Court's decision in *Baker v. Carr* sets forth the relevant considerations for evaluating whether a case presents a political question:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217. Each of these is an "independent test" that is "listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004).

The first and most important *Baker* test immediately indicates that Plaintiffs are presenting a non-justiciable political question. As discussed above, Article I, Section 5 of the Constitution provides that "[e]ach House shall be the Judge of the Elections, Returns and Qualifications of its own Members. . . ." And, the Supreme Court has recognized that Article I, Section 5 of the Constitution is "a 'textually demonstrable commitment' to Congress to judge only the

23

qualifications expressly set forth in the Constitution." *Powell*, 395 U.S. at 548; *see also Barkley v. O'Neill*, 624 F. Supp. 664, 668 (S.D. Ind. 1985). This alone warrants dismissal.

The Supreme Court's decision in *Nixon v. United States*, 506 U.S. 224 (1993), supports this conclusion. In that case, Walter L. Nixon, the former Chief Judge of the United States District Court for the Southern District of Mississippi, contended that the manner in which the Senate conducted his impeachment trial violated the Impeachment Trial Clause, which provides that the "Senate shall have the Sole Power to try all Impeachments." *Id*. at 226 (quoting U.S. Const. art. I, § 3, cl. 6). Specifically, Nixon argued that the word "try" required the whole Senate to take part in the evidentiary hearings. *Id*. The Supreme Court concluded that the case presented a political question that could not be reviewed by the courts. *Id*.

The Court focused on the grant of "sole" power in the Impeachment Trial Clause and defined the word "sole" as "functioning. . . independently and without assistance or interference." *Id*. at 229-31. The Court concluded that this language places the authority to determine the manner of proceedings within the Senate. *Id*. at 235-36. Indeed, the Court noted that the Constitution placed other express limits on impeachment proceedings (*i.e.*, "Members must be under oath, a two-thirds vote is required to convict, and the Chief Justice presides when the President is tried"), which meant the word "try" was not "an implied limitation on the method by which the Senate might proceed in trying impeachments." 506 U.S. at 230, 238.

The Supreme Court further reasoned that its conclusion was consistent with its prior decision in *Powell*, which presented the issue of "whether courts could review the House of Representatives' conclusion that Powell was 'unqualified' to sit as a Member because he had been accused of misappropriating public funds and abusing the process of the New York courts." *Id*. at 237. The Supreme Court continued, reasoning that its decision in *Powell* "was based on the fixed

meaning of '[q]ualifications' set forth in Art. I, § 2." *Id*. And, the Court specifically stated that "[t]he decision as to whether a Member satisfied these qualifications *was* placed with the House, but the decision as to what these qualifications consisted of was not." *Id*. (emphasis in original).

Based on the Supreme Court's decisions in *Powell* and *Nixon*, this Court cannot decide in the first instance whether Messrs. Fitzgerald and Tiffany "engaged in insurrection or rebellion" under the Fourteenth Amendment as requested in Plaintiffs' Complaint. *See* (Compl. ¶ 187, ECF No. 1.) Such a determination would be a decision on qualifications, which, as *Nixon* noted, is placed squarely within the authority of the House. *Nixon*, 506 U.S. at 237. As such, the first *Baker* test is "inextricable from the case at bar," and the case should be dismissed as non-justiciable. *See Baker*, 369 U.S. at 217.

Similarly, because the determination of whether Defendants "engaged in insurrection or rebellion" is reserved for the House, a decision by this Court also implicates the fourth and sixth *Baker* tests. *See Baker*, 369 U.S. at 217. Specifically, such a decision would express a lack of respect for the House because the House has not yet had an opportunity to decide the issue—*or even whether to take up the issue*—which of course is the House's prerogative under the Constitution. This Court should not preemptively interpret or apply the Disqualification Clause where doing so would clearly violate the separation of powers set forth in Articles I and III of the Constitution.

Relatedly, a decision by this Court would involve "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *See Baker*, 369 U.S. at 217. As discussed in Section VI(C) above, the House would not be bound by a decision from this Court on the issue of whether Defendants "engaged in insurrection or rebellion." Indeed, in the 1919 case of Victor L. Berger, referenced above, the House expressly stated that it "decided at the

25

outset that it would not be governed by the action of the judge and jury" from Berger's previous criminal trial regarding violations of the Espionage Act, and that the House would instead "determine for itself" the question of whether Berger's actions ran afoul of Section 3 of the Fourteenth Amendment—the same provision on which Plaintiffs attempt to proceed here. 6 Cannon's Precedents of the House of Representatives of the United States § 56, at 54 (1935). Thus, regardless of any decision reached by this Court, it is entirely possible that the House would reach the opposite conclusion in the event one of the Defendants is re-elected and the issue is properly presented to the House.

Thus, the first, fourth, and sixth *Baker* tests support a conclusion that this case is non-justiciable. Of course, this is not to say that this Court would never be able to address any aspect of Section 3 of the Fourteenth Amendment. For example, in the event Congress were to exceed its Constitutional authority or exercise its authority in a manner inconsistent with the Constitution, the federal judiciary may very well be called upon to interpret the meaning of the Disqualification Clause. *See Powell*, 395 U.S. at 519 (stating that the Court "must first determine what power the Constitution confers upon the House through Art. I, s 5, before [it] can determine to what extent, if any, the exercise of that power is subject to judicial review."). But that is not this case. Congress has not taken any action to expel or exclude Messrs. Tiffany and Fitzgerald, and it is not the task of this Court to make an abstract legal determination, particularly where that determination has been expressly delegated to a different branch of government.

### F. Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

Finally, Plaintiffs' Complaint must be dismissed because it fails to state a claim upon which relief can be granted. The Declaratory Judgment Act is not a grant of subject matter jurisdiction. *NewPage Wisc. Sys. Inc. v. United Steel Workers Int'l Union*, 651 F.3d 775, 776 (7th Cir. 2011).

26

The Act "does not, and arguably could not, affect the underlying substantive state and federal laws that define the rights of the parties." *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). Thus, "[a] federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action." *Id*. In other words, the Act does not create a cause of action where one would not otherwise exist. *See State of Ill. v. City of Chicago*, 137 F.3d 474, 476–77 (7th Cir. 1998); *Morris v. Manufacturers Life Ins. Co.*, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997) ("It is well established that the Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief."), attached as Exhibit C.

In this case, Plaintiffs seek a declaratory judgment against the Defendants in their individual capacities for an alleged violation of Section 3 of the Fourteenth Amendment. However, the Supreme Court has never recognized a direct cause of action under the Fourteenth Amendment in general or the Disqualification Clause in particular. In fact, Plaintiffs' Complaint does not even identify the deprivation of any individual rights nor does it allege any substantive basis that establishes a cause of action.

In general, an individual claiming a violation of constitutional rights by state officials must utilize the remedy set forth in 42 U.S.C. § 1983. In that context, the Seventh Circuit has concluded that there is no direct cause of action under the Fourteenth Amendment. *Baxter by Baxter v. Vigo Cty. Sch. Corp*., 26 F.3d 728, 732 n.3 (7th Cir. 1994); *Young v. State of Ill*., 111 F.3d 134 (7th Cir. 1997) (unpublished), attached as Exhibit D. This is consistent with decisions from circuit courts throughout the country. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Azul–Pacifico Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994); *Thomas v. Shipka*, 818 F.2d 496, 503 (6th

Cir.), on reh'g in part, 829 F.2d 570 (6th Cir. 1987), judgment vacated on other grounds by 488 U.S. 1036 (1989); *Cale v. City of Covington*, *Va.*, 586 F.2d 311, 313 (4th Cir. 1978).

To state a claim for relief, a § 1983 claimant must allege violations of "rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). The Supreme Court has made it clear that it is only "an unambiguously conferred right" and "not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." *Id*. at 283.

Congress has not created an analogous statute for alleged violations of constitutional rights by federal officials. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In certain limited instances, the Supreme Court has implied a cause of action for damages for constitutional violations. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Fourth Amendment implied right of action); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment implied right of action); *Hartman v. Moore*, 547 U.S. 250, 256 (2006). However, the Supreme Court has recently made it clear that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1848 (citing *Iqbal*, 556 U.S. at 675). And, the Supreme Court has refused to expand *Bivens* to any new context or new category of defendants for the past forty years. *Id*.; *Hernandez v. Mesa*, 140 S.Ct. 735 (2020).

Aside from *Bivens* actions, federal courts have issued injunctive relief as courts of equity against federal and state officers in order to prevent the deprivation of Constitutional rights. *E.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015); *Bell v. Hood*, 327 U.S. 678, 684 (1946). However, "'[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893)). Indeed, "'[a] Court of equity cannot,

28

by avowing that there is a right but no remedy known to the law, create a remedy in violation of law . . . . '" *Id.* (quoting *Rees v. Watertown*, 86 U.S. 107, 122 (1874)).

In this case, Plaintiffs' Complaint does not allege that Messrs. Tiffany and Fitzgerald are state actors subject to suit under 42 U.S.C. § 1983. Thus, Plaintiffs have not pled a cause of action under § 1983.

Similarly, Plaintiffs have not pled any conduct that has been recognized as actionable in a *Bivens* action. Plaintiffs have not alleged that Messrs. Tiffany and Fitzgerald are federal officers, nor that they have violated any of Plaintiffs' rights in their capacities as federal officers. Further, the Supreme Court has never recognized a *Bivens* claim under the Disqualification Clause.

Finally, Plaintiffs have not alleged any facts that would support the availability of an equitable remedy. Plaintiffs have not alleged that any conduct of Messrs. Tiffany or Fitzgerald violated any right given to Plaintiffs by the Constitution. Plaintiffs do not even allege any deprivation of their individual rights. Instead, Plaintiffs have expressly filed suit in a misguided attempt to enforce the Constitution in general and "hold Johnson, Tiffany, and Fitzgerald accountable." (Compl. ¶ 12, ECF No. 1.)

This Court's authority in equity does not provide relief for Plaintiffs in this case because the Disqualification Clause is not the source of any federal rights. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (concluding that the Supremacy Clause "is not a source of any federal rights."). Rather than grant rights to any citizen, the Disqualification Clause sets forth certain qualifications for a "Senator or Representative in Congress" to hold office. U.S. Const. amend. XIV, § 3. And, the Constitution directs that "[e]ach House [of Congress] shall be the judge of the . . . Qualifications of its own Members." U.S. Const. art. I, § 5. The Disqualification Clause itself recognizes that it is Congress who has authority to decide the issue: "But Congress

may by a vote of two-thirds of each House, remove such a disability." U.S. Const. amend. XIV, § 3. Thus, there is no equitable claim in this case because Plaintiffs have asserted no deprivation of any Constitutional right. And, the Court has no authority to offer a remedy because the power to determine the qualifications of Messrs. Tiffany or Fitzgerald under the Disqualification Clause lies solely within Congress.

In short, Plaintiffs' claim for declaratory judgment fails as a matter of law because Plaintiffs have not and cannot identify any cause of action under the substantive law or any deprivation of a Constitutional right that this Court may hear as a court of equity. Instead, Plaintiffs are acting under the misplaced notion that federal courts can merely enforce the Constitution based on Plaintiffs' sheer desire. Plaintiffs failed to state a claim upon which relief can be granted, and their Complaint should be dismissed with prejudice.

## V.    <u>CONCLUSION</u>

Based on all of the foregoing, Defendants Thomas P. Tiffany and Scott L. Fitzgerald respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated:  April 15, 2022                    Respectfully submitted,

 <u>/s/  Charles R. Spies</u>

Charles R. Spies (MI Bar # P83260)
Dickinson Wright PLLC
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
(202) 466-5964
(844) 670-6009 (Fax)
cspies@dickinsonwright.com

Robert L. Avers (MI Bar #P75396)
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 623-1672
(844) 670-6009 (Fax)

30

ravers@dickinsonwright.com

Thomas G. Kreul (WI Bar #1003947)
Schober Schober & Mitchell, S.C.
2835 South Moorland Road
New Berlin, WI 53151-3743
(262) 785-1820
tgkreul@schoberlaw.com

*Attorneys for Defendants Thomas P. Tiffany
and Scott L. Fitzgerald*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 15, 2022, I served a true and correct copy of the foregoing document on all counsel of record in this matter via service by the Court's CM/ECF system.

*/s/ Robert L. Avers*
Robert L. Avers (MI Bar #P75396)

31

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### (MILWAUKEE DIVISION)

| | | |
|---|---|---|
| NANCY A. STENCIL, DANIEL C. RUSSLER, LISA C. MUELLER, CHERYL L. MARANTO, GERARD D. LISI, JAMES B. KURZ, MARGARET L. DEMUTH, PAUL DEMAIN, JAMES R. BOTSFORD and RICHARD BECHAN, | § § § § § § § § | |
| *Plaintiffs*, | § § | Case No: 2:22-cv-00305 |
| v. | § § | Hon. Lynn Adelman |
| RONALD H. JOHNSON, THOMAS P. TIFFANY, and SCOTT L. FITZGERALD, | § § § § | |
| *Defendants*. | § § | |

---

## INDEX OF EXHIBITS TO
## DEFENDANTS THOMAS P. TIFFANY AND SCOTT L. FITZGERALD'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

| Exhibit | Description |
|---|---|
| Exhibit A | *Cox v. McCrery*, 2007 WL 97142 (W.D. La. Jan. 5, 2007) *(unreported decision)* |
| Exhibit B | *Lyons v. Sundquist*, 41 F. App'x 832 (6th Cir. 2002) *(unreported decision)* |
| Exhibit C | *Morris v. Manufacturers Life Ins. Co.*, 1997 WL 534156 (S.D. Ind. Aug. 6, 1997) *(unreported decision)* |
| Exhibit D | *Young v. State of Ill.*, 111 F.3d 134 (7th Cir. 1997) *(unreported decision)* |