**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WISCONSIN
(MILWAUKEE DIVISION)**

| | | |
|---|---|---|
| NANCY A. STENCIL, DANIEL C. | ) | |
| RUSSLER, LISA C. MUELLER, | ) | |
| CHERYL L. MARANTO, GERARD D. | ) | |
| LISI, JAMES B. KURTZ, MARGARET L. | ) | |
| DEMUTH, PAUL DEMAIN, JAMES R. | ) | |
| BOTTSFORD and RICHARD BECHEN, | ) | **Case No.: 22-cv-305-LA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD H. JOHNSON, THOMAS P. | ) | |
| TIFFANY, and SCOTT L. | ) | |
| FITZGERALD, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANT RONALD H. JOHNSON'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**
_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION....................................................................................................... 1

BACKGROUND ......................................................................................................... 3

    I.    Factual Background. ....................................................................................... 3

    II.   Legal Background. .......................................................................................... 4

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................... 6

    I.    Plaintiffs' Case Suffers from Jurisdictional Defects that Cannot Be Corrected; the Complaint Should Be Dismissed with Prejudice. [Rule 12(b)(1)] ................................... 6

        A.    Plaintiffs do not have standing to bring their only claim for relief........................... 7

            1.    *There is no private right to enforce the Disqualification Clause.* ................... 7

            2.    *Plaintiffs allege no more than generalized concern—not a concrete, particularized, and imminent injury required for standing.* ........................... 10

        B.    Congress has the exclusive authority—to the exclusion of the courts—to disqualify its Members................................................................................... 12

    II.   Even If Jurisdiction Were Proper, Plaintiffs Fail to State a Claim for Relief Under the Declaratory Judgment Act. [Rule 12(b)(6)] .............................................. 15

        A.    The Amnesty Act of 1872 bars Plaintiffs' claim. .................................................. 16

        B.    Plaintiffs' reliance on the Declaratory Judgment Act is improper. ........................ 17

CONCLUSION .......................................................................................................... 18

CERTIFICATE OF SERVICE ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Aetna Life Ins. Co. of Hartford v. Haworth*,
    300 U.S. 227 (1937)............................................................................................7

*Am. Legion v. Am. Humanist Ass'n*,
    139 S. Ct. 2067 (2019)....................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................6

*Baker v. Carr*,
    369 U.S. 186 (1962)....................................................................................11, 13

*Barry v. U.S. ex rel. Cunningham*,
    279 U.S. 597 (1929)..............................................................................2, 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................6

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009)...........................................................................11

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ...........................................................................6

*Carney v. Adams*,
    141 S. Ct. 493 (2020)........................................................................................8

*Cawthorn v. Circosta*,
    --- F. Supp. 3d ----, 2022 WL 738073 (E.D.N.C. Mar. 10, 2022) .....................2, 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)........................................................................................10

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)..............................................................................11, 12

*Greene v. Raffensperger*,
    No. 22-CV-1294-AT, 2022 WL 1136729 (N.D. Ga. Apr. 18, 2022) .....................16

*In re Griffin*,
    11 F. Cas. 7 (C.C.D. Va. 1869).......................................................8, 9, 10, 17

*Hansen v. Finchem*,
    No. CV 2022-004321, slip op. (Sup. Ct. of Ariz., Maricopa Cnty.
    Apr. 22, 2022)..................................................................................................10

# TABLE OF AUTHORITIES (con't)

*Hooper v. Hart,*
  56 F.R.D. 476 (W.D. Mich. 1972) ...........................................................................15

*Jacobson v. Fla. Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) ...............................................................................12

*Johnson v. Apna Ghar, Inc.,*
  330 F.3d 999 (7th Cir. 2003) .....................................................................................5

*Kokkonen v. Guardian Life Ins. Co.,*
  511 U.S. 375 (1994).....................................................................................................5

*Lance v. Coffman,*
  549 U.S. 437 (2007)................................................................................................2, 11

*Lyons v. Sundquist,*
  41 F. App'x 832 (6th Cir. 2002) .........................................................................13, 14

*Ex parte Levitt,*
  302 U.S. 633 (1937).....................................................................................................12

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).......................................................................................................6

*Ex parte McCardle,*
  7 Wall. 506 (1868).......................................................................................................17

*McIntyre v. Fallahay,*
  766 F.2d 1078 (7th Cir. 1985) ..........................................................................2, 13, 14

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007).......................................................................................................7

*Meyer Mfg. Co. v. Cuisine-Ware, Inc.,*
  No. 86 C 8144, 1987 WL 5394 (N.D. Ill. Jan. 14, 1987) .......................................18

*Morgan v. United States,*
  801 F.2d 445 (D.C. Cir. 1986) ................................................................................13

*Powell v. McCormack,*
  395 U.S. 486 (1969).....................................................................................................12

*United States v. Powell,*
  27 F. Cas. 605 (C.C.D. N.C. 1871).............................................................................5

*Preiser v. Newkirk,*
  422 U.S. 395 (1975).....................................................................................................15

*Reynolds v. Sims,*
  377 U.S. 533 (1964).....................................................................................................11

# TABLE OF AUTHORITIES (con't)

*Roudebush v. Hartke*,
  405 U.S. 15 (1972)..................................................................................13

*Schilling v. Rogers*,
  363 U.S. 666 (1960)..................................................................................7

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)................................................................................12

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ..................................................................6

*Slaby v. Fairbridge*,
  3 F. Supp. 2d 22 (D.D.C. 1998).............................................................9

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................17

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)......................................................................7, 10

*Washington v. U.S. Tennis Ass'n*,
  290 F. Supp. 2d 323 (E.D.N.Y. 2003) ..................................................10

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
  330 U.S. 75 (1947)................................................................................15

**Constitutional Provisions**

U.S. Const. art. I, § 5, cl. 1.........................................................2, 12, 13, 14

U.S. Const. art. I, § 6, cl. 1.....................................................................3

U.S. Const. art. I, § 6, cl. 2...................................................................12

U.S. Const. amend. IX............................................................................10

U.S. Const. amend. XIV .................................................................. passim

U.S. Const. amend. XIV, § 3 ............................................................ passim

U.S. Const. amend. XIV, § 5 ...............................................................1, 8

U.S. Const. amend. XV.............................................................................9

**Statutes**

18 U.S.C. § 2383..............................................................................10, 17

42 U.S.C. § 1983.....................................................................................9

The Amnesty Act of 1872,
Pub. L. No. 42-193, 17 Stat. 142 (1872)................................................................2, 15, 16, 17

Declaratory Judgment Act,
28 U.S.C. § 2201(a) ....................................................................................... passim

Electoral Count Act,
Pub. L. 49–90, 24 Stat. 373 (1887) ......................................................................3

First Ku Klux Klan Act,
ch. 114, 16 Stat. 140 (1870)..................................................................................9

*Federal Rules*

Fed. R. Civ. P. 12(b)(1)................................................................................................5, 6

Fed. R. Civ. P 12(b)(6)..............................................................................................6, 15

*Other Authorities*

*Cawthorn v. Circosta*, No. 5:22-cv-00050-M (E.D.N.C.) ....................................................4

Chuck Todd, Sally Bronston, & Matt Rivera, *Rep. John Lewis: 'I Don't See
Trump as a Legitimate President*', NBC News (Jan. 13, 2017) ................................4

Derek T. Muller, *Scrutinizing Federal Electoral Qualifications*,
90 Ind. L.J. 559, 566 (2015)..................................................................................13

Emma Hurt, *Trump Hasn't Conceded Georgia. Neither Did Stacey Abrams. What
Changed?*, NPR (Nov. 18, 2020)............................................................................4

Gerard N. Magliocca, *Amnesty and Section Three of the Fourteenth Amendment*,
36 Const. Comment. 87 (2021)............................................................................4, 9

*Greene v. Raffensperger*, No. 1:22-cv-01294 (N.D. Ga.)..................................................4

*Hansen v. Finchem*, No. CV 2022-004321 (Sup. Ct. of Ariz., Maricopa Cnty.)...........................4

Ted Rall, *Op-Ed.: Election Doubting is All-American*,
Wall St. J. (Mar. 4, 2021)....................................................................................3

# INTRODUCTION

This case is a coordinated ruse by operatives of the Democratic party to score political points ahead the 2022 midterm elections. On paper, Plaintiffs' case asks for a declaratory judgment on the meaning of Section 3 of the Fourteenth Amendment (Disqualification Clause). But make no mistake, the way Plaintiffs see the case, they cannot lose: at best, they convince the Court to issue a first-of-its-kind advisory opinion on the Disqualification Clause (but probably not); at worst, they use these court proceedings to trot out 80-pages and 187-paragraphs advancing the risible farce that Defendants—three Members of Congress who are up for reelection in November—engaged in an insurrection against the United States. Plaintiffs' political motivations explain their delay in filing their complaint. While the focal point of Plaintiffs' conspiracy theories is the January 6, 2021 events at the U.S. Capitol, Plaintiffs waited until March 10, 2022 (the middle of campaign season for 2022 midterm elections) to file suit. Defendant Senator Ronald Johnson respectfully asks the Court to see this case for what it is, refuse to permit Plaintiffs to so mortgage this Court's credibility, and summarily dismiss Plaintiffs' complaint for declaratory relief with prejudice.

Most critically, there is no doubt Plaintiffs lose on the law. Plaintiffs ask the Court to declare (1) that the events of January 6 constituted an "insurrection or rebellion" against the United States, as that phrase is used the Disqualification Clause; and (2) that Defendants—all Republican Members of Congress—somehow engaged in an insurrection or rebellion. Plaintiffs say nothing about their authority to seek such a declaration or how this novel would be used.

Plaintiffs' silence on this point reveals a fundamental defect with the case: the Court lacks jurisdiction over Plaintiffs' claim. *First*, Plaintiffs have no private right to enforce the Disqualification Clause. Rather, Section 5 of the Fourteenth Amendment makes clear that "***[t]he Congress shall have the power to enforce***, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added). While Congress is presently considering implementing legislation to allow ***the Attorney General*** to enforce the Disqualification Clause, H.R. 1405, 117th Cong. (1st Sess. 2021-2022), no private right exists. *Second*, Plaintiffs lack

standing. They have expressed no more than generalized concern about the government's enforcement of the Disqualification Clause, which is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the U.S. Supreme Court has] refused to countenance." *See Lance v. Coffman*, 549 U.S. 437, 442 (2007).

*Third*, Plaintiffs overlook that the text, history, and precedent confirm that only Congress may decide qualification questions under Section 3 of the Fourteenth Amendment. Article I, Section 5 states as much: "Each House [of Congress] shall be the Judge of the … Qualifications of its own Members … ." U.S. Const. art. I, § 5, cl. 1. And, in no uncertain terms, the Seventh Circuit has held that, as to qualifications, Congress "has the authority 'to determine the facts and apply the appropriate rules of law, and, finally, to render a judgment which is beyond the authority of any other tribunal to review.'" *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985) (quoting *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 613 (1929)). Indeed, both Chambers of Congress have a history of deciding these issues.

Even if Plaintiffs could somehow clear these jurisdictional hurdles (they cannot), their declaratory-judgment claim fails on the merits. For one, prompted by the prospect of reconciliation after the Civil War, Congress removed the disabilities imposed by the Disqualification Clause in the Amnesty Act of 1872. A federal court recently dismissed a similar lawsuit in North Carolina on this basis: "the plain language in Section 3 and the 1872 Act reveals that Congress has removed Section 3's disability from 'all persons whomsoever,' which includes current members of Congress like the Plaintiff." *Cawthorn v. Circosta*, --- F. Supp. 3d ----, 2022 WL 738073, at *11 (E.D.N.C. Mar. 10, 2022). Even more, Plaintiffs' use of the Declaratory Judgment Act is improper. It is blackletter law that the Declaratory Judgment Act does not create independent rights, only an additional remedy. Yet, Plaintiffs identify no protected personal "right" they seek to vindicate. Rather, they seek an advisory declaration that the events of January 6th constituted an "insurrection" or "rebellion" against the United States and that Senator Johnson somehow engaged in the "insurrection" or "rebellion." Such a request is simply not permitted by the Declaratory Judgment Act.

For all these reasons, Plaintiffs' complaint should be dismissed with prejudice.

## BACKGROUND

### I.    Factual Background.

On March 10, 2022, Plaintiffs filed an 80-page, 187-paragraph complaint that wildly spins Senator Johnson's and the House Defendants' legitimate concerns about the integrity and security of the 2020 Presidential Election into a conspiracy of insurrection and rebellion against the United States. While Plaintiffs' complaint is littered with enough factual inaccuracies and leaps in logic to make a tinfoil hat *de rigueur* for its consumption, Plaintiffs' allegations directed at Senator Johnson are particularly thin. Examined in context, the few allegations regarding Senator Johnson reflect precisely what a sitting U.S. Senator should have been doing at critical points in 2020 and 2021: participating in the political process to voice—and vet—the concerns and beliefs of his constituents.

The activities Plaintiffs cite as evidence of "insurrection" by Senator Johnson include:

- Providing constituents with a forum to report potential or known irregularities in the 2020 Presidential Election (Compl. ¶ 71);

- Questioning Executive Branch officials about their ongoing investigations into reported irregularities in the 2020 Presidential Election (*id.* ¶ 88);

- Holding Senate committee hearings on the claimed irregularities and investigations into 2020 Presidential Election (*id.* ¶¶ 99, 121–22, 129–31);

- Requesting and voting on whether to authorize a congressional commission to investigate the 2020 Presidential Election and to audit returns in states where the results were disputed (*id.* ¶ 141); and

- Discussing legislative activity with the media and on social media, specifically as it related to the 2020 Presidential Election and Congress's process for voting under the Electoral Count Act (*id.* ¶ 148–49).

To be clear, federal lawmakers perform these sorts of tasks daily; the Constitution in fact grants lawmakers absolute immunity when acting in service of such valid legislative purposes. *See* U.S. Const. art. I, § 6, cl. 1 (Speech or Debate Clause).

Plaintiffs do not deny this, nor will they be able to honestly explain away legislative efforts by **Democratic** lawmakers questioning perceived election irregularities. *See, e.g.*, Ted

3

Rall, *Op-Ed.: Election Doubting is All-American*, Wall St. J. (Mar. 4, 2021) (recounting 2017 tweet by Rep. Nancy Pelosi claiming, "Our election was hijacked. There is no question."), https://on.wsj.com/3L8pfeN; Chuck Todd, Sally Bronston, & Matt Rivera, *Rep. John Lewis: 'I Don't See Trump as a Legitimate President'*, NBC News (Jan. 13, 2017), https://nbcnews.to/3LaYczw; Emma Hurt, *Trump Hasn't Conceded Georgia. Neither Did Stacey Abrams. What Changed?*, NPR (Nov. 18, 2020), https://n.pr/3L7zvUx. That such statements by members of the Democratic party are considered routine while similar statements by Republicans are tantamount to insurrection exposes Plaintiffs' complaint as nakedly partisan.

Plaintiffs assert a single claim under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Unlike similar cases filed in North Carolina, Georgia, and Arizona,[1] in which electors challenged Members' access to the 2022 ballot, Plaintiffs seek no affirmative relief other than an advisory opinion from the Court on two questions:

> (1) Whether the events at the U.S. Capitol on January 6th "constitute[d] an 'insurrection or rebellion against the United States,'" as that phrase is used in Section 3 of the Fourteenth Amendment; and

> (2) Whether Senator Johnson and the House Defendants "engage[d] in" or "voluntar[ily] … assisted" with the claimed insurrection or rebellion.

(*See* Compl. ¶ 186.)

Senator Johnson now moves to dismiss the complaint.

## II. Legal Background.

Plaintiffs stake their case on the Fourteenth Amendment's Disqualification Clause. *See* U.S. Const. amend. XIV, § 3. This vestigial was adopted shortly after the Civil War to bar civil officials and military officers who aided the Confederacy from serving in government and thereby influencing national legislation and post-war reforms in the South. *See* Gerard N. Magliocca, *Amnesty and Section Three of the Fourteenth Amendment*, 36 Const. Comment. 87,

---

[1] *See generally Cawthorn v. Circosta*, No. 5:22-cv-00050-M (E.D.N.C.) (complaint filed on Jan. 31, 2022); *Greene v. Raffensperger*, No. 1:22-cv-01294 (N.D. Ga.) (complaint filed on Apr. 1, 2022 seeking to enjoin administrative challenge); *Hansen v. Finchem*, No. CV 2022-004321 (Sup. Ct. of Ariz., Maricopa Cnty.) (complaint filed on Apr. 7, 2022).

87 (2021). While the Disqualification Clause was used several times after the Civil War, it has largely been forgotten since 1871, *see United States v. Powell*, 27 F. Cas. 605 (C.C.D. N.C. 1871). That is, until recently when Democratic operatives weaponized the Clause in competitive races across the country to attempt to unseat Republican Members of Congress in litigation rather than facing them at the ballot box (*see* note 1, *supra*).

> The Disqualification Clause provides:
>
> No Person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, **to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof**. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3 (emphasis added). Plaintiffs' declaratory-judgment action emphasizes a single element in the Disqualification Clause (**bolded above**) and seeks a bare declaration from the Court that: (1) the January 6th events at the U.S. Capitol "constitute[d] an 'insurrection or rebellion against the United States,'" as referenced in the Disqualification Clause and (2) Senator Johnson and the House Defendants "engage[d] in" or "voluntar[ily] … assist[ed]" with the purported insurrection or rebellion. (*See* Compl. ¶ 186.)

## LEGAL STANDARD

*Rule 12(b)(1) Standard.* Federal courts are courts of limited jurisdiction. They are created by Congress under Article III of the Constitution and have the power to decide only those cases over which Congress grants jurisdiction. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Plaintiffs have the burden of establishing the court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). This includes constitutional standing to sue.

"The party invoking federal jurisdiction bears the burden of establishing [all the standing] elements," and, "[s]ince they are not mere pleading requirements but rather an indispensable part

of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof … ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A court must therefore "(1) first identif[y] the well-pleaded factual allegations by discarding the pleadings that are 'no more than conclusions' and (2) then determine[] whether the remaining well-pleaded factual allegations 'plausibly give rise to an entitlement of relief.'" *Silha*, 807 F.3d at 174 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

   ***Rule 12(b)(6) Standard.*** In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 677. In so doing, "a court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Indeed, the court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief. *Id.* The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

**I.    Plaintiffs' Case Suffers from Jurisdictional Defects that Cannot Be Corrected; the Complaint Should Be Dismissed with Prejudice. [Rule 12(b)(1)]**

   The Court must first determine whether it has jurisdiction to hear this declaratory-judgment action. It does not. *First*, Plaintiffs cannot show standing. Absent congressional action, Plaintiffs have no private right to enforce the Section 3 of the Fourteenth Amendment; thus, they cannot identify any judicially remediable right on which to award relief. *Second*, Plaintiffs fail to allege a concrete, particularized, and imminent injury required for standing. Plaintiffs only state a generalized concern about the meaning and enforcement of the Disqualification Clause, which

6

falls short of a "personal" injury redressable through adjudication of this case. More fundamentally, text, history, and precedent compel that only Congress may decide qualification matters under the Disqualification Clause—to the exclusion of the courts.

**A.      Plaintiffs do not have standing to bring their only claim for relief.**

The Declaratory Judgment Act (or Act) provides that, "In a ***case of actual controversy*** within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The phrase "case of actual controversy" in the Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). For there to be an Article III case or controversy, a plaintiff must have a "personal stake" in the case—that is, standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Standing requires a plaintiff show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* To have standing, a plaintiff must also show he has a right to bring the cause of action.

*1.      There is no private right to enforce the Disqualification Clause.*

Plaintiffs ask the Court to declare that the events at the U.S. Capitol on January 6th qualify as an "insurrection or rebellion against the United States" within the meaning of the Disqualification Clause and that Senator Johnson and the House Defendants engaged in such insurrection or rebellion. (Compl. ¶ 186.) Before reaching these questions, however, Plaintiffs must establish their right to enforce the Disqualification Clause. If Plaintiffs have no right to enforce the Disqualification Clause, Plaintiffs have no judicially remediable "right" for the Court to declare under the Act and thus lack standing to sue.

It is well-settled that "the operation of the Declaratory Judgment Act is procedural only," *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937), and the "the availability of [declaratory] relief presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). So, the Act does not create a private right of action; rather, it

7

is a mechanism for a plaintiff to obtain a declaration of rights regarding an existing cause of action. The threshold question therefore is whether Plaintiffs, as private citizens, have a right to enforce the Disqualification Clause. They clearly do not.

Not every constitutional (or statutory) directive is amenable to judicial enforcement at the behest of a private party. Courts are not roving monitors of constitutional compliance; they may vindicate only concrete rights or interests vested in specific persons. *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law" does not create a justiciable controversy.). Put differently, it is not enough for a plaintiff to point to a law that he alleges has been transgressed; he must separately establish his entitlement to a judicial remedy.

There is no express or implied private right to enforce the Disqualification Clause. Instead, the text of Section 5 of the Fourteenth Amendment makes plain that "***[t]he Congress shall have the power to enforce***, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added).

Chief Justice Chase's analysis of the Disqualification Clause in the seminal case, *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869), confirms the text. There, the court explained "[t]he object of the [Disqualification Clause] is to exclude from certain offices a certain class of persons," but recognized that such disqualification must follow process. *Id.* at 26. "For, in the very nature of things, it must be ascertained what particular individuals are embraced by the definition … . To accomplish this ascertainment and ensure effective results, proceedings, evidence, decisions, and enforcements of decisions, more or less formal, are indispensable; ***and these can only be provided for by [C]ongress***." *Id.* (emphasis added). The court then pressed Congress to pass such legislation to enforce the Disqualification Clause:

> Now, the necessity of this is recognized by the [Fourteenth] [A]mendment itself, in its fifth and final section, which declares that "congress shall have power to enforce, by appropriate legislation, the provision[s] of this article."

> There are, indeed, other sections than the [Disqualification Clause], to the enforcement of which legislation is necessary; but there is no one which more clearly requires legislation in order to give effect to it.

*Id.* So, it is "beyond reasonable question" that the Disqualification Clause was intended "to create a disability, to be removed in proper cases by a two-thirds vote, and to be made operative in other cases by the legislation of [C]ongress in its ordinary course." *Id.*

To be sure, since ratification, Congress has passed (and repealed) legislation enforcing the Disqualification Clause. A year after the *Griffin* case, Congress enacted the First Ku Klux Klan Act, ch. 114, 16 Stat. 140 (1870), "to protect voting rights recently guaranteed by the Fifteenth Amendment." Magliocca, *supra*, at 108 & n.112. Section 15 of the act "declared that any person who knowingly held an office while ineligible due to [the Disqualification Clause] was guilty of a misdemeanor." *Id.* at 109. More recently, in response to the events of January 6th, sponsors introduced H.R. 1405, 117th Cong. (1st Sess. 2021-2022). This bill would grant the Attorney General a right to initiate "civil action[s] for a declaratory judgment" against officeholders "who engage[] in insurrection or rebellion," § 1(b); set forth procedures for three-judge district courts to hear the matters, § 1(d)(1)–(3); and impose a "clear and convincing" burden of proof, § 1(d)(4). Notably, although H.R. 1405 would vest the Attorney General with a right to enforce the Disqualification Clause, including disqualifying or removing officeholders, § 1(c)(1)(A)–(B), it would not create a ***private*** right of action for other individuals like Plaintiffs.

Of course, Congress has created a private right of action for enforcement of other provisions of the Fourteenth Amendment. Section 1983 is an obvious example, allowing any person to seek judicial relief from infringements of federally protected rights by officials acting "under color" of state law. *See generally* 42 U.S.C. § 1983. Plaintiffs of course do not claim Senator Johnson has acted under the color of state law, nor could they.

That the Disqualification Clause provides no private right of action makes sense— because the Disqualification Clause is particularly ill-suited for private enforcement. Its terms prescribe a constraint on the qualifications to hold certain public offices; they do not vindicate personal liberty or property interests of private citizens. *Cf. Slaby v. Fairbridge*, 3 F. Supp. 2d

22, 30 (D.D.C. 1998) (holding that because Ninth Amendment claims are only derivative of other, explicitly enumerated constitutional rights, a plaintiff "cannot independently assert[] a cause of action under the Ninth Amendment"); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003) ("[T]here is no private action for damages under the Commerce Clause."). Further, as Chief Justice Chase alluded in *Griffin*, adjudication inevitably partakes of a criminal or quasi-criminal proceeding given the gravity of its disqualifying offenses (i.e., "insurrection" and "rebellion").[2]

In sum, Plaintiffs have no private right to enforce, or seek a declaration on, the terms of the Disqualification Clause. Rather, the Clause requires Congress to enact legislation to enforce any disqualification, which it has not done. Because Plaintiffs have identified no "judicially remediable right" on which to award declaratory relief, they lack standing to bring their claim.

> 2.   *Plaintiffs allege no more than generalized concern—not a concrete, particularized, and imminent injury required for standing.*

The requirement that an injury be "concrete and particularized … and redressable by the court ensures that federal courts decide only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government.'" *TransUnion*, 141 S. Ct. at 2203 (citations omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches."). That means courts must turn away "hypothetical or abstract disputes," disclaim "roving commission to publicly opine on every legal question," avoid veiled requests to "exercise general legal oversight of the Legislative and Executive Branches," and ensure decisions are not merely advisory. *TransUnion*, 141 S. Ct. at 2203. "In sum … a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* (quoting *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019)).

---

[2] Congress has enacted a criminal statute prohibiting rebellion or insurrection, 18 U.S.C. § 2383, which bolsters the argument that "***only the government***, and not private citizens, must be the party initiating [a Disqualification Clause] action." *Hansen v. Finchem*, No. CV 2022-004321, slip op. at 7 (Sup. Ct. of Ariz., Maricopa Cnty. Apr. 22, 2022), attached as **Exhibit A**. Defendants have not been charged with the crime of insurrection or rebellion, nor could they be.

This limitation on federal courts is probably why Plaintiffs are coy in articulating their claimed injury. At first, they claim generally that the case was "brought to hold [Defendants] accountable for their actions … by imposing on them the consequences dictated by [the Disqualification Clause]." (Compl. ¶ 12.) Perhaps recognizing that such a generalized grievance about government conduct runs headlong into binding precedent—it is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Court has] refused to countenance," *Lance v. Coffman*, 549 U.S. 437, 442 (2007)—Plaintiffs shift to a disenfranchisement-injury theory (*see* Compl. ¶ 187 ("As voters and citizens … Plaintiffs have an interest in the outcome of this action for … their franchise is affected by the answer to the questions posed to the Court.")). Neither is sufficient here.

The House Defendants thoroughly (and correctly) outlined the shortcomings of Plaintiffs' generalized and undifferentiated injury in their motion (*see* House Defs.' Mot. to Dismiss at 8–11 (Doc. 19)), so Senator Johnson will avoid repeating those arguments. Suffice it to say that the generalized nature of Plaintiffs' claimed interest—basically a judicial nudge to ease Congress's enforcement of the Disqualification Clause via legislation—is undifferentiated from the interests of all 4,457,375 voters in Wisconsin. *See Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) ("Berg's stake in the legitimacy of Obama's presidency is shared by an even greater number of people, i.e., all 300 million-plus U.S. citizens, whether voters or not.").

Plaintiffs' disenfranchisement-injury theory fares no better. The Supreme Court has made clear that, in the voting context, standing requires plaintiffs to allege facts "showing disadvantage to themselves ***as individuals*** [to] have standing to sue." *Baker v. Carr*, 369 U.S. 186, 206 (1962) (emphasis added). This is because "a person's right to vote is 'individual and personal in nature.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). For this reason, the Supreme Court's voting-rights cases have centered on standing to remedy vote dilution and nullification, and circuit courts have held "that absent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact

that a candidate for whom she votes loses or stands to lose an election." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1247 (11th Cir. 2020) (collecting cases from other circuits).

Whether the events of January 6th at the U.S. Capitol are deemed an "insurrection or rebellion against the United States," as that phrase is used in the Disqualification Clause, or whether Defendants "engage[d] in" or "voluntar[ily] … assisted" in what Plaintiffs claims is an insurrection or rebellion (*see* Compl. ¶ 186), has absolutely nothing to do with Plaintiffs' franchise. The answers to these questions will not keep Plaintiffs from voting come August and November 2022; will not impact the process by which they vote; will not dilute or nullify their votes; and will not limit their free exercise of choice in casting their ballots. Simply, Plaintiffs' questions are "abstract interest[s]" that are "nonjusticiable 'general interest common to all members of the [Wisconsin] public.'" *See Gill*, 138 S. Ct. at 1931 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam)). At most, Plaintiffs claim no more than a "generalized interest of all citizens in constitutional governance," which the Supreme Court has characterized as "an abstract injury" insufficient to establish standing. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974) (citizen group lacked standing to seek declaration that the Incompatibility Clause of Article I, Section 6 prohibited Members of Congress from holding commissions in the Armed Forces Reserve).

Because Plaintiffs have not identified a concrete, particularized, and imminent injury, they lack standing to seek declaratory relief under the Disqualification Clause.

### B. Congress has the exclusive authority—to the exclusion of the courts—to disqualify its Members.

Article I, Section 5 of the Constitution directs that "Each House [of Congress] shall be the Judge of the … Qualifications of its own Members." U.S. Const. art. I, § 5, cl. 1. The Supreme Court has described the Qualifications Clause as a "'textually demonstrable commitment' to Congress to judge only the qualifications expressly set forth in the Constitution," *Powell v. McCormack*, 395 U.S. 486, 548 (1969), and vests Congress with the "sole authority … to judge … the elections, returns and qualifications of its members," *Barry v.*

*U.S. ex rel. Cunningham*, 279 U.S. 597, 619 (1929). Thus, whether an individual is **qualified** to be a Member of Congress under express provisions of the Constitution is "a nonjusticiable political question" delegated to Congress. *Roudebush v. Hartke*, 405 U.S. 15, 19 (1972).

That Article I, Section 5 is a "clear[] case of 'textually demonstrable constitutional commitment'" to Congress "to the exclusion of the courts" has been repeated by some of the most formidable jurists. *See Morgan v. United States*, 801 F.2d 445, 447 (D.C. Cir. 1986) (quoting *Baker*, 369 U.S. at 217). In *Morgan*, then-Judge Scalia deemed Article I, Section 5 clear and established: "The provision states not merely that each House 'may judge' these matters, but that each House 'shall be *the* Judge'. The exclusion of others—and in particular of others who are judges—could not be more evident." *Id.* He went on find the court lacked jurisdiction to hear a group of Indiana voters' constitutional challenges to the House's vote to seat a Democratic candidate, Frank McCloskey, despite the state certifying the election in favor of Republican, Richard McIntyre. *Id.* at 446, 447. In another case involving the 1984 McCloskey-McIntyre race, Judge Easterbrook concluded, "The House is not only 'Judge' but also final arbiter" of questions under Article I, Section 5, and that "[i]ts decisions about which ballots count, and who won, are not reviewable in any court." *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985). So it is, as to qualifications, Congress "has the authority 'to determine the facts and apply the appropriate rules of law, and, finally, to render a judgment which is beyond the authority of any other tribunal to review.'" *Id.* (quoting *Barry*, 279 U.S. at 613).

Nor can it be contested that the Disqualification Clause operates as a **qualification** that is exclusively within Congress's jurisdiction. *See* Derek T. Muller, *Scrutinizing Federal Electoral Qualifications*, 90 Ind. L.J. 559, 566 (2015) (constitutional qualifications for Senate are: at least 30 years old; nine years a citizen of the United States; inhabitant of the state; not a holder of another civil office or recipient of increased emoluments; not disqualified from federal office after impeachment and conviction; not one who engaged in insurrection or rebellion; and elected). For instance, the Sixth Circuit in *Lyons v. Sundquist*, held that the Disqualification Clause "specif[ies] 'qualifications' within the meaning of that term as used in the first sentence

of Art. I, § 5 of the Constitution." 41 F. App'x 832, 832 (6th Cir. 2002). It followed by pointing out, "[t]o the extent that Lyons is challenging the qualifications of the individual who was seated as the Representative from the Fourth Congressional District of Tennessee, it is clear that Lyons has chosen the wrong forum. Federal courts may not award relief in this situation, and Lyons's federal claim thus presents no 'case or controversy' justiciable in the federal courts under Art. III of the Constitution." *Id.* at 833 (citing *McIntyre*, 766 F.2d at 1081).

Congress's history of deciding matters under the Disqualification Clause supports this. Following the 1918 election, the House of Representatives applied the Disqualification Clause to refuse to seat Victor Berger, a Wisconsin socialist who had given "aid and comfort" to the Central Powers during World War I. *See* 6 Cannon's Precedents of the House of Representatives of the United States 54 (1935). The House Committee on Elections expressly "declined to be governed by judgment and verdict of judge and jury of Federal court" and "determine[d] for itself the question of guilt or innocence of [the] Member-elect." *Id.* at 52. The House concluded that, under Article I, Section 5, it "has always maintained its absolute right to exclude Members-elect and to prevent their taking the oath of office." *Id.* at 55 (referencing "a fourth qualification prescribed by the Constitution" in Section 3 of the Fourteenth Amendment).

The Senate has also addressed the Disqualification Clause. In 1870, the North Carolina Legislature elected Confederacy-era Governor Zebulon B. Vance as Senator. 1 Asher C. Hinds, Hinds' Precedents of the House of Representatives of the United States § 463 (1907). Governor Vance's opponent, Joseph Abbott, argued he was entitled to be seated because Vance was ineligible under the Disqualification Clause because of his affiliation with the Confederacy. *Id.* When it became apparent the Senate would not reach a two-thirds consensus to remove the disability, Vance resigned. *Id.* The Senate, exercising its authority under Article I, Section 5, nonetheless denied Abbott the seat because he had not received a majority of the votes. *Id.*

Text, history, and precedent confirm that only Congress may decide qualification questions arising under Section 3 of the Fourteenth Amendment. Yet, Plaintiffs ask this Court to disregard over 150 years of the text, history, and precedent and take up for itself a matter the

Constitution has unambiguously assigned to the Legislative Branch. The Court should decline an invitation that, if accepted, promises to further ensnare the judiciary in political brambles for years to come. To be sure, Plaintiffs will argue are they not asking the Court to ***decide*** the ultimate Disqualification Clause question—namely, whether Senator Johnson should be disqualified from office—but rather they seek a mere declaration on whether January 6th was an insurrection or rebellion and whether Senator Johnson engaged in insurrection or rebellion. But therein lies the problem. If the Court were to answer these two questions (it should not), the Court's declaration cannot bind Congress. Congress has the absolute authority to decide whether its Members are qualified to hold office. Any declaration on Plaintiffs' questions is by definition advisory: a nonbinding pronouncement that does not affect the rights of the litigants in the case. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also Hooper v. Hart*, 56 F.R.D. 476, 477 (W.D. Mich. 1972) (dismissing electors' declaratory-judgment action seeking a declaration that Senator Phillip Hart was subject to recall because complaint sought "advisory opinion[] … in the form of a declaratory judgment[] as to the legal issues identified"). And advisory "declaratory judgments" are just as impermissible "as any other field." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). At bottom, the Court should refrain from offering what would effectively be an op-ed on the Disqualification Clause and January 6th.

## II. Even If Jurisdiction Were Proper, Plaintiffs Fail to State a Claim for Relief Under the Declaratory Judgment Act. [Rule 12(b)(6)]

Plaintiffs fail to state a claim upon which relief can be granted. Through the Amnesty Act of 1872, Congress removed the disabilities imposed by the Disqualification Clause, including on current members of Congress. Likewise, Plaintiffs' use of the Declaratory Judgment Act is entirely improper. Plaintiffs identify no protected "rights" they seek to vindicate through their declaratory judgment claim; rather, they ask the Court is issue an advisory declaration with no legal effect on the Disqualification Clause and January 6th.

15

A.      **The Amnesty Act of 1872 bars Plaintiffs' claim.**

Animated by the prospect of reconciliation after the Civil War, the 42nd Congress enacted the Amnesty Act of 1872. The Amnesty Act of 1872 removed "***all political disabilities imposed*** by the [Disqualification Clause] … ***from all persons whomsoever***," except Members in the 36th and 37th Congresses and other officers inapplicable here. Amnesty Act of 1872, Pub. L. No. 42-193, 17 Stat. 142 (emphasis added). Indeed, on the same day Plaintiffs filed their complaint, a federal district court concluded that this categorical dispensation—which is not encumbered by any temporal limitations—continues in full force and effect, and thus precludes disqualification under the Disqualification Clause. *See Cawthorn v. Circosta*, --- F. Supp. 3d ----, 2022 WL 738073, at *12 (E.D.N.C. Mar. 10, 2022) This Court should adopt the same sound construction of the Amnesty Act of 1872.

In *Cawthorn*, a current Member of Congress sued to enjoin a ***state*** administrative process seeking to disqualify him for the 2022 election under the Disqualification Clause. *Id.* at *11. The Court enjoined the process, in part, because "the plain language in Section 3 and the 1872 Act reveals that Congress has removed Section 3's disability from 'all persons whomsoever,' which includes current members of Congress like the Plaintiff." *Id.* While "Congress could have limited the Act to remove Section 3's disabilities from 'persons currently subject to the disabilities' or 'persons against whom the disabilities were lodged' at the time (i.e., the 'Confederates')[, it] did not do so. By the plain language of Section 3 and the 1872 Act, Congress removed ***all*** of Section 3's disabilities from ***all*** persons whomsoever who were not explicitly excepted." *Id.* at *12; *but see Greene v. Raffensperger*, No. 22-CV-1294-AT, 2022 WL 1136729, at *25 (N.D. Ga. Apr. 18, 2022) (stating in dicta[3] the Amnesty Act of 1872 "does not provide amnesty prospectively"), *appeal docketed*, No. 22-11299 (Apr. 19, 2022).

---

[3] Prior to reaching the plaintiff's claim under the Amnesty Act of 1872, the court found that the plaintiff had "made no argument that the 1872 Amnesty Act itself confers an explicit or implied private right of action," and that she had not "carried her burden to establish that the Court has jurisdiction over her 1872 Act claim." *Id.* at *9. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."

Plaintiffs' likely rejoinder—i.e., that the Amnesty Act of 1872 could not have indefinite prospective effect—fails for two reasons. *First*, the text of the Disqualification Clause grants Congress with an unqualified authority to "remove" any "disability" otherwise imposed by the provision, a unique power that reflects the specific historical exigencies that compelled the Clause (i.e., the Civil War) and congressional latitude to balance competing political sensitivities. *Second*, the Amnesty Act of 1872 did not render the Disqualification Clause in any sense superfluous; Congress has simply incarnated its prohibitions and penalties in the criminal realm instead. *See* 18 U.S.C. § 2383; *see also* subpart I.A., *supra*; *In re Griffin*, 11 F. Cas. 7, 26 (C.C.D. Va. 1869) (commenting that the disqualifications imposed by Section 3 are to be "made operative … by the legislation of congress in its ordinary course").

**B.     Plaintiffs' reliance on the Declaratory Judgment Act is improper.**

Plaintiffs seek relief not authorized by the Declaratory Judgment Act. That Act permits the Court "declare the ***rights and other legal relations*** of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Because the Declaratory Judgment Act does not create independent rights—it only provides an additional remedy—Plaintiffs must identify some underlying right they seek to redress. Here, Plaintiffs do not ask for a declaration of their "rights," nor are Plaintiffs asking for a declaration regarding the "legal relation" of Plaintiffs as to anyone else. What Plaintiffs request instead is for the Court to issue a free-wheeling advisory declaration that the events of January 6th constituted an "insurrection" or "rebellion," as those terms are understood within Section 3 of the Fourteenth Amendment, and a declaration that Senator Johnson engaged in or provided aid and comfort to persons who engaged in this "insurrection" or "rebellion."

---

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Thus, the court's interpretation of the Amnesty Act of 1872, after finding it had no jurisdiction, is dicta and amounts to an advisory opinion.

*First*, as argued in subpart I.A, *supra*, the Disqualification Clause conveys Plaintiffs no rights to protect. It is perhaps this reason that Plaintiffs do not seek to disqualify Senator Johnson under the Disqualification Clause. And, because Plaintiffs have no right to seek disqualification under the Disqualification Clause, Plaintiffs may not ask the Court to declare the meaning of Section 3 of the Fourteenth Amendment or declare its application to Senator Johnson. Simply, Plaintiffs have no protected interest in the disqualification process under Disqualification Clause—a point Plaintiffs tacitly acknowledge in the artful pleading of their claim—to support a declaratory-judgment claim. For the same reasons it would be improper for a nonparty to a contract with no beneficial interest to seek judgment declaring the contractual parties' rights under the contract, *see, e.g.*, *Meyer Mfg. Co. v. Cuisine-Ware, Inc.*, No. 86 C 8144, 1987 WL 5394, at *1 (N.D. Ill. Jan. 14, 1987), it is improper for Plaintiffs to seek declaration on constitutional questions for which it has no protected interests.

*Second*, Plaintiffs fail to ask the Court to declare the "legal relation" of Plaintiffs as to others. Indeed, Plaintiffs' only "relation" is an attenuated desire "to hold [Defendants] accountable for their actions … by imposing on them the consequences dictated by [the Disqualification Clause]." (*See* Compl. ¶ 12.)

Plaintiffs Declaratory Judgment Act claim must fail unless Plaintiffs can identify a protected legal right at stake in this litigation. They cannot.

## CONCLUSION

Based on the foregoing, Senator Johnson respectfully requests that the Court dismiss Plaintiffs' complaint with prejudice.

Dated April 29, 2022

_s/ Christopher O. Murray_
Christopher O. Murray
STATECRAFT PLLC
1263 Washington Street
Denver, CO 80203
Phone: (602) 362-0034
Email: chris@statecraftlaw.com

Julian R. Ellis, Jr.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: jellis@bhfs.com

George Burnett
LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
231 S. Adams Street
Green Bay, WI 54305
Phone: (920) 437-0476
Fax: (920) 437-2868
Email: gb@lcojlaw.com

_Counsel for Senator Ronald H. Johnson_

**CERTIFICATE OF SERVICE**

I certify that on April 29, 2022, I filed **Defendant's Ronald H. Johnson's**

**Memorandum in Support of Motion to Dismiss** via the CM/ECF system for the U.S. District

Court for the District of Columbia, which will cause a copy to be served on all registered parties.


*s/ Christopher O. Murray*
Christopher O. Murray