# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### (MILWAUKEE DIVISION)

| | |
|---|---|
| NANCY A. STENCIL, DANIEL C. RUSSLER, LISA C. MUELLER, CHERYL L. MARANTO, GERARD D. LISI, JAMES B. KURZ, MARGARET L. DEMUTH, PAUL DEMAIN, JAMES R. BOTSFORD AND RICHARD BECHEN,<br><br>          Plaintiffs,<br><br>     vs.<br><br>RONALD H. JOHNSON, THOMAS P. TIFFANY, AND SCOTT L. FITZGERALD,<br><br>          Defendants. | Case No. 22-cv-305 |

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS THOMAS P. TIFFANY AND SCOTT L. FITZGERALD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 7

I.  PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS. ............................... 7

    A.  This Court May Go Beyond the Complaint to Evaluate Standing .......................... 7

    B.  Plaintiffs' Status as Activist Voters Asserting Their First Amendment
        Rights Establishes That They Have Standing. ......................................................... 8

    C.  Standing Is Not A Hypertechnical Requirement That Provides An Excuse
        To Close Courthouse Doors. .................................................................................. 10

        1.  A Widely Shared Injury Can Be "Particularized." ..................................... 10

        2.  Even Minor Injuries Fully Establish Standing. ........................................... 10

        3.  Diversion of Time and Resources Establishes an Injury for
            Standing Purposes. ...................................................................................... 12

    D.  Plaintiffs Establish Injury-In-Fact ........................................................................ 13

    E.  Plaintiffs Assert a Causal Relationship Between Defendants'
        Insurrectionist Acts and Their Injuries. ................................................................ 15

    F.  Plaintiffs Assert Injuries that This Court Can Redress. ........................................ 15

II.  THE QUALIFICATIONS CLAUSE DOES NOT DIVEST THIS COURT OF
    JURISDICTION. ......................................................................................................... 16

III.  PLAINTIFFS DO NOT SEEK AN ADVISORY OPINION. ........................................ 22

IV.  PLAINTIFFS' CASE IS RIPE FOR ADJUDICATION. .............................................. 26

V.  WHETHER THE DEFENDANTS TOOK PART IN AN INSURRECTION IS
    JUSTICIABLE. ............................................................................................................ 27

VI.  PLAINTIFFS' COMPLAINT STATES A VALID CLAIM FOR RELIEF. ................. 29

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGES**

*Aetna Life Ins. Co. v. Hackbarth*
300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937)................................................24

*Allstate Ins. Co. v. Fishel*
No. 16-82032-CIV, 2017 WL 5634951 (S.D. Fla., June 13, 2017)........................24

*Am. Civil Liberties Union v. City of St. Charles*
794 F.2d 265 (7th Cir. 1986) ...................................................................11, 12, 14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..................................................................................................2

*Baker v. Carr*
369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962).......................................27, 28

*BE&K Const. Co. v. NLRB*
536 U.S. 516 (2002)................................................................................................10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)..................................................................................................2

*Bill Johnson's Restaurants, Inc. v. NLRB*
461 U.S. 731 (1983)..................................................................................................9

*Bown v. Gwinnett County Sch. Dist.*
895 F. Supp. 1564, 1571 (N.D. Ga. 1995) .............................................................22

*California Motor Transport Co. v. Trucking Unlimited*
404 U.S. 508 (1972)..................................................................................................9

*Callahan v. Bledsoe*
No. 16-2310-JAR-GLR, 2017 WL 590254 (D. Kan., Feb. 14, 2017) .....................25

*Capitol Leasing Co. v. F.D.I.C.*
999 F.2d 188 (7th Cir. 1993) ....................................................................................7

*Carney v. Adams*
141 S. Ct. 493 (2020)...........................................................................................7, 10

*Chapman v. Pickett*
586 F.2d 22, 26-27 (7th Cir. 1978) .........................................................................30

*Coleman v. Miller*
307 U.S. 433 (1939)................................................................................................25

Case 2:22-cv-00305-LA   Filed 05/06/22   Page 3 of 38   Document 23

*Common Cause Indiana v. Larson*
    937 F.3d 944 (7th Cir. 2019) ...............................................................12, 13, 14

*Cook v. Harding*
    879 F.3d 1035, 1040 (9th Cir. 2018) ...................................................................22

*Crawford v. Marion County Election Bd.*
    472 F.3d 949 (7th Cir. 2007) ...............................................................12, 13, 14

*Doe v. County of Montgomery*
    41 F.3d 1156 (7th Cir. 1994) ...............................................................................11

*Donovan v. Eagleson*
    484 F.Supp. 3d 552 (N.D. Ill. 2020) .....................................................................7

*Dyer v. Blair*
    390 F.Supp. 1291 (N.D. Ill. 1975) ......................................................................25

*Eastman v. Thompson*
    No. 8:22-cv-00099-DOC-DFM, 2022 WL 894256 (C.D. Cal., March 28, 2022)................2, 4

*E.E.O.C. v. Concentra Health Servs., Inc.*
    496 F.3d 773, 777 (7th Cir. 2007) .......................................................................29

*Evers v. Astrue*
    536 F.3d 651 (7th Cir. 2008) .................................................................................7

*Fauley v. Drug Depot, Inc.*
    204 F.Supp. 3d 1008 (N.D. Ill. 2016) ...................................................................7

*Flast v. Cohen*
    392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1986)..........................................23

*Greene v. Raffensperger*
    No. 22-cv-1294-AT, 2022 WL 1136729 (N.D. Ga., April 18, 2022)............................ *passim*

*Harris v. Ariz. Independent Redistricting Comm'n*
    993 F. Supp.2d 1042, 1066 (D. Ariz. 2014) .......................................................22

*Hassan v. Colorado*
    495 F. App'x 947 (10th Cir. 2012) ...............................................................20, 21

*Hollingsworth v. Perry*
    570 U.S. 693 (2013).................................................................................................7

*Holiday Magic, Inc. v. Warren*
    497 F.2d 687, 695 (7th Cir. 1974.........................................................................22

Case 2:22-cv-00305-LA   Filed 05/06/22   Page 4 of 38   Document 23

*Hutchinson v. Miller*
    797 F.2d 1279 (4th Cir. 1986) ..................................................................19, 20

*In re SSA Bonds Antitrust Litig.*
    No. 16 CIV.3711 (ER), 2020 WL 1445783 (S.D. N.Y., March 25, 2020)..............................2

*Kolupa v. Roselle Park Dist.*
    438 F.3d 713, 715 (7th Cir. 2006) ........................................................................29

*Krislov v. Rednour*
    226 F.3d 851 (7th Cir. 2000) ........................................................................15, 16

*Lac du Flambea Band of Lake Superior Chippewa Indians v. Norton*
    422 F.3d 490 (7th Cir. 2005) ...............................................................................8

*LaFleur v. Whitman*
    300 F.3d 256 (2d Cir. 2002)................................................................................11

*Leung v. XPO Logistics, Inc.*
    164 F.Supp. 3d (N.D. Ill. 2015) ....................................................................11, 14

*Lindsay v. Bowen*
    750 F.3d 1061 (9th Cir. 2014) .............................................................................21

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)...................................................................................10, 15

*Marbury v. Madison*
    5 U.S. 137 (2 L. Ed. 60 (1803)..............................................................................28

*Marshall v. Town of Merrillville*
    228 F.Supp. 3d 853 (N.D. Ind. 2017) .............................................................11, 14

*Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*
    649 F.3d 539, 547 (7th Cir. 2011) ..................................................................16, 25

*Matter of Shondel*
    950 F.2d 1301 (7th Cir. 1991) .............................................................................24

*McCutcheon v. Federal Election Comm'n*
    572 U.S. 185 (2014)...........................................................................................9

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)..........................................23

*Minn-Chem, Inc. v. Agrium, Inc.*
    683 F.3d 845 (7th Cir. 2012) ...............................................................................7

Case 2:22-cv-00305-LA   Filed 05/06/22   Page 5 of 38   Document 23

*Monitor Patriot Co. v. Roy*
    401 U.S. 265 (1971) ...................................................................................................9

*N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*
    978 F.2d 287 (7th Cir. 1992) ...................................................................................29

*Munro v. Socialist Workers Party*
    479 U.S. 189 (1986) .................................................................................................20

*Nixon v. United States*
    506 U.S. 224 (1993) .................................................................................................28

*Powell v. McCormack*
    395 U.S. 486 (1969) ............................................................................................27, 28

*Public Citizen v. U.S. Dep't of Justice*
    491 U.S. 440 (1989) .................................................................................................10

*Republican National Committee v. Pelosi*
    No. 22-659 (TJK), 2022 WL 1294509 (D. D.C., May 1, 2022) ...........................3, 4

*Roudebush v. Hartke*
    405 U.S. 15 (1972) ...................................................................................................20

*Sierra Club v. Franklin County Power of Illinois, LLC*
    546 F.3d 918 (7th Cir. 2008) ...................................................................................11

*Smadi v. True*
    Case No. 18-cv-02149-JPG, 2021 WL 2853262 (S.D. Ill., July 8, 2021) ........29, 30

*State ex rel. Chavez v. Evans*
    446 P.2d 445 (N.M. 1968) .......................................................................................18

*United Phosphorus, Ltd. v. Angus Chemical Co.*
    322 F.3d 942 (7th Cir. 2003) .....................................................................................7

*U.S. v. Fruehauf*
    365 U.S. 146, 81 S. Ct. 547, 5 L. Ed. 2d. 476 (1961) .............................................23

*U.S. v. Powell*
    65 N.C. 709 (1871) .............................................................................................22, 28

*U.S. Term Limits v. Thornton*
    514 U.S. 779 (1995) ......................................................................................18, 20, 26

*Wacker v. Bisson*
    348 F.2d 602 (5th Cir. 1965) ...................................................................................24

Case 2:22-cv-00305-LA    Filed 05/06/22    Page 6 of 38    Document 23

*Worthy v. Barrett*
    63 N.C. 199 (1869) ........................................................................22

*Ziglar v. Abbasi*
    137 S.Ct. 1843 (2017) ...................................................................29

*Zwickler v. Koota*
    389 U.S. 241, 248 (1967) ........................................................14, 22

**CONSTITUTION AND STATUTES**                   **PAGES**

28 U.S.C. §1331 ...............................................................................21

28 U.S.C. § 2201(a) .........................................................................23

42 U.S.C. §1983 ..........................................................................6, 29

U.S. Const., Art. I, § 5 ...........................................................16, 25, 26, 28

U.S. Const., Art. III, § 2 ..................................................................7

Wis. Stat. § 5.05(2) .........................................................................14

Wis. Stat. § 5.05(2m) .......................................................................14

Wis. Stat. § 5.06 .............................................................................19

Wis. Stat. § 8.21 .............................................................................19

Wis. Stat. § 8.21(2)(a-c) ..............................................................19, 25

Wis. Stat. § 8.21(2)(c) ..................................................................14, 15

**RULES**                                                **PAGES**

Fed R. Civ. P. 12(b)(6)......................................................................7, 8

**OTHER AUTHORITIES**                       **PAGES**

Ballotpedia, *The 117th United States Congress* (last accessed April 30, 2022)
    https://ballotpedia.org/117th_United_States_Congress .................................17

CNN, *The Republican Blueprint to Steal the 2024 Election* (May 2, 2022)
    https://www.cnn.com/2022/04/27/opinions/gop-blueprint-to-steal-the-2024-election-
    luttig/index.html.......................................................................4

Federal Election Commission of the United States of America, Wisconsin campaign
    finance data (last accessed _____)
    https://www.fec.gov/data/elections/?cycle=2022&state=WI ...............................19

Scott Fitzgerald for Congress (last accessed April 30, 2022)
https://scottfitzgeraldforcongress.com/ ............................................................18

Tom Tiffany for Congress (last accessed April 30, 2022)
https://tomtiffany.com/ ....................................................................................18

Wisconsin Elections Commission, Calendar of Election Events, November 2021 –
December 2023 (last accessed May 2, 2022)
https://elections.wi.gov/sites/elections/files/2021-12/2022-
2023%20Calendar%20of%20Election%20Events%20PDF.pdf ............................19

Wisconsin Elections Commission, Candidate Ballot Access Procedures, Nomination
Papers, April 2020 (last accessed May 1, 2022)
https://elections.wi.gov/sites/elections/files/2021-10/
Ballot%20Access%20Manual_4_0.pdf .............................................................22

Wisconsin Elections Commission, Candidate Tracking by Office, 2022 General Election,
11/8/22 (April 30, 2022)
https://elections.wi.gov/sites/elections/files/2022-
04/Candidates%20Tracking%20By%20Office%20as%20of%204.29.2022.pdf ..................19

# INTRODUCTION

Accused of participating in a vast conspiracy led by President Donald J. Trump to undermine the peaceful transition of presidential power on January 6, 2021, Defendants Thomas P. Tiffany and Scott L. Fitzgerald decry this lawsuit as a "political stunt." (Def. Br. 3.) Defendants assert that Plaintiffs "are now unapologetically attempting to subvert the will of Wisconsin voters by asking the Court to issue a decision that would, in Plaintiffs' view, prevent Congressman Tiffany and Fitzgerald from running for re-election in the 2022 election." (*Id.* at 1.) They go on to claim that Plaintiffs, some of whom are their own constituents, have "set[] forth an elaborate and fantastical conspiracy theory[]" (*Id.* at 4) and the case should be thrown out on a multitude of legal grounds.

There's good reason for Fitzgerald and Tiffany to flee the facts and trot out unavailing legal defenses. Discussing the facts about Defendants' role in the conspiracy is the last thing they want. After all, we are learning by the day how close the United States came to a coup where the "will of Wisconsin voters" that Defendants claim to care so much about (Def. Br. 1) literally would have been set aside by the whims of an out-of-control President and a sycophantic set of enablers who chose power at all costs over the greater good of this Republic. Indeed, but for Vice President Michael R. Pence's fidelity to his Constitutional duties that fateful day, the Defendants' carefully contrived plan could have interrupted the peaceful transfer of power from one party to another in the wake of a Presidential election for the first time in our history.

Had that occurred, it would have been the culmination of the nefarious plans of Defendants and those they acted in concert with in the month leading up to the Joint Session of Congress. After all, each of the Defendants spent months fomenting distrust in the 2020 election outcome and Fitzgerald, for his part, went one blatant step further by providing access to the then-closed State Capitol building, thereby enabling the criminal conduct of 10 fraudulent electors who knowingly

perjured themselves when they submitted a false slate of electors for President Trump to the U.S. Senate on behalf of Wisconsin. (Compl., ¶¶ 16-18, 57-60, 101-102, 114.)

The Court need not take Plaintiffs' word for it, because other district courts across the country have already started to address this same plot to overthrow the election. The court's decision in *Eastman v. Thompson*, Case No. 8:22-cv-00099-DOC-DFM, 2022 WL 894256, *22 (C.D. Cal. March 28, 2022), is a good place to start:

> The illegality of the plan was obvious. Our nation was founded on the peaceful transition of power, epitomized by George Washington laying down his sword to make way for democratic elections. Ignoring this history, President Trump vigorously campaigned for the Vice President to single-handedly determine the results of the 2020 election. As Vice President Pence stated, "no Vice President in American history has ever asserted such authority." Every American—and certainly the President of the United States—knows that in a democracy, leaders are elected, not installed. With a plan this "BOLD," President Trump knowingly tried to subvert this fundamental principle. **Based on the evidence, the Court finds it more likely than not that President Trump corruptly attempted to obstruct the Joint Session of Congress on January 6, 2021**.

*Id*. at *22 (emphasis added). The *Eastman* court further determined that "it is more likely than not that President Trump and Dr. Eastman **dishonestly conspired** to obstruct the Joint Session of Congress on January 6, 2021." *Id*. at *24 (emphasis added). To reach this conclusion, the court lays out in detail how the conspirators' actions "more likely than not constitute attempts to obstruct an official proceeding."[1] *Id*. at *21. Plaintiffs' claim here is that Fitzgerald and Tiffany engaged in overt acts in furtherance of this conspiracy to assist a sitting President to ignore the rule of law. (Compl., ¶¶ 34, 41, 101-102, 181-183.)

---

[1] Save their rhetoric about the fantastical nature of Plaintiffs' Complaint, Defendants do not challenge Plaintiffs' factual allegations as being implausible under the governing legal standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, they resort to myriad legal defenses that they believe will save them from the discovery process. Even if Defendants challenged the allegations of conspiracy, such a challenge would fail. Conspiracy does not require a heightened pleading standard. *See In re SSA Bonds Antitrust Litig.*, No. 16 CIV. 3711 (ER), 2020 WL 1445783 (S.D.N.Y. Mar. 25, 2020). There can be no debate that Plaintiffs plausibly allege a claim.

2

In this same vein, less than a month ago, a district court in Georgia rejected efforts by Representative Marjorie Taylor Greene to enjoin a state administrative action pursued by citizens challenging her right to be on the ballot based on the same claim that Plaintiffs advance here: namely, that Greene's conduct in fraudulently attacking the election results constituted an insurrection in violation of Section 3 of the Fourteenth Amendment. *Greene v. Raffensperger*, No. 22-cv-1294-AT, 2022 WL 1136729 (N.D. Ga., April 18, 2022). The district court ruled that "Section 3 of the Fourteenth Amendment is an existing constitutional disqualification adopted in 1868—similar to but distinct from the Article I, Section 2 requirements that congressional candidates be at least 25 years of age, have been citizens of the United States for 7 years, and reside in the states in which they seek to be elected." *Id*. at *25. In so doing, the court rejected several arguments that are essentially indistinguishable from the positions Defendants assert here. (*See, e.g.*, Def. Br. 2, 19.)

Even more recently, on May 1, 2022, the U.S. District Court for the District of Columbia rejected arguments advanced by the Republican National Committee ("RNC") designed to thwart the congressional investigation being undertaken over the January 6, 2021 insurrection and refused to quash a subpoena issued to Salesforce, which the RNC had used to send emails between November 3, 2020 and January 6, 2021 spreading disinformation about the 2020 election. *See Republican National Committee v. Pelosi*, Civil Action No. 22-659 (TJK), 2022 WL 1294509 (D.D.C., May 1, 2022). The court methodically rejected the RNC's six arguments seeking to block the Select Committee's access to the RNC's records, most notably determining that the committee is properly authorized, that its subpoena to Salesforce had a valid legislative purpose, and that the First Amendment did not restrict the Select Committee's access to the records because of the seriousness of the offenses being investigated. *Id*. at *15-23.

3

While Defendants combatively suggest that Plaintiffs are just playing politics by pursuing this case, the decisions in *Eastman*, *Greene*, and *RNC* show that the conduct at issue in this lawsuit is no game. The gravity of Defendants' conduct is notably highlighted in a recent Op-Ed authored by highly respected former Fourth Circuit Court of Appeals judge J. Michael Luttig:

> Nearly a year and a half later, surprisingly few understand what January 6 was all about.

> Fewer still understand why former President Donald Trump and Republicans persist in their long-disproven claim that the 2020 presidential election was stolen. Much less why they are obsessed about making the 2024 race a referendum on the "stolen" election of 2020, which even they know was not stolen.

> January 6 was never about a stolen election or even about actual voting fraud. It was always and only about an election that Trump lost fair and square, under legislatively promulgated election rules in a handful of swing states that he and other Republicans contend were unlawfully changed by state election officials and state courts to expand the right and opportunity to vote, largely in response to the Covid pandemic.

> The Republicans' mystifying claim to this day that Trump did, or would have, received more votes than Joe Biden in 2020 were it not for actual voting fraud, is but the shiny object that Republicans have tauntingly and disingenuously dangled before the American public for almost a year and a half now to distract attention from their far more ambitious objective.

> That objective is not somehow to rescind the 2020 election, as they would have us believe. That's constitutionally impossible. Trump's and the Republicans' far more ambitious objective is to execute successfully in 2024 the very same plan they failed in executing in 2020 and to overturn the 2024 election if Trump or his anointed successor loses again in the next quadrennial contest.

> The last presidential election was a dry run for the next.

*See* "The Republican Blueprint to Steal the 2024 Election," CNN (April 27, 2022), https://www.cnn.com/2022/04/27/opinions/gop-blueprint-to-steal-the-2024-election-luttig/index.html, last accessed on May 2, 2022.

Because Fitzgerald and Tiffany desperately wish to turn the Court's attention away from their complicity in enabling a potential coup in 2020 and laying the groundwork for a successful

one in 2024, Defendants deploy legal arguments to avoid accountability out of the gate. None of the arguments serve as a basis to dismiss this lawsuit.

First, Defendants argue that Plaintiffs lack standing to pursue this case. But their position is inconsistent with the rules that allow citizens to pursue claims when they have suffered a particularized injury, caused by a defendant, that is redressable by the relief sought. Each of the Plaintiffs satisfy each of these requirements, because they have First Amendment rights to challenge a candidate's ballot eligibility, and because Defendants' insurrectionist conduct impairs Plaintiffs' First Amendment right to engage in political persuasion. A decision by this Court that Defendants engaged in insurrection under Section 3 will give Plaintiffs legal redress.

Second, Fitzgerald and Tiffany claim that Article 1, Section 5 of the Constitution (the "Qualifications Clause") divests this Court of subject matter jurisdiction because only Congress is empowered to adjudicate member qualifications. This argument overlooks that Plaintiffs do not seek to expel Defendants from their current seats in Congress and ignores the role in running elections for federal office that is assigned to the states by Article I, Section 4 – which in this case includes the requirement of Wisconsin law that Fitzgerald and Tiffany must assert under oath in their "Declaration of Candidacy" that they are qualified to be on the ballot.

Third, building on the false premise of their argument under Article I, Section 5, Defendants assert that this lawsuit must be dismissed because the declaratory judgment Plaintiffs seek will amount to an advisory opinion from the Court. This is false. This Court is best suited to answer the constitutional question presented: namely, whether the conduct alleged in the Complaint constitutes insurrection under Section 3 of the Fourteenth Amendment. In so doing, this Court will perform its Article III role and render a judgment finding that Defendants either did or did not violate Section 3. If Plaintiffs prevail and further proceedings before a different tribunal

are necessary (which will happen only if Defendants refuse to amend their sworn Declarations of Candidacy at that juncture), this Court's judgment will serve to preclude litigation of the Section 3 issues.

Fourth, Defendants argue that the case is not ripe because Congress has not acted to expel Fitzgerald or Tiffany, and because Article I, Section 5 provides the only basis for expulsion to occur, there is nothing for the Court to adjudicate. Yet, Plaintiffs are not seeking a declaration affecting Defendants' status in the 117th Congress. Instead, Plaintiffs ask the Court to declare that Defendants engaged in insurrection under Section 3 – which would affect only their eligibility to run for seats in the 118th Congress. Since both Tiffany and Fitzgerald are running for re-election this fall and must qualify for inclusion on the ballot in order to do so, this issue is assuredly ripe for adjudication by this Court.

Fifth, Fitzgerald and Tiffany claim any decision here will violate the political question doctrine and step on Congressional toes. While there are certainly political aspects to this litigation, at its heart the case presents a classic application of law to facts: did the actions of the Defendants leading up to the counting of electoral votes on January 6, 2021 qualify as engaging in insurrection under Section 3? Suggesting this is solely a political question that can be resolved only by Congress ignores the constitutional role of this Court in interpreting the law and the fact that courts have resolved in on Section 3 claims in the past.

Finally, Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted. Their arguments fail because Plaintiffs are not making claims under the *Bivens* doctrine or under 42 U.S.C. §1983, and because this Court has the power to enter a declaratory judgment that safeguards Plaintiffs' First Amendment rights.

Fitzgerald and Tiffany's motion to dismiss should be denied and the Court should set an expedited discovery schedule to allow prompt action on the Complaint that will ensure that only qualified candidates appear on the ballot in Wisconsin this fall.

## ARGUMENT

## I.     PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.

Article III limits the power of federal courts to decide "Cases" or "Controversies." U.S. Const., Art. III, §2. "The doctrine of standing implements this requirement by insisting that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Carney v. Adams,* 141 S.Ct. 493, 498 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). Because Plaintiffs can meet their burden of showing they have standing to bring their claims, Defendants' challenge must be denied.

### A.     This Court May Go Beyond the Complaint to Evaluate Standing.

"When a party raises the issue of subject matter jurisdiction, '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Fauley v. Drug Depot, Inc*., 204 F.Supp. 3d 1008, 1009 (N.D. Ill. 2016) (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008)); *see also Capitol Leasing Co. v. F.D.I.C*., 999 F.2d 188, 191 (7th Cir. 1993); *Donovan v. Eagleson*, 484 F.Supp. 3d 552, 555 (N.D. Ill. 2020). Defendants move under Fed. R. Civ. P. 12(b)(1), asserting that the lack of standing deprives this Court of subject matter jurisdiction. "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction. . . . [a]nd the court is free to weigh the evidence to determine whether jurisdiction has been established." *United Phosphorus, Ltd. v. Angus Chemical Co*., 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012).

7

**B.** **Plaintiffs' Status as Activist Voters Asserting Their First Amendment Rights Establishes That They Have Standing.**

All ten Plaintiffs have filed declarations supporting this brief,[2] presenting facts that summarize their interests in bringing this suit and explaining why allowing the Defendants to remain on the ballot for 2022 elections causes them to suffer injuries that a favorable decision from this Court will remedy. We discuss the facts established by those declarations in detail below; for the moment it is enough to note that in addition to their involvement in politics as voters, all of the Plaintiffs have taken an active role in politics in their communities, ranging from supporting candidates in national and local elections (Mueller Decl. ¶ 2; Maranto Decl. ¶ 2; Lisi Decl. ¶¶ 2-4; Kurz Decl. ¶ 2; DeMuth Decl. ¶ 2; DeMain Decl. ¶ 3; Bechen Decl. ¶ 2), to working as "fair maps" advocates on legislative reapportionment (Stencil Decl. ¶¶ 2-3; Russler Decl. ¶ 2; Mueller Decl. ¶ 2; Maranto Decl. ¶¶ 2-3), to running for office themselves Lisi Decl. ¶ 4; DeMain Decl.), as well as many other political activities (*see generally* Pls.' Decl.).

For purposes of deciding the threshold standing issue in this case, two sets of facts from the Plaintiffs' declarations are dispositive. First, because Defendants continue to flout Section 3 by insisting on running for re-election notwithstanding their involvement in and promotion of the insurrection against the 2020 election results, Plaintiffs must divert time and effort that they would have otherwise devoted to activism and persuasion on substantive policy issues to combating the

---

[2] Not only does the law allow evidence beyond the pleadings to be submitted and considered on a Rule 12(b)(1) motion challenging standing through a lack of subject matter jurisdiction, in this Circuit "[a] motion to dismiss for lack of standing should not be granted unless there are no set of facts consistent with the complaint's allegations that could establish standing." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005). Plaintiffs' declarations submitted with this brief are entirely consistent with their Complaint; by filing them, Plaintiffs have aided the Defendants and the Court by presenting specific and sworn factual evidence when, under *Lac Du Flambeau*, they could simply have asserted those facts in this brief. Even if this were not enough, Plaintiffs could amend the Complaint as of right to include all of the facts stated in their declarations. Against this background, any result other that proceeding directly to the merits of Defendants' challenge to standing based on the facts of record is empty formalism.

"Big Lie" and explaining to voters that Defendants should not be on the ballot at all. (Stencil Decl. ¶ 4; Russler Decl. ¶ 5; Mueller Decl. ¶¶ 4-5; Maranto Decl. ¶¶ 4-5; Lisi Decl. ¶¶ 5-6; Kurz Decl. ¶ 5; DeMuth Decl. ¶ 5; DeMain Decl. ¶¶ 4-6; Botsford Decl. ¶¶ 5-6; Bechen Decl. ¶ 5.) Second, their actions in bringing this lawsuit – and in taking a favorable decision from this Court to other forums if that becomes necessary – implicate their First Amendment right to petition for redress of grievances.

The Supreme Court has made clear that the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 203 (2014). Plaintiffs prefer to devote their time to persuading their fellow citizens to support their positions on important substantive political issues, but Defendants' potential presence on the ballot for the 2022 elections compels Plaintiffs to spend time discussing and debating Defendants' inflammatory lies and insurrectionist actions, rather than the important substantive public policy issues they would prefer to discuss.

In addition, the First Amendment protects a separate, vital right that supports Plaintiffs' claims in this case: the right to petition the government for redress of grievances. "The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983), the Supreme Court identified "the [F]irst [A]mendment interests in private litigation – compensation for violated interests, the psychological benefits of vindication, public airing of disputed facts[.]" Violation of these interests demonstrates injury-in-fact.

9

Finally, even an unsuccessful suit supports First Amendment interests: "[T]he ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force." *BE&K Const. Co. v NLRB*, 536 U.S. 516, 532 (2002). This function of the First Amendment contrasts starkly with Defendants' support for the illegal conspiracy intended to overturn the legitimate result of the 2020 presidential election, to say nothing of the violence that flowed from the endless stream of falsehoods from Defendants and their co-conspirators.

### C. Standing Is Not A Hypertechnical Requirement That Provides An Excuse To Close Courthouse Doors.

#### 1. A Widely Shared Injury Can Be "Particularized."

Defendants rightly point out (Def. Br. 10) that a plaintiff cannot establish standing by claiming an "injury-in-fact" by asserting "an abstract and generalized harm to a citizen's interest in the proper application of the law[.]" *Carney*, 141 S.Ct. at 498. Nevertheless, a widely shared injury can support standing, so long as the requirements of the injury-in-fact test are met. For example, in *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989), the Supreme Court ruled that a widespread injury established standing: "The fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen appellants' asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue." *Id.* at 449-50.

#### 2. Even Minor Injuries Fully Establish Standing.

The law is clear that an injury cannot be classified as "conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and thus insufficient to establish standing, merely because some or even many people would not consider it to be serious. Indeed, the exact opposite is true: "The defendants claim that [plaintiff's] injury is insubstantial, but the 'injury-in-

fact necessary for standing need not be large, an identifiable trifle will suffice.'" *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008) (quoting *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002)); *see also Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir. 1994) ("[A]n identifiable trifle is enough for standing to fight out a question of principle . . . .").

Courts routinely find an "injury," and thus standing, when a defendant's unlawful actions cause a plaintiff to undergo inconvenience, even if that inconvenience is very brief and even if the inconvenience is a product of the plaintiffs' own choices. For example, a woman who was unlawfully ejected from an auditorium for five minutes by law enforcement officers suffered an injury sufficient to give her standing: "The Court believes that the five minute timespan that [plaintiff] was barred from the auditorium does not render her legally protected interest insubstantial." *Marshall v. Town of Merrillville*, 228 F. Supp. 3d 853, 862 (N.D. Ind. 2017). Similarly, in a case under the Telephone Consumer Protection Act, a court found standing for a plaintiff who spent a few minutes taking an automated telephone survey, even though he took the survey voluntarily and could have hung up at any time. *Leung v. XPO Logistics, Inc.*, 164 F. Supp. 3d 1032 (N.D. Ill. 2015). Simply because the plaintiff (and others like him) "could have reacted differently to the respective defendants' conduct and reduced or avoided their injuries does not mean that they were not injured." *Id*. at 1036. The court went on to hold that the duration of the survey call was immaterial: "When a defendant's allegedly wrongful conduct costs the plaintiff time, the plaintiff has suffered an injury in fact." *Id*. at 1037.

The principle that small injuries support Article III standing applies with full force to First Amendment claims. In *American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986), plaintiffs argued they had standing to bring a challenge under the First Amendment's

Establishment Clause to a city's placement of a large lighted cross on a public building because "they have been led to alter their behavior—to detour, at some inconvenience to themselves, around the streets they ordinarily use." *Id*. at 268. The Seventh Circuit held that this inconvenience gave them standing:

> The curtailment of their use of public rights of way is similar to the alleged curtailment of the plaintiffs' use of the national parks in *United States v. SCRAP* [citation omitted]. The cost in this case is no doubt slight, but it was even slighter in *SCRAP*, and the willingness of plaintiffs (or even just one of them) to incur a tangible if small cost serves to validate, at least to some extent, the existence of genuine distress and indignation, and to distinguish the plaintiffs from other objectors to the alleged establishment of religion by St. Charles.

*Id*. The *St. Charles* court also ruled that it was irrelevant that plaintiffs had subjected themselves to the detour. *Id*. at 268-69.

3.   Diversion of Time and Resources Establishes an Injury for Standing Purposes.

*St. Charles* also follows the rule in First Amendment cases that plaintiffs who incur inconvenience, lost time, or expense because of an alleged violation of the First Amendment have standing. *Id*. Most often, such "diversion of resources" claims are advanced by organizations rather than individuals. For example, in *Crawford v. Marion County Election Bd.*, 472 F.3d 949 (7th Cir. 2007), the Seventh Circuit held that the Democratic Party had standing to challenge a voter identification law because the law "injures the [party] by compelling [it] to devote resources to getting to the polls those of its supporters who would otherwise be discouraged from the new law from bothering to vote." *Id*. at 951.[3]

In another organizational standing case, *Common Cause Indiana v. Lawson*, the Seventh Circuit held that the plaintiff, an organization that promoted the right to vote, had standing because

---

[3] Notably, *Crawford* also affirms the principle that even a slight detriment is enough to establish standing: "The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury." 472 F.3d at 951.

a state law that purged voter rolls required the plaintiff to spend time, resources and money challenging the law and helping voters who had been incorrectly removed remedy the errors. 937 F.3d 944, 950-51 (7th Cir. 2019). "We are not alone in this assessment. Our sister circuits have upheld the standing of voter-advocacy organizations that challenged election laws based on similar drains on their resources. Like us, they have found that the organizations demonstrated the necessary injury in fact in the form of the unwanted demands on their resources." *Id*. at 952.

Notably, the concurring opinion of Judge Brennan in *Common Cause* recognizes that "[t]he test for organizational standing . . . is the same as that for any other plaintiff: Has the plaintiff demonstrated a concrete, particularized injury to its own interests, or is it complaining of a generalized grievance shared broadly with other members of the public?" *Id*. at 964. This makes perfect sense: individuals, like organizations, can be required by the unlawful actions of a defendant to spend time or devote resources in ways that impair their objectives or cause them to do something they would prefer not to do. Thus, the "diverted resources" rationale of *Crawford*, *Common Cause*, and other organizational standing cases applies with full force to support Plaintiffs' arguments for standing here.

### D. Plaintiffs Establish Injury-In-Fact.

Applying these established tests, it cannot reasonably be doubted that Plaintiffs have shown injury in fact. First, they have lost time and resources because Defendants insist on remaining on the ballot for the 2022 election cycle despite their participation in acts of insurrection against the Constitution and the United States. In the eloquent words of Plaintiff Margaret DeMuth:

> As a result of the actions of Defendants that discredit the offices they hold, I am compelled to devote time and effort in my political activity to assuring that my fellow citizens are educated on these matters in addition to policy topics. This additional effort is necessary in order to help people feel that citizen action such as voting is worth their time. In recent months of phoning and canvassing neighbors to talk about voting and to learn about what matters to them, I am hearing a fervent concern that politicians are corrupt and cannot be trusted. This detracts from the

13

essential work of understanding the choices that impact voters in the 2022 and future elections. This burden would be greatly relieved if Senator Johnson and Representatives Fitzgerald and Tiffany were disqualified from the ballot.

(DeMuth Decl. ¶ 5; *see also* Stencil Decl. ¶¶ 4-5; Russler Decl. ¶ 5; Mueller Decl. ¶¶ 4-5; Maranto Decl. ¶¶ 4-5; Lisi Decl. ¶¶ 6-7; Kurz Decl. ¶¶ 4-5; DeMain Decl. ¶ 4; Botsford Decl. ¶¶ 5-6; Bechen Decl. ¶¶ 5-6.) This lost-time and lost-resources injury is exactly the same kind of harm found sufficient to confer standing in *St. Charles*, *Crawford*, *Common Cause*, *Marshall*, and *Leung*: because of unlawful conduct by defendants, plaintiffs felt compelled to devote time and resources to dealing with the effects of defendants' conduct rather than on activities they would have preferred to be involved in. Nothing more is required.

Plaintiffs also prove injury-in-fact through this lawsuit and other proceedings they may have to bring if they succeed here. The filing of a challenge to a political candidate's placement on a ballot based on that candidate's involvement in insurrection is protected by the First Amendment. *Greene* recognizes "citizens' own First Amendment rights to file complaints regarding the operation of the electoral process that the Challenge Act recognizes." 2022 WL 1136729 at *18. It does not matter that the *Greene* court recognized this right in the context of a challenge mounted in the Georgia administrative process.[4] If Plaintiffs prevail on the merits of this case and Defendants do not amend their Declarations of Candidacy to make their representations about eligibility required by Wis. Stat. §8.21(2)(c) accurate, then Plaintiffs will initiate proceedings before the Wisconsin Election Commission ("WEC") or the state courts of Wisconsin to enforce this Court's judgment. As we demonstrate in greater detail in Section III of this

---

[4] Plaintiffs did not bring this challenge before WEC in the first instance because they have no rights to discovery under Wis. Stat. §5.05(2m) and no control over the investigation conducted into a complaint under Wis. Stat. §5.05(2). Further, Wis. Stat. §5.06 does not authorize a complaint because, as of now, no "election official" has acted or failed to act with respect to Defendants' ballot eligibility. In any event, even if WEC were empowered to adjudicate Plaintiffs' Constitutional claims, they are still entitled to a federal forum for those claims. *See Zwickler v. Koota*, 389 U.S. 241, 248 (1967).

Argument, enforcing a judgment from this Court in Plaintiffs' favor in some other forum does not transform this case into a quest for an advisory opinion. Nor does it diminish the injury that plaintiffs have suffered.

### E. Plaintiffs Assert a Causal Relationship Between Defendants' Insurrectionist Acts and Their Injuries.

The second element of Article III standing requires Plaintiffs to demonstrate "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Plaintiffs filed this case as a direct consequence of Defendants' running for re-election to Congress despite their insurrectionist conduct. Although the conspiracy that Defendants were part of involved many other people, Plaintiffs are not suing those other people. They are suing the three individuals whose presence on the ballot is causing **them** to spend time explaining to voters the grievous harm that was done by participation in the insurrection. The requisite causal relationship is present.

### F. Plaintiffs Assert Injuries that This Court Can Redress.

The redressability requirement of standing requires that Plaintiffs "only show that the requested relief will likely cure the alleged injury . . . . Put differently, the plaintiffs must show that they would benefit in a tangible way from the district court's intervention." *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000).

Depending on how Defendants respond to a decision in Plaintiffs' favor, that decision alone might give Plaintiffs everything they want. As part of their Declarations of Candidacy required by Wisconsin law, Defendants are obligated to swear under oath that they "otherwise qualify for office if nominated and elected." Wis. Stat. §8.21(2)(c). If this Court issues a judgment that Defendants engaged in insurrection in violation of Section 3 of the Fourteenth Amendment, they

will be ineligible to hold the offices to which they seek election. Such a judgment should cause them to amend their Declarations of Candidacy to reflect their ineligibility.

Alternatively, Defendants might not voluntarily admit that they are ineligible for office even if this Court rules in Plaintiffs' favor. Depending on how Defendants chose to act after entry of the judgment, Plaintiffs would seek to enforce the judgment in proceedings before the WEC or a Wisconsin circuit court. Such a judgment would have a preclusive effect before another tribunal because this case gives Defendants a full opportunity to litigate the issue whether they violated Section 3. *See, e.g., Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011). That preclusive effect, in turn, is sufficient to make Plaintiffs "benefit in a tangible way" under *Krislov* from a decision in their favor, and thus also sufficient to establish redressability.[5]

Plaintiffs have standing to proceed.

## II. THE QUALIFICATIONS CLAUSE DOES NOT DIVEST THIS COURT OF JURISDICTION.

Defendants claim that this Court does not have authority to issue the declaratory relief sought by Plaintiffs because Article I, Section 5 of the U.S. Constitution "emphatically and categorically vests each House of Congress with the power to establish and apply standards for the qualification **of its members**." (Def. Br. 15; emphasis added.) They further assert that action by this Court would ignore the separation of powers because Plaintiffs seek "a judicial determination of an issue that the Constitution expressly reserves for Congress." (*Id.*) In Fitzgerald and Tiffany's view, the "storied history" of Congress demonstrates that "both Houses of Congress have consistently asserted and exercised their rights under Article I, Section 5 to adjudicate the elections and qualifications of their respective members." (*Id.*) In support of their assertions, Defendants

---

[5] Of course, Defendants' argument that Plaintiffs' injuries cannot be redressed (Def. Br. 13-14) assumes the correctness of Defendants' argument that Congress has the exclusive power to decide Defendants' eligibility for re-election to Congress. We deal with the flaw in that argument below.

rely on a host of state and federal cases that purport to establish that the Qualifications Clause "gives final and exclusive jurisdiction to each House of Congress to determine election contests relating to its members." (Def. Br. 15-19.)

Their argument wrongly assumes that this litigation seeks the expulsion of Fitzgerald and Tiffany from the current 117th Congress, which convened on January 3, 2021.[6] But that's not at issue. Rather, Plaintiffs ask this Court to resolve a federal constitutional question integral to the determination of Fitzgerald and Tiffany's right to access the August 9, 2022 primary and November 6, 2022 general election ballots in Wisconsin. (Compl., ¶¶ 25-26.) Because compliance with Section 3 of the Fourteenth Amendment is a prerequisite to holding federal and state office, whether Fitzgerald and Tiffany's conduct amounts to insurrection is a question that must be answered before they are entitled to have their names placed on the ballot.[7] While ballot access in Wisconsin is governed by Chapter 8 of the Wisconsin Statutes ("Nominations, Primaries, Elections") and administered by the WEC, this case is a necessary first step to provide an answer to a federal constitutional question that this Court is best suited to resolve.

Because Defendants start with the wrong premise in their Qualifications Clause argument, all the cases on which they rely (Def. Br. 15-19) do not control here. In fact, all of them (save one) stand for the unremarkable proposition that the Qualifications Clause gives Congress the authority to address who shall sit as a member **once an election has occurred**. Nothing Fitzgerald and

---

[6] *See* https://ballotpedia.org/117th_United_States_Congress, last accessed on April 30, 2022.

[7] Defendants' argument about Congress' plenary power ignores that Section 3 of the Fourteenth Amendment also serves to disqualify insurrectionists from holding "any office, civil or military, . . . **under any State** . . . ." U.S. Const. amend. XIV, § 3. If Defendants are right, then only Congress can decide whether a local sheriff or state legislator who engaged in insurrection must be barred from office. That is not what Section 3 says, and there is no reason to suppose that those who framed and ratified the Fourteenth Amendment meant to make such a radical change.

Tiffany cite supports the idea that Congress is vested with plenary authority to adjudicate ballot access issues in the first instance before ballots are prepared or any election occurs. Indeed, Defendants' argument over Article I, Section 5 would render a nullity the power of each state pursuant to Article I, Section 4 of the Constitution to regulate ballot access and elections **before an election has occurred**. It would also read into Section 3 an exclusivity restriction that simply is not there.

The one case Defendants cite that seems to implicate Article I, Section 5 before an election, *State ex rel. Chavez v. Evans*, 446 P.2d 445 (N.M. 1968), is of no help to Defendants. First, it pre-dates the Supreme Court's decision in *U.S. Term Limits v. Thornton*, 514 U.S. 779, 787 n.2 (1995), which determined that "qualifications" for holding Congressional office may include more than those identified in Article I, Section 2 of the Constitution (which is what *Chavez* relied on extensively) and that Section 3 of the Fourteenth Amendment became "part of the text of the Constitution" when added in 1868. Second, *Chavez* ignores the extensive case law discussed at length below that confirms the right of each state to regulate election processes before elections occur. (*See, infra*, Sections III-V.)

In resolving Defendants' motion, the Court should take judicial notice that Fitzgerald and Tiffany are running for re-election and are seeking to have their names placed on the August 9, 2022 primary ballot. First, both have robust campaign websites that promote their 2022 re-election ambitions.[8] Second, each has reported to the Federal Election Commission significant fundraising in support of their candidacies:[9]

---

[8] *See* https://scottfitzgeraldforcongress.com/ and https://tomtiffany.com/, last accessed April 30, 2022.

[9] *See* https://www.fec.gov/data/elections/?cycle=2022&state=WI, last accessed on May 1, 2022. Defendant Ron Johnson, who has filed a separate motion to dismiss, has raised $10,847,873.37 as of March 31, 2022.

| Candidate | Total Receipts as of 3/31/22 |
|-----------|------------------------------|
| Fitzgerald | $570,059.56 |
| Tiffany | $554,062.78 |

Finally, each of them must file a sworn Declaration of Candidacy with the WEC by June 1, 2022 as required by Wis. Stat. § 8.21.[10] As of May 4, 2022, Tiffany has already done so.[11]

The filing of the Declaration of Candidacy is necessary for any candidate from Wisconsin (save one running for President) to be considered for placement on the ballot – even those running for federal office. In the Declaration, a candidate must affirm under oath as follows:

(a)    That the signer is a candidate for a named office.

(b)    That the signer meets, or will at the time he or she assumes office meet, applicable age, citizenship, residency, or voting qualification requirements, if any, prescribed by the constitutions and laws of the United States and of this state.

(c)    That the signer will **otherwise qualify for office if nominated and elected.**

Wis. Stat. § 8.21(2)(a-c) (emphasis added).

Defendants' assertion that the Qualifications Clause deprives this Court of jurisdiction to resolve the constitutional question presented by Plaintiffs' claims must fail, because the State of Wisconsin is primarily responsible for the orderly administration of its elections. We know this because "[t]he U.S. Constitution assigns responsibilities to both Congress and the states with respect to the election of congressional candidates." *Greene*, 2022 WL at *26 (citing *Hutchinson*

---

[10]*See*   https://elections.wi.gov/sites/elections/files/2021-12/2022-2023%20Calendar%20of%20Election%20Events%20PDF.pdf, last accessed on May 1, 2022 (showing that nomination papers and Declarations of Candidacy must be filed by June 1, 2022).

[11]   *See*  https://elections.wi.gov/sites/elections/files/2022-04/Candidates%20Tracking%20By%20Office%20as%20of%204.29.2022.pdf, p. 7, last accessed on April 30, 2022. For ease of reference, Plaintiffs have attached to this brief as **Exhibit A** the WEC's candidate tracking form which shows that Tiffany has already filed his Declarations of Candidacy, that Fitzgerald has not yet done so, and that ballot status (for Tiffany and all other candidates listed) remains "pending." The WEC last updated this document on May 4, 2022.

*v. Miller*, 797 F.2d 1279, 1284 (4th Cir. 1986) (acknowledging the "shared responsibility for the legitimation of electoral outcomes" between Congress and the states)). The authority of states to regulate the "Times, Places, and Manner" of elections under Article I, Section 4 of the U.S. Constitution "has been interpreted broadly." *Id.* The Supreme Court has held that the "comprehensive words" found in Article I, Section 4 provide a "complete code for congressional elections." *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972). It explained that the states have authority

> not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

*Id.* at 24-25. The Supreme Court has further confirmed the interest of each state in "avoiding 'voter confusion, ballot overcrowding, or the presence of frivolous candidacies,' in 'seeking to assure that elections are operated equitably and efficiently,' and in 'guarding against irregularity and error in the tabulation of votes[.]'" *U.S. Term Limits*, 514 U.S. at 834 (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986)).

As the *Greene* court recently ruled, "federal appellate courts have held that states have the power to exclude from the ballot constitutionally unqualified or ineligible candidates." 2022 WL at *26. In *Hassan v. Colorado*, for example, the Tenth Circuit held that Colorado "had a legitimate interest in excluding the plaintiff from the ballot because he was constitutionally prohibited from assuming the office of President of the United States under Article II" due to the fact that he was a naturalized citizen (and not a "natural born Citizen" as required). *Greene*, 2022 WL at *26 (citing *Hassan*, 495 F. App'x 947, 948 (10th Cir. 2012)). The Court of Appeals in *Hassan* determined that "a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from

assuming office." 495 F. App'x at 948. In this same vein, the Ninth Circuit ruled that the State of California was authorized to exclude from the ballot a 27-year-old who was constitutionally ineligible to become president due to her age. *See Lindsay v. Bowen*, 750 F.3d 1061, 1064 (9th Cir. 2014).

In short, Defendants are not eligible for this year's ballot if they are determined to be "constitutionally prohibited from assuming office." *Hassan*, 495 F. App'x at 948; *Lindsay*, 750 F.3d at 1064. The court in *Greene* rightly determined that, just like the qualifications imposed in *Hassan* and *Lindsay*, the Disqualification Clause found in Section 3 of the Fourteenth Amendment is an existing Constitutional provision that Congressional candidates must meet in order to be ballot-eligible. *Greene*, 2022 WL at *27. In rejecting Representative Greene's argument that Article I, Section 5 rendered a voter challenge to her qualifications in a Georgia administrative proceeding unconstitutional, the district court questioned whether Article I, Section 5 authorizes the current Congress "to assess the qualifications of a candidate . . . for the 118th Congress." *Id*. In so deciding, the court rejected the contention that the Qualifications Clause could be used to override state requirements for ballot qualification. To hold otherwise would "invite the possibility that fraudulent or unqualified candidates such as minors, out-of-state residents, or foreign nationals could be elected to Congress – and the state would be powerless to prevent it from happening." *Id*.

The fact that the final decision on ballot eligibility belongs to Wisconsin does not affect this Court's power to adjudicate the specific issue of whether Defendants engaged in insurrection within the meaning of Section 3 of the Fourteenth Amendment. Plaintiffs have First Amendment claims, and when they choose to present those claims to a federal court for resolution, that choice must be honored (with very rare exceptions). By enacting the original version of 28 U.S.C. §1331 in 1875,

Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '* * * to guard, enforce, and protect every right granted or secured by the constitution of the United States * * *.'. . . 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.'

*Zwickler*, 389 U.S. at 248 (citations omitted).[12]

Few cases have interpreted Section 3 of the Fourteenth Amendment since its ratification in 1868. *See, e.g.*, *U.S. v. Powell*, 65 N.C. 709 (1871); *Worthy v. Barrett*, 63 N.C. 199 (1869). This is because there has been no need for judicial intervention on the topic of insurrection since the Civil War – until now. This Court is empowered to decide whether the conduct alleged (and revealed through discovery) constitutes insurrection within the scope of Section 3. Once it does so, the candidates whose qualifications are being challenged will have a binding legal decision upon which they can rely (if they were to prevail) or by which they can abide (if they were to lose). If they lose, we expect that Defendants will amend the sworn Declarations of Candidacy required by Wis. Stat. § 8.21(2)(a-c) to reflect their ineligibility for office, or (more to the point) rescind those Declarations completely.[13]

## III. PLAINTIFFS DO NOT SEEK AN ADVISORY OPINION.

Fitzgerald and Tiffany contend that issuance of a declaratory judgment here would result in this Court providing an improper advisory opinion to Congress. (Def. Br. 19-21.) Yet again,

---

[12] *Zwickler* has been controlling law on this point from the day it was handed down through the present. *See, e.g., Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018); *Harris v. Ariz. Independent Redistricting* Comm'n, 993 F. Supp.2d 1042, 1066 (D. Ariz. 2014); *Bown v. Gwinnett County Sch. Dist.*, 895 F. Supp. 1564, 1571 (N.D. Ga. 1995); *Holiday Magic, Inc. v. Warren*, 497 F.2d 687, 695 (7th Cir. 1974).

[13] *See* https://elections.wi.gov/sites/elections/files/2021-10/Ballot%20Access%20Manual_4_0.pdf, p. 3, last accessed on May 1, 2022.

Defendants attack a straw man, because Plaintiffs do not seek to have Defendants expelled from the 117th Congress. As established above, this action will resolve whether Defendants disqualified themselves from eligibility to run for future office under Section 3 of the Fourteenth Amendment. If they are required to amend their Declarations of Candidacy with the WEC to reflect a judgment in favor of Plaintiffs, they will be admitting that they are not qualified to hold office. Should they refuse to do so, Plaintiffs will present this Court's judgment to WEC, which is responsible for excluding "from the ballot constitutionally unqualified or ineligible candidates," *Greene*, 2022 WL at *26 (referring to the similar role of Georgia's electoral commission), or to a state court through mandamus directed at the WEC, depending on how the issue arises.

Accordingly, a decision from this Court that Fitzgerald and Tiffany are ineligible under Section 3 would not be merely advisory. The rule against advisory opinions was designed to prevent courts from providing advance legal judgment on issues that "are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests." *Flast v. Cohen*, 392 U.S. 83, 96–97, (1968) (*quoting U.S. v. Fruehauf*, 365 U.S. 146, 157 (1961)).

Federal law expressly allows that courts "may declare the rights and other legal relations of any interested party seeking [a] declaration, **whether or not further relief is or could be sought**." 28 U.S.C. § 2201(a) (emphasis added). A declaratory judgment is not an advisory opinion. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126 (2007). Rather, a declaratory judgment resolves an actual case or controversy under Article III so long as it "presents 'a difference or dispute . . . that is 'appropriate for judicial determination,' '(not) hypothetical or abstract . . . academic or moot . . . (but) definite and concrete, touching the legal relations of parties

having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character.'" *Wacker v. Bisson*, 348 F.2d 602, 605 (5th Cir. 1965) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). If the parties in this case can agree on anything, it is that each side will vigorously seek to persuade this Court through a "clash of adversary argument" that it is right about whether Defendants ran afoul of Section 3 because they engaged in insurrection. There is no need for concern that the dispute presented here is hypothetical or abstract.

In fact, federal courts commonly decide limited issues that are important to the resolution of other disputes before other tribunals, or that are necessary first steps on the path to obtain relief in a different forum. In *Matter of Shondel*, 950 F.2d 1301, 1309 (7th Cir. 1991), for example, the Seventh Circuit held that a bankruptcy court's decision to modify its previous injunction to allow a wrongful death claimant to proceed in state court against a bankruptcy estate was not an advisory opinion because it affected the legal rights of the parties and was a "case" within the meaning of Article III.

Similarly, insurance companies often file federal declaratory judgment actions seeking determinations of their duties to defend and indemnify defendants in state court proceedings, *see, e.g., Allstate Ins. Co. v. Fishel*, No. 16-82032-CIV, 2017 WL 5634951, at \*2 (S.D. Fla. June 13, 2017), and those federal courts have rejected motions to dismiss in which defendants argued that the insurers were seeking improper advisory opinions. *See id.* (citing a string of similar cases in which "federal district courts in this [Eleventh] Circuit routinely find the matter [of the duty to defend in state court] ripe for decision and exercise jurisdiction"). In yet another example, a district court in Kansas rejected the argument that its order resolving certain HIPAA concerns raised by third-party medical providers in a personal injury case would be "nothing more than an advisory

opinion to a nonparty to do some act outside of this judicial proceeding that the Court cannot enforce, monitor, sanction or effectively review" and instead ruled that it was a valid procedural safeguard consistent with federal law. *Callahan v. Bledsoe*, No. 16-2310-JAR-GLR, 2017 WL 590254, at *2 (D. Kan. Feb. 14, 2017).

While it may have been true in Congressman Victor Berger's situation that Congress (under its authority in Article I, Section 5) would "determine for itself" the issue of whether to seat Berger in Congress without respect for previous judicial rulings (Def. Br. 19), any argument that the Disqualification Clause is, in reality, an additional qualification (*id.* at 2, 19) misses the point. The Constitution gives states the power to determine whether a candidate is qualified under law to be on a ballot. Therefore, Defendants' reliance on Justice Black's concurrence in *Coleman v. Miller*, 307 U.S. 433, 459–60 (1939) and the district court's decision in *Dyer v. Blair*, 390 F.Supp. 1291, 1309 (N.D. Ill. 1975), is misplaced. As they so often do, Fitzgerald and Tiffany conflate the right to **run** for Congress with the right to **serve** in Congress. Only the latter is even arguably subject exclusively to Article I, Section 5.

Finally, Fitzgerald and Tiffany lament that a decision from this Court cannot bind nonparties, which is as fanciful as their other arguments. (Def. Br. 20-21.) After all, if the Court determines that Defendants engaged in insurrection under Section 3, they (as parties to this litigation) will be bound by the Court's judgment and cannot legitimately continue to claim to the WEC or the electorate that they are otherwise qualified for office as provided in Wis. Stat. § 8.21(2)(b) and (c). *See Matrix IV*, 649 F.3d at 547 (elements of issue preclusion). At that point, Defendants will be left with two choices: amend or rescind their Declarations of Candidacy because they can no longer rightly claim under oath that they are qualified for the office to which

they seek re-election, or allow their existing Declarations to stand despite the fact that they would be untruthful.

## IV.  PLAINTIFFS' CASE IS RIPE FOR ADJUDICATION.

Fitzgerald and Tiffany contend this case is not ripe for adjudication. (Def. Br. 21-22.) First, they again improperly characterize Plaintiffs' action as being about Defendants' **existing rights** to remain seated in the 117th Congress. They argue that since there has been no action by Congress to expel Defendants under Article I, Section 5, there is no role for the Court to play because there is no need for judicial oversight of legislative action on the expulsion. (*Id*. at 21.) Again, Plaintiffs are not seeking to unseat the Congressmen. Because this isn't about judicial oversight of Congress' actions under Article I, Section 5 (Def. Br. 22), Plaintiffs are not asking the Court to take any action on Defendants' **existing** status. Defendants' first ripeness argument is thus a red herring.

Defendants' second ripeness argument fares no better. They argue that "it is . . . entirely speculative whether [Defendants] will prevail in their Primary and General elections. And, absent winning the General election, there is simply no occasion to decide whether either "engaged in insurrection or rebellion" within the meaning of the Disqualification Clause." (Def. Br. 21-22.) The argument puts the cart before the horse: this case is about whether Defendants can **run** for Congress, not whether they can **serve** in Congress. This Court has the power to decide whether Defendants' conduct violated Section 3 – the dispositive question is whether they can run in the first place due to Plaintiffs' challenge to their qualifications.

The U.S. Supreme Court has ruled that the requirement imposed by Section 3 of the Fourteenth Amendment became "part of the text of the Constitution" and that "qualifications" as that term is used in relation to Article I, Section 2 of the Constitution, which establishes age, citizenship, and residency requirements for members of the House of Representatives, may include more than the items stated in Article I, Section 2. *U.S. Term Limits*, 514 U.S. at 767 n.2. As the

district court recently held in *Greene*, Section 3 imposes a threshold requirement for access to the ballot. 2022 WL at *25. That issue is squarely presented by Plaintiffs' Complaint, and Defendants' intent to run in the impending elections means that the dispute is ripe for this Court to resolve it.

## V. WHETHER THE DEFENDANTS TOOK PART IN AN INSURRECTION IS JUSTICIABLE.

Defendants' argument that this Court may not "adjudicate a non-justiciable political question" rests on their flawed premise that "the Constitution exclusively entrusts Congress with the task of determining the qualification of its members." (Def. Br. 22-23.) Defendants are wrong for all the reasons set forth in Argument Section II above – not the least of which is the distinction that this action does not challenge Fitzgerald and Tiffany's qualifications as **members** of the 117th Congress, but rather their qualifications as **candidates** for the 118th Congress. Nevertheless, Defendants plow ahead undeterred, arguing that three of the "political question" factors of *Baker v. Carr,* 369 U.S. 186 (1962)[14] weigh against this Court's power to decide whether Defendants violated Section 3 by engaging in insurrection. (Def. Br. 23-24.)

The first *Baker* test focuses on whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." 369 U.S. at 217. Fitzgerald and Tiffany claim that "the Supreme Court has recognized that Article I, Section 5 of the Constitution is a 'textually demonstrable commitment' to Congress to judge only the qualifications expressly set forth in the Constitution." (Def. Br. 23-24) (*citing Powell v. McCormack,* 395 U.S. 486, 548 (1969)). *Powell* is factually akin to this pending action in that it also involved a challenge to the qualifications of a candidate seeking to be seated in a future Congress, which is why Defendants'

---

[14]*Baker* outlines six considerations (in descending order of importance) relevant to whether an issue presents a political question, *id.,* 369 U.S. at 217, but Fitzgerald and Tiffany apparently concede the second, third, and fifth most significant considerations, as they forgo any argument on those points. (Def. Br. 23-24.)

glaring omission of the sentence immediately following the one they quote in their brief is particularly damning. It states: "Therefore, the 'textual commitment' formulation of **the political question doctrine does not bar federal courts from adjudicating petitioners' claims**." *Id.* (emphasis added). Defendants' subsequent discussion of the *Nixon* case, which they argue "supports" and is "consistent" with *Powell* (Def. Br. 24), fails to support their position.[15] The first (and most important) *Baker* test does not prevent this Court from taking up the question that Plaintiffs present.

The *Powell* Court also made clear that a "potentially embarrassing confrontation between coordinate branches" of government caused by a "lack of respect," or "multifarious pronouncements by various departments on one question," do not prevent the judiciary from deciding whether a candidate is qualified to assume federal office. *Powell,* 395 U.S. at 548-49 (citing *Baker*, 369 U.S. at 217). To the contrary, it is unquestionably the courts' responsibility to interpret the Constitution. *Id.*; *citing Marbury v. Madison,* 5 U.S. 137 (1803). Moreover, the potential for conflict is especially low here because – as Defendants emphasize repeatedly throughout their opposition brief – "Congress has not taken any action to expel or exclude Messrs. Tiffany and Fitzgerald" or *"even [decided] whether to take up the issue."* (Def. Br. 25-26; emphasis in original). The present declaratory action clearly does not present a political question from which this Court must abstain.

---

[15]*Nixon* is easily distinguishable from *Powell*, because *Nixon* focuses on the Impeachment Trial Clause, which grants the Senate the "Sole Power to try all Impeachments," exclusionary language that the *Nixon* court considered important to its analysis. (Def. Br. 24) (*citing Nixon*, 506 U.S. at 229-31). *Powell*, on the other hand, deals with the Qualifications Clause, which provides no such plenary authority as described elsewhere in this brief. (U.S. Const., art. I, § 5.)

## VI.  PLAINTIFFS' COMPLAINT STATES A VALID CLAIM FOR RELIEF.

Defendants conclude with a cluster of arguments with a common theme: the Complaint does not set forth a cognizable legal claim for relief. (Def. Br. 26-30.) Some are simply misplaced. For example, Plaintiffs are not making a claim under 42 U.S.C. §1983 (*id*.), because Plaintiffs do not base their substantive claim or their request for declaratory judgment on an assertion that Defendants acted "under color of state law." Similarly, Defendants' argument that Plaintiffs cannot assert a *Bivens* claim for an implied right against federal defendants also misses the mark, because *Bivens*-type claims seek damages, *see Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), and Plaintiffs do not seek damages but a declaratory judgment.

Nor can the Complaint be dismissed because Plaintiffs do not assert a legal theory. They are not obligated to do so. "A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief." *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co*., 978 F.2d 287 (7th Cir. 1992*)* "Complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule. Any decision declaring that 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006), abrogation on other grounds recognized by *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007).

As the *Greene* court ruled, citizens have a First Amendment right to challenge a putative candidate's right to be on a ballot. 2022 WL at *18. Parties may sue federal officials for declaratory judgments to enforce First Amendment rights. For example, in *Smadi v. True*, Case No. 18-cv-02149-JPG, 2021 WL 2853262 (S.D. Ill., July 8, 2021), the district court ruled although a federal prisoner could not assert a *Bivens* damages claim against federal prison officials for violating the First Amendment by interfering with the prisoner's mail, *id*. at *4-5, the prisoner was entitled to

seek declaratory relief for the claimed First Amendment violation. *Id*. at *5. Similarly, in *Chapman v. Pickett*, 586 F.2d 22, 26-27 (7th Cir. 1978) the Seventh Circuit held that defendants in a federal prisoner's complaint based on the First Amendment Free Exercise Clause were immune from damages claims, but the plaintiff remained free to pursue claims for declaratory or injunctive relief on remand. In short, this Court has ample authority to grant the declaratory relief that Plaintiffs seek under the law they assert to support their claim.

## **CONCLUSION**

For the reasons set forth in this brief, Defendants' motion to dismiss should be denied.

Dated this 6th day of May 2022.

LAFFEY, LEITNER & GOODE LLC
Counsel for Plaintiffs

*s/ Mark M. Leitner*

Mark M. Leitner
State Bar No. 1009459
Joseph S. Goode
State Bar No. 1020886
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 (telephone)
(414) 755-7089 (facsimile)
mleitner@llgmke.com
jgoode@llgmke.com