# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### (MILWAUKEE DIVISION)

| | |
|---|---|
| NANCY A. STENCIL, DANIEL C. RUSSLER, LISA C. MUELLER, CHERYL L. MARANTO, GERARD D. LISI, JAMES B. KURZ, MARGARET L. DEMUTH, PAUL DEMAIN, JAMES R. BOTSFORD and RICHARD BECHAN, <br><br> *Plaintiffs*, <br><br> v. <br><br> RONALD H. JOHNSON, THOMAS P. TIFFANY, and SCOTT L. FITZGERALD, <br><br> *Defendants*. | Case No: 2:22-cv-00305 <br><br> Hon. Lynn Adelman |

**DEFENDANTS THOMAS P. TIFFANY AND SCOTT L. FITZGERALD'S REPLY IN SUPPORT OF THEIR RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii
INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 2
    I.    Plaintiffs Have Failed to Meet Their Burden to Establish Standing. ...................... 2
        A.    Plaintiffs' Complaint Does Not Allege a First Amendment Violation. ................................................................................................. 2
        B.    Plaintiffs Fail to Demonstrate Any Concrete and Particularized Injury. ......................................................................................................... 3
            1.    Plaintiffs Have Not Suffered Any Injury. ..................................... 3
            2.    Plaintiffs Do Not Have Organizational Standing. ......................... 5
            3.    Plaintiffs Cannot Create Standing by Filing a Lawsuit. ................ 7
        C.    Plaintiffs Failed to Demonstrate a Causal Connection. ............................ 8
        D.    Plaintiffs Failed to Demonstrate Redressability. ....................................... 9
    II.    Whether Viewed In Its Entirety or By Its Constituent Parts, Plaintiffs' Scheme Fails. ........................................................................................................... 9
        A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claim. ....................................................................................................... 10
        B.    The Right to Regulate Elections Does Not Include the Right to Adjudicate Qualifications. ...................................................................... 11
        C.    Any Decision By This Court Would Constitute an Improper Advisory Opinion...................................................................................... 14
        D.    Plaintiffs Have Failed to State a Claim for Relief. .................................. 15
CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. C.L. Union of Illinois v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986) ............................ 4

*Common Cause Indiana v. Lawson,* 937 F.3d 949 (7th Cir. 2019) ................................................ 6

*Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007) .......................................... 6

*Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796 (7th Cir. 2008) ............................................................................................................................... 5

*Greene v. Raffensperger*, 2022 WL 1136729 (N.D. Ga. Apr. 18, 2022) .................................. 7, 8

*Hassan v. Colorado*, 495 F. App'x 947 (10th Cir. 2012) ............................................................ 13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................................ 5

*Johnson v. Apna Ghar, Inc.*, 330 F.3d 999 (7th Cir. 2003) ......................................................... 10

*Lance v. Coffman*, 549 U.S. 437 (2007) ........................................................................................ 4

*Lindsey v. Bowen*, 750 F.3d 1061 (9th Cir. 2014) ....................................................................... 13

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................ 8, 9

*Marshall v. Town of Merrillville*, 228 F. Supp. 3d 853 (N.D. Ind. 2017) ..................................... 4

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) ....................................................... 4

*Powell v. McCormack*, 395 U.S. 486 (1969) ......................................................................... 11, 12

*Roudebush v. Hartke*, 405 U.S. 15 (1972) .............................................................................. 12, 13

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510 (7th Cir. 2015) .......................................................................................................................... 3

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ...................................... 5

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ................................................................................ 7

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................ 5

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ........................................................... 11

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ................................................................................................................ 7

**Constitutional Provisions**

U.S. Const., Art. I § 4 .................................................................................................. 11

U.S. Const., Art. I § 5 .............................................................................................. 10, 13

U.S. Const., First Amendment ................................................................................ passim

U.S. Const., Fourteenth Amendment ...................................................................... passim

**Statutes**

42 U.S.C. § 1983 .............................................................................................. 4, 7, 8, 15

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................ 2

Fed. R. Civ. P. 12 .................................................................................................... 1, 11

## INTRODUCTION

As demonstrated by both pending motions to dismiss—that of Congressmen Tiffany and Fitzgerald, ECF No.19 ("Motion"), and of Senator Johnson, ECF No. 22—Plaintiffs' Complaint suffers from an impressive display of incurable legal defects. Yet, despite the fact that Rule 12(b) is designed to challenge only the legal underpinnings of Plaintiffs' suit, Plaintiffs chastise Defendants for not responding to the incoherent conspiracy theories disguised as factual allegations in Plaintiffs' Complaint. Plaintiffs essentially disregard the binding, uncontroverted authorities in Defendants' motions that hold, for example, that qualifications of members of Congress may only be adjudicated by Congress itself, absent express delegation of that authority to another body, which is nowhere to be found in this case.

Defendants Fitzgerald and Tiffany vehemently deny what few allegations in Plaintiffs' eighty-page Complaint relate to them. The vast majority of the op-ed styled as a legal pleading rattles off a grand conspiracy involving a litany of non-defendants, from the former president and attorney general to "fraudulent electors" and the mob in Washington D.C. on January 6, 2021. Plaintiffs, however, completely fail to allege with any specificity that Defendants broke the law or encouraged others to do so.

That is beside the point. Plaintiffs' glossing over fatal legal defects at the Rule 12 stage with fantastical accusations is one of the older tricks in the book, but the legal authorities supporting Defendants' motions are—unlike Plaintiffs' legal theory—clear as day. Plaintiffs fail to show both standing and subject matter jurisdiction, and their sole claim for a declaratory judgment—which is unaccompanied by any legal claim or right of action—fails as a matter of law. For the reasons stated in the Motion and explained below, Plaintiffs' Complaint should be dismissed.

1

Case 2:22-cv-00305-LA    Filed 05/20/22    Page 5 of 20    Document 41

# ARGUMENT

## I. <u>Plaintiffs Have Failed to Meet Their Burden to Establish Standing.</u>

Plaintiffs seek a declaration that Defendants' actions constitute an "insurrection or rebellion against the United States" in contravention of Section Three of the Fourteenth Amendment (the "Disqualification Clause"). Recognizing they lack standing, Plaintiffs try to morph this case to one that impacts their First Amendment rights. But Plaintiffs have not alleged a First Amendment deprivation, and an attempt to amend the Complaint should be denied as futile.

### A. <u>Plaintiffs' Complaint Does Not Allege a First Amendment Violation.</u>

The First Amendment does not give Plaintiffs standing due to the simple fact that the Complaint does not allege a First Amendment deprivation. *See generally* (Compl., ECF No. 1.) Therefore, the Complaint fails to give Defendants the notice required under Fed. R. Civ. P. 8(a).

Plaintiffs' eighty-page Complaint generally alleges that Defendants engaged in speech laying the groundwork for the January 6, 2021, Capital riot. *Id*. ¶¶ 35-175. They contend that speech ran afoul of the Disqualification Clause. *Id*. ¶ 186. But nowhere do Plaintiffs even suggest that Defendants' conduct violates *Plaintiffs*' First Amendment rights. Plaintiffs only allege they have an interest as "voters and citizens of the State of Wisconsin." *Id*. ¶ 187. As such, they clearly base all of their claims on the Disqualification Clause, a provision of the Constitution that only impacts Plaintiffs in the same general way it impacts all citizens.

Plaintiffs do not even argue that Defendants' conduct surrounding the January 6, 2021 riot implicates their First Amendment rights. Instead, Plaintiffs pivot to an entirely new claim that they are harmed by Defendants' decisions to run for re-election. (Opp'n at 5, 8, ECF No. 23.) In other words, Plaintiffs no longer claim they were injured by the events alleged in the Complaint; they now claim they are injured by Defendants' later decision to run for re-election. But the Complaint

2

Case 2:22-cv-00305-LA   Filed 05/20/22   Page 6 of 20   Document 41

does not ask the Court to decide whether Defendants are qualified to run for re-election, nor could it, as that question is reserved exclusively for Congress. And while Plaintiffs' Opposition to Senator Johnson's Motion erroneously contends that "it is irrelevant that the Complaint does not mention the First Amendment" because they "are not required to plead legal theories," (ECF No. 39 at 9), Plaintiffs' alleged First Amendment deprivation is not a "legal theory" supporting their Disqualification Clause claim; it is an entirely different claim that is not pled in the Complaint. Even then, Plaintiffs suggest in a footnote they could amend the Complaint to plead their new First Amendment claim. (ECF No. 23 at 8 n.2.) But as discussed below, Plaintiffs' new claim does not grant standing, and any request to amend should be denied as futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 520 (7th Cir. 2015) (citations omitted).

### B. Plaintiffs Fail to Demonstrate Any Concrete and Particularized Injury.

The only injury alleged by Plaintiffs is their interest "as voters and citizens." (Compl. ¶ 187, ECF No. 1.) Such a generalized interest, however, is insufficient for standing. And while Plaintiffs attempt to turn this generalized grievance into a legally cognizable injury by claiming they engaged in speech about their grievance, their decision to engage in speech is not a legally cognizable injury.

#### 1. Plaintiffs Have Not Suffered Any Injury.

Plaintiffs' decision to engage in speech about Defendants' alleged conduct does not establish a cognizable injury. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Here, Plaintiffs do not claim that a law or government act inhibits or impedes their right to engage in political speech. Plaintiffs

3

remain free to "participate in public debate through political expression and political association." *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 203 (2014). Plaintiffs admit this. *See e.g.*, ECF No. 30, Bottsford Decl. ¶ 5 (admitting Plaintiff Bottsford is free to "devote [his] time and resources" to the political speech of his choice.).

Plaintiffs' freedom to exercise their First Amendment rights distinguishes this case from those cited in their brief. For example, Plaintiffs rely on *Am. C.L. Union of Illinois v. City of St. Charles*, 794 F.2d 265 (7th Cir. 1986), for the idea that small injuries support standing for First Amendment claims. There, two residents and an association sued under 42 U.S.C. § 1983 to enjoin a city from lighting a large cross on a city building. *City of St. Charles*, 794 F.2d at 267. The Seventh Circuit concluded the individual plaintiffs had standing to raise a First Amendment claim because they were forced to detour around streets they normally used in order to avoid seeing the cross. *Id.* at 268-69. That detour caused those plaintiffs a direct, albeit minor, injury. *Id.*

In sharp contrast to *City of St. Charles*, Plaintiffs have not brought a § 1983 action challenging conduct prohibited by the First Amendment. Instead, Plaintiffs seek a declaration that Defendants engaged in an insurrection under the Disqualification Clause. But Plaintiffs' right to political advocacy has nothing to do with whether Defendants' engaged in an insurrection. And even then, to equate Plaintiffs' political advocacy to the injury in *City of St. Charles*—remember, those claimants had no choice, either detour *out of their way* or have their First Amendment rights *violated*—cheapens the injury in *City of St. Charles*. Make no mistake: the advocacy claimed by Plaintiffs is not a detour to avoid constitutional harm; it is a joy ride for political pleasure.

To allow Plaintiffs to convert a generalized non-personal grievance to an injury-in-fact by simply speaking out about the grievance would eliminate the doctrine of standing altogether. For example, the Motion cites to *Lance v. Coffman*, where citizens challenged the Colorado State

4

Constitution as violating the Election Clause. 549 U.S. 437 (2007). There, the Supreme Court concluded plaintiffs lacked standing for such a generalized grievance. *Id*. at 442. But under Plaintiffs' theory, the citizens in *Lance* could have created standing had they simply announced their complaints about the Colorado Constitution. This is not the type of personal or individual injury required to show standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

This case is not about whether the conduct of Defendants violated Plaintiffs' First Amendment rights. Rather, this case raises a generalized grievance about the Fourteenth Amendment, which Plaintiffs lack standing to assert. *See e.g., Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 209 (1974). Their Complaint must be dismissed.

### 2. Plaintiffs Do Not Have Organizational Standing.

Unable to claim government interference with First Amendment activity, Plaintiffs claim they are forced to spend time discussing the Disqualification Clause when they would prefer to discuss substantive policy issues. (Opp'n at 13-14, ECF No. 23) (citing DeMuth Decl. ¶ 5). Plaintiffs claim this personal "diversion of time and resources" is an injury. This theory rests entirely on inapplicable case law regarding concepts of organizational standing. Neither the Supreme Court, nor any court Defendants are aware of, has adopted this theory for individual standing in the manner Plaintiffs claim here.

Organizations generally have standing to raise injuries to the organization itself, as well as associational standing to sue on behalf of their members. *See e.g., Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 801 (7th Cir. 2008). With respect to the organization itself, a drain on an organization's resources may be sufficient in some contexts to show a concrete and demonstrable injury. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The Supreme Court, however, has never adopted the "drain on resources argument" in the

context of an individual claiming to be harmed by engaging in optional First Amendment activities.

Plaintiffs rely on two Seventh Circuit decisions for their organizational standing theory, neither of which bear on Plaintiffs' standing as individuals. *See* (Opp'n at 12-13, ECF No. 23). First, Plaintiffs rely on *Crawford v. Marion Cnty. Election Bd.*, where the Seventh Circuit concluded the Democratic Party had standing to challenge a state voter ID law. 472 F.3d 949, 951 (7th Cir. 2007). Importantly, the panel distinguished organizational standing from individual standing, concluding that organizational standing was present because the challenged law injured the organization "by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote." *Id*. In contrast, the organization had associational standing "to assert the rights of those of its members who will be <u>prevented</u> from voting by the new law." *Id*. (Emphasis added). Thus, contrary to Plaintiffs' argument, it was not the diversion of resources that gave standing to raise claims of individuals, but the challenged law's intrusion on their constitutional rights.

Plaintiffs' reliance on *Common Cause Indiana v. Lawson* is similarly misplaced. There, voting rights organizations challenged Indiana's voter registration law. 937 F.3d 944, at 949 (7th Cir. 2019). The Seventh Circuit considered the organization's standing to raise claims on its own behalf and concluded, just like its sister circuits, that voter-advocacy organizations have standing to challenge election laws based on drains of their resources. *Id*. at 952.

Neither *Crawford* nor *Common Cause Indiana* support Plaintiffs' standing argument. Both were limited to discussing a drain of resources in the context of organizational standing to challenge conduct central to the organization's mission. Here, Plaintiffs are not organizations, and this case law does not apply to their speech.

Even if organizational standing were at issue, at most Plaintiffs claim a mere interest in the

enforcement of the Constitution. *E.g.*, (Maranto Decl. ¶ 5, ECF 24); (Bechen Decl. ¶4, ECF No. 25); (DeMuth ¶ 4, ECF 26). But standing "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). And a "mere interest" is insufficient to show that Plaintiffs' have been injured by the alleged violation of the Fourteenth Amendment. *See Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). As the Supreme Court warned, if a "special interest" in a subject were enough to confer standing, any citizen or special interest group could initiate litigation and there would be no objective basis upon which to disallow suit. *Id*.

### 3. Plaintiffs Cannot Create Standing by Filing a Lawsuit.

Separately, Plaintiffs claim they "prove injury-in-fact through this lawsuit and other proceedings they may have to bring if they succeed here." (Opp'n at 14, ECF No. 23.) Of course, no legal authority is necessary to show that Plaintiffs' decision to file a lawsuit is not an injury that confers standing. If that were the case, any party that files suit would automatically show injury sufficient for standing. That is not the law.

Plaintiffs also argue that "[t]he filing of a challenge to a political candidate's placement on a ballot based on the candidate's involvement in insurrection is protected by the First Amendment." (Opp'n at 14, ECF No. 23.) For this theory, Plaintiffs rely solely on the Northern District of Georgia's decision in *Greene v. Raffensperger*, 2022 WL 1136729 (N.D. Ga. Apr. 18, 2022) attached as <u>Exhibit A</u>. *Greene* involved a 42 U.S.C. § 1983 challenge to the constitutionality of a state statute permitting voters in Georgia to challenge whether candidates in their districts meet the requisite legal qualifications to run for a particular office via an administrative proceeding. *Id*. But despite Plaintiffs' contention otherwise, the *Greene* court <u>did not</u> recognize a citizen's First Amendment right to file a complaint in Court challenging a congressional

7

candidate's qualifications under the Constitution. Rather, the Court merely noted that the particular Georgia statute at issue in that case embodied a First Amendment right to file a complaint regarding the operation of the electoral process *under state law*. *Id*. at *18.

Setting aside the false implication that a *state* may adjudicate a congressional candidate's qualification under the Disqualification Clause—as stated in the Motion and further below, that adjudicative power is exclusively reserved for Congress absent an express delegation by Congress to another government body—unlike *Greene*, Plaintiffs have not proceeded under a state law permitting citizens to challenge candidate qualifications. Nor does this case challenge the constitutionality of any such statute under 42 U.S.C. § 1983. Moreover, Plaintiffs admit they forewent a challenge under Wisconsin law because they would not have "control over the investigation" and wish instead to engage in a fishing expedition. (Opp'n at 14, n.4, ECF No. 23.) *Greene* does not support standing here.

### C. **Plaintiffs Failed to Demonstrate a Causal Connection.**

Plaintiffs also fail to show the causation element of standing, which requires that the alleged injury be "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Here, Plaintiffs argue that they "filed this case as a direct consequence of **Defendants' running for re-election** to congress despite their insurrectionist conduct." (Opp'n at 15, ECF No. 23.) (Emphasis added). It is Defendants' "presence on the ballot [that] is causing them to spend time explaining to voters the grievous harm that was done by participating in the insurrection." *Id*.

But the present lawsuit does not involve a challenge to a candidate's ballot eligibility. It seeks a declaration that Defendants engaged in insurrectionist conduct under the Disqualification

Clause. Thus, by Plaintiffs' own admission, their alleged injury arises from Defendants' decisions to seek re-election, and not from Defendants' alleged conduct as pled in the Complaint.

### D. **<u>Plaintiffs Failed to Demonstrate Redressability.</u>**

Plaintiffs likewise failed to show that the claimed injury is likely to be redressed by a favorable decision from this Court. *See Lujan*, 504 U.S. at 560. Plaintiffs implausibly speculate that a declaratory judgment "*might*" cause Defendants to amend their Declarations of Candidacy or they "*might*" be able to obtain relief in later proceedings before the Wisconsin Election Commission ("WEC") or a Wisconsin court. (Opp'n at 15-16, ECF No. 23.) But speculation is insufficient to show standing. *See Lujan*, 504 U.S. at 560.

Even then, as Plaintiffs would have it, it is the WEC that has the authority in Wisconsin to determine "ballot eligibility." (Opp'n at 14 n.4, ECF No. 23.) While Fitzgerald and Tiffany disagree with that contention to the extent it implies the WEC has the authority to adjudicate Disqualification Clause matters of congressional candidates—it does not because Congress has the sole authority to make its own such determination and would not be bound by a determination from this Court or the WEC—the reality is the WEC is not a party to this action and, as such, would likewise not be bound by a decision from this Court. Plaintiffs have backed their way into a redressability problem, and their Complaint must be dismissed.

### II. **<u>Whether Viewed In Its Entirety or By Its Constituent Parts, Plaintiffs' Scheme Fails.</u>**

Plaintiffs' scheme boils down to this: get a declaration from this Court finding that Defendants engaged in an "insurrection" rendering them unqualified to run for Congress under the Disqualification Clause, which Plaintiffs would then attempt to use to force the State of Wisconsin—through the WEC—to bar Defendants from the ballot. (Opp.'n at 14, ECF No. 23.)

That would be quite a feat, especially in light of the several immovable legal obstacles

9

Case 2:22-cv-00305-LA   Filed 05/20/22   Page 13 of 20   Document 41

between Plaintiffs' here and there. For example, this Court lacks the legal authority to adjudicate whether Defendants violated the Disqualification Clause because Congress has not granted this Court the jurisdiction to do so. Meanwhile, the State of Wisconsin lacks the power not only to adjudicate such a challenge, but to enforce such a judgment. Then there's the fact that Plaintiffs lack a cause of action to even obtain such an adjudication in the first place.

In other words, each component of Plaintiffs' procedural scheme fails in isolation. And if Plaintiffs are legally barred from using each facet of their plan in isolation, they are surely barred from using them in unison. As further stated below, Plaintiffs' Complaint must be dismissed.

### A.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claim.

In what can only be described as an attempted sleight of hand, Plaintiffs mischaracterize Defendants' jurisdictional challenge as being that Article I Section 5 of the Constitution (the "Qualifications Clause") "divests" this Court of subject matter jurisdiction. (Opp'n at 16-22, ECF No. 23.) But the inquiry of whether a federal court has jurisdiction is not whether it has been "divested" of jurisdiction, as that would imply that federal district courts are courts of general jurisdiction. They are not.

Federal courts are courts of *limited* jurisdiction, so the question is not whether a court has been divested of a preexisting, default jurisdiction, but whether Congress affirmatively granted that court with the power to decide a case. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). As explained throughout Defendants' Motion, the plain language of the Constitution and numerous supporting cases clearly provide that the power to adjudicate qualifications of members of Congress is vested in Congress *alone*; absent an express delegation of that power—which does not currently exist—that power is not shared with the judiciary or any other governmental body. Despite their burden to show that this Court has jurisdiction over this

case, Plaintiffs fail to identify any express grant of jurisdiction or a case in which a federal court adjudicated the qualification of a member of (or candidate for) Congress. That, of course, is because none exist. For this reason alone, Plaintiffs' Complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Plaintiffs attempt to distract the Court from their lack of jurisdictional authority by distinguishing their suit as a challenge to Defendants' qualifications for serving in the 118th Congress (a *prospective* adjudication), not as a challenge to Defendants' qualifications for continuing to serve in the 117th Congress (a *retrospective* adjudication). (Opp'n at 17, ECF No. 23.) But this shallow distinction, which is nowhere to be found in Plaintiffs' Complaint, has no effect on the issues before the Court. Either way, the issue presented by Plaintiffs is whether Defendants engaged in insurrection and are thereby disqualified from holding congressional office. And, either way, Plaintiffs have still failed to show that this Court has jurisdiction over this case.

### B. The Right to Regulate Elections Does Not Include the Right to Adjudicate Qualifications.

Plaintiffs further attempt to circumvent the lack of jurisdiction by conflating the states' well-recognized right to regulate elections with Plaintiffs' newly-fabricated right to privately adjudicate congressional qualifications. Essentially, Plaintiffs try to avail themselves of case law relating to states' authority under Article I, Section 4 of the Constitution to determine and maintain time, place, and manner restrictions on election proceedings. But any discussion of the power to adjudicate congressional qualifications is conspicuously absent from Plaintiffs' authorities.

Plaintiffs' citation to *U.S. Term Limits v. Thornton* is completely inapposite. There, the Supreme Court held that states were not allowed to modify the Constitution's qualifications for congressional office. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 782–83 (1995). The Court specifically reaffirmed its decision in *Powell v. McCormack*, 395 U.S. 486 (1969), where it had

determined that Congress must adjudicate the qualifications of its members by only applying the qualifications specifically enumerated in the Constitution. *See U.S. Term Limits*, 514 U.S. at 787–98. But neither *U.S. Term Limits* nor *Powell* support Plaintiffs' theory that constitutional qualifications for members of Congress may be adjudicated by private suit in federal court.

Plaintiffs' mischaracterization of *Powell* is particularly problematic. In *Powell*, Congress investigated and adjudicated newly-reelected Congressman Powell's qualifications to be seated in the 90th Congress, concluding that he should be excluded from the House for unlawfully diverting funds for personal benefits. *Powell*, 395 U.S. at 489–94. Powell attacked the House's decision on the grounds that Congress had exceeded its power to adjudicate its members' qualifications by devising and enforcing a qualification not enumerated within the text of the Constitution. *Id.* The Court agreed with Powell. But the Court did *not*—despite Plaintiffs' boldfaced mischaracterization otherwise (Opp'n at 28, ECF No. 23.)—take it upon itself to re-adjudicate Powell's qualifications. *Id.* at 519–20. Rather, the Court strictly pursued its duty to interpret the Constitution and, in so doing, held that the House was not constitutionally entitled to manufacture *new* qualifications for its members outside of those specifically enumerated in the Constitution. *Id.* at 521–22, 547–48. Thus, *Powell* is an example of the Court's reining back an extra-constitutional action of the House; it is not a precedent for the Court's arrogating to itself an adjudicatory power vested solely in Congress.

Plaintiffs also cite to *Roudebush v. Hartke*, 405 U.S. 15, 25 (1972), but again, to no avail. There, the Court addressed the tension between a state's power to conduct recounts to verify the accuracy of an election and the Senate's power to judge elections and returns. *Id*. The Court held that a state may conduct recounts to verify federal elections so long as it did not frustrate "the Senate's ability to make an independent final judgment." *Id*. Put another way, a state may only

regulate an election if it does not deprive the Legislature of its ultimate adjudicatory responsibility.

Here, Plaintiffs do not seek to preserve a state's interest in verifying election results. Rather, they are private citizens seeking to invoke federal jurisdiction with an unrecognized private suit to adjudicate candidates' qualifications to hold congressional office under the Disqualification Clause. Contrary to *Roudebush*, if Plaintiffs were allowed to obtain a declaratory judgment in this case, take that judgment to the WEC, and bar Defendants from the ballot in Wisconsin's election, then Plaintiffs would effectively strip Congress of any opportunity for making an "independent final judgment" as to the qualifications of Defendants to continue serving as members of Congress. Such a result would blatantly cross the bright-line standard established by the *Roudebush* Court.

Plaintiffs further muddy the precedential waters by asserting that the Ninth and Tenth Circuits have upheld district courts' adjudications of a candidate's qualifications for federal office, citing to *Lindsey v. Bowen*, 750 F.3d 1061, 1064 (9th Cir. 2014) and *Hassan v. Colorado*, 495 F. App'x 947, 948 (10th Cir. 2012). But in both of these cases, the circuit courts addressed qualifications of candidates for **Presidential elections,** not elections for Congress. This is a material difference, as the Constitution does not expressly identify who judges the qualifications of candidates for President, while the Constitution expressly provides that each House of Congress "shall be ***the*** Judge" of the "Qualifications of its own Members." U.S. Const., art. I, § 5. (Emphasis added). As a result, these cases not only cut against Plaintiffs' theory, but they support dismissal.

Ultimately, every case cited by Plaintiffs is clearly distinguishable from the present case. Simply put, there is no support for Plaintiffs' contention that states have the right to adjudicate whether a congressional candidate should be disqualified under the Disqualification Clause. And even if such a right existed, it would still not imply that Plaintiffs can present a private cause of action to invoke this Court's jurisdiction in adjudicating such a question. Plaintiffs' claim fails.

13

### C. Any Decision By This Court Would Constitute an Improper Advisory Opinion.

Yet another reason Plaintiffs' scheme fails is because Plaintiffs' intended interplay between this Court and the WEC falls victim to the prohibition against federal courts issuing advisory opinions. *See* Motion at 19-21, ECF No. 19. Of course, as Plaintiffs would have it, because the parties have competing legal arguments, then this must be a real controversy from which a decision by this Court would not be advisory and would bind the WEC in terms of Defendants' access to the ballot. As explained above, however, the WEC *does not* have the authority to adjudicate the qualifications of a member of (or candidate for) Congress. Of course, states sometimes have the authority to confirm a black-and-white qualification such as age or citizenship—a process which consists of merely verifying candidate-supplied information against the text of a birth certificate or passport. That action is squarely within the everyday competency of a state elections commission. But absent an express grant of authority to *adjudicate* whether a candidate has engaged in insurrectionist conduct under the Disqualification Clause, the state is powerless to make that call or to enforce such a judgment.

*Even if* Congress granted that authority to the state, which it has not, any determination by this Court as to a candidate's qualification under the Disqualification Clause would not bind the state because the state would have that authority due to Congressional grant. Indeed, Plaintiffs admit that even if they prevail here, they would need to seek further relief from the WEC or in a state mandamus action directed at the WEC. (Opp'n at 22-23, ECF No. 23.) But the WEC is not a party here, and in that hypothetical would not be bound by a decision from this Court. Of course, this is all academic: Congress has not authorized the state or this Court to adjudicate congressional candidates' qualifications under the Disqualification Clause, so any determination here would be a non-binding, advisory opinion issued by a court without jurisdiction in the first instance.

14

### D. Plaintiffs Have Failed to State a Claim for Relief.

Finally, while Plaintiffs make several attempts to construct from whole cloth a private right of action to adjudicate the Defendants' fitness for office under the Disqualification Clause, they strike out swinging. Plaintiffs failed to identify any private right of action to seek declaratory relief regarding the Disqualification Clause. Plaintiffs admit they did not raise either a 42 U.S.C. § 1983 claim or a *Bivens* claim. And Plaintiffs do not dispute that the Disqualification Clause does not give Plaintiffs any rights that would permit an equitable claim. *See* (Opp'n at 29-30, ECF No. 23.)

Instead, Plaintiffs merely proceed on plainly inapplicable case law that they have First Amendment rights. *Id.* The gaping flaw in this argument is that Plaintiffs do not seek any declaration with respect to *their* First Amendment rights. Moreover, the First Amendment does not bar the conduct of individuals such as Defendants; it only restrains government action, which is not at issue in this case. U.S. Const. amend. I. Because Plaintiffs' have no applicable rights, declaratory relief is simply unavailable.

Despite the smoke and mirrors in their Complaint and Opposition, the reality is that Plaintiffs are attempting to proceed on nothing but the Disqualification Clause. As it stands, however, there is no authority outside of that held by Congress to adjudicate the qualifications of members of (or candidates for) Congress under the Disqualification Clause. Plaintiffs fail to state a claim upon which relief can be granted, and their Complaint should be dismissed with prejudice.

### CONCLUSION

Defendants Thomas P. Tiffany and Scott L. Fitzgerald respectfully request that the Court grant their motion and dismiss Plaintiffs' Complaint with prejudice.

Dated: May 20, 2022                        Respectfully submitted,

                                               */s/ Charles R. Spies*

Charles R. Spies (MI Bar # P83260)
Dickinson Wright PLLC
1825 Eye Street N.W., Suite 900
Washington, D.C. 20006
(202) 466-5964
(844) 670-6009 (Fax)
cspies@dickinsonwright.com

Robert L. Avers (MI Bar #P75396)
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 623-1672
(844) 670-6009 (Fax)
ravers@dickinsonwright.com

Thomas G. Kreul (WI Bar #1003947)
Schober Schober & Mitchell, S.C.
2835 South Moorland Road
New Berlin, WI 53151-3743
(262) 785-1820
tgkreul@schoberlaw.com

*Attorneys for Defendants Thomas P. Tiffany and Scott L. Fitzgerald*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 20, 2022, I served a true and correct copy of the foregoing document on all counsel of record in this matter via service by the Court's CM/ECF system.

　　　　　　　　　　　　　　　　 */s/ Robert L. Avers*
　　　　　　　　　　　　　　　　Robert L. Avers (MI Bar #P75396)