## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF WISCONSIN
## (MILWAUKEE DIVISION)

| | | |
|---|---|---|
| NANCY A. STENCIL, DANIEL C. | ) | |
| RUSSLER, LISA C. MUELLER, | ) | |
| CHERYL L. MARANTO, GERARD D. | ) | |
| LISI, JAMES B. KURTZ, MARGARET L. | ) | |
| DEMUTH, PAUL DEMAIN, JAMES R. | ) | |
| BOTTSFORD and RICHARD BECHEN, | ) | **Case No.: 22-cv-305-LA** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD H. JOHNSON, THOMAS P. | ) | |
| TIFFANY, and SCOTT L. | ) | |
| FITZGERALD, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## DEFENDANT RONALD H. JOHNSON'S REPLY
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

_____

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ iii

**INTRODUCTION** ...................................................................................................... 1

**REPLY IN SUPPORT** .............................................................................................. 1

    I.    Plaintiffs Have No Claim Under the First Amendment—Nor Have They Pled One ......... 1

    II.   Plaintiffs Have No Right to Seek Relief Under the Disqualification Clause .................... 2

    III.  Plaintiffs Lack Standing to Bring Their Declaratory Judgment Claim ............................. 6

          A.    Plaintiffs' diversion-of-resources injury theory fails ................................. 6

          B.    Plaintiffs' right-to-petition injury theory fails ......................................... 9

    IV.  This Court Lacks Jurisdiction to Decide Plaintiffs' Disqualification Questions ............. 10

    V.   The Amnesty Act of 1872 Bars Plaintiffs' Claim ............................................................ 12

    VI.  Plaintiffs Cannot Use the Declaratory Judgment Act to Create a Private Right Where It Does Not Exist ............................................................................................. 13

**CONCLUSION** ........................................................................................................ 13

**CERTIFICATE OF SERVICE** ................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Am. Civil Liberties Union v. St. Charles*,
794 F.2d 265 (7th Cir.1986) ................................................................8

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015).............................................................................4, 5

*Aurora Loan Servs., Inc. v. Craddieth*,
442 F.3d 1018 (7th Cir.2006) ..............................................................8

*Barry v. United States ex rel. Cunningham*,
279 U.S. 597 (1929).............................................................................11

*Bauer v. Elrich*,
8 F.4th 291 (4th Cir. 2021) .................................................................5

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir. 2009) .............................................................8

*State ex rel. Chavez v. Evans*,
446 P.2d 445 (N.M. 1968) ...................................................................11

*Citizens United v. FEC*,
558 U.S. 310 (2010).............................................................................8

*City of Boerne v. Flores*,
521 U.S. 507 (1997).............................................................................5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).............................................................................10

*Common Cause Ind. v. Lawson*,
937 F.3d 944 (7th Cir. 2019) ...............................................................7

*Crawford v. Marion Cnty. Election Bd.*,
472 F.3d 949 (7th Cir. 2007) ...............................................................7

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008).............................................................................7

*Elliott v. Cruz*,
137 A.3d 646 (Pa. Commw. Ct. 2016) .................................................11

*Elliott v. Cruz*,
134 A.3d 51 (Pa. 2016) ........................................................................11

*Greene v. Raffensperger*,
No. 22-CV-1294-AT, 2022 WL 1136729 (N.D. Ga. Apr. 18, 2022) ............1, 2, 5, 6

Case 2:22-cv-00305-LA   Filed 05/20/22   Page 3 of 21   Document 42

# TABLE OF AUTHORITIES (con't)

*In re Griffin*,
  11 F. Cas. 7 (C.C.D. Va. 1869) ............................................................................... 2, 3, 5

*State ex rel. Handley v. Superior Ct. of Marion Cnty.*,
  151 N.E.2d 508 (Ind. 1958) ........................................................................................... 10

*Hansen v. Finchem*,
  No. CV 2022-004321, slip op. (Sup. Ct. of Ariz., Maricopa Cnty.
  Apr. 22, 2022) ..................................................................................................................... 3

*Hansen v. Finchem*,
  No. CV-22-0099-AP/EL, slip op. (Ariz. May 9, 2022) ............................................. 3

*Hassan v. Colorado*,
  495 F. App'x 947 (10th Cir. 2012) ......................................................................... 11, 12

*Hedges v. Dixon Cnty.*,
  150 U.S. 182 (1893) ........................................................................................................... 5

*I.N.S. v. Pangilinan*,
  486 U.S. 875 (1988) ........................................................................................................... 5

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................................................... 2

*Lindsay v. Bowen*,
  750 F.3d 1061 (9th Cir. 2014) ................................................................................. 11, 12

*Lyons v. Gordon*,
  CIV.A. 05-00870RMC, 2006 WL 241230 (D.D.C. Feb. 1, 2006) .......................... 10

*Lyons v. Sundquist*,
  41 F. App'x 832 (6th Cir. 2002) ................................................................................... 10

*McConnell v. FEC*,
  540 U.S. 93 (2003) ............................................................................................................. 8

*McIntyre v. Fallahay*,
  766 F.2d 1078, 1081 (7th Cir. 1985) ........................................................................... 10

*Medellin v. Dretke*,
  544 U.S. 660 (2005) ........................................................................................................... 5

*Moor v. Cnty. of Alameda*,
  411 U.S. 693 (1973) ........................................................................................................... 5

*Morgan v. United States*,
  801 F.2d 445 (D.C. Cir. 1986) ..................................................................................... 10

# TABLE OF AUTHORITIES (con't)

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ............................................................................. 8

*Sevilla v. Elizalde*,
  112 F.2d 29 (D.C. Cir. 1940) ............................................................ 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................. 8

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ........................................................................... 10

*Valley Forge Christian Coll. v. Ams. United for Separation of Church
  & State, Inc.*,
  454 U.S. 464 (1982) ............................................................................. 8

**Constitutional Provisions**

U.S. Const. art. I, § 4 ..................................................................... 10, 12

U.S. Const. art. I, § 5 ........................................................... 6, 10, 11, 12

U.S. Const. art. I, § 6, cl. 1 .................................................................. 9

U.S. Const. art. II, § 3 ........................................................................ 11

U.S. Const. art. III ............................................................................. 10

U.S. Const. amend. I .................................................................... passim

U.S. Const. amend. V ........................................................................... 5

U.S. Const. amend. VIII ....................................................................... 5

U.S. Const. amend. XIV ............................................................... 2, 6, 13

U.S. Const. amend. XIV, § 3 ......................................................... passim

U.S. Const. amend. XIV, § 5 ................................................................. 5

**Statutes**

The Amnesty Act of 1872,
  Pub. L. No. 42-193, 17 Stat. 142 (1872) ...................................... 12, 13

Declaratory Judgment Act,
  28 U.S.C. § 2201(a) ........................................................................... 13

**Other Authorities**

Blake Hounshell & Leah Askarinam, *How Jan. 6 Gave the 14th Amendment New
  Life*, The New York Times (Mar. 23, 2022) .......................................... 4

**TABLE OF AUTHORITIES (con't)**

Gerard Magliocca, *The 14th Amendment's Disqualification Provision and the Events of Jan. 6*, Lawfare (Jan. 19, 2021, 1:43 p.m.) ...............................................................4

Gerard Magliocca, *A Stroll Through Section Three of the Fourteenth Amendment As Applied to the President*, PrawfsBlawg (Jan. 21, 2021, 8:28 a.m.) ......................................4

Gerard Magliocca, *Section Three Lawsuit in Wisconsin*, PrawfsBlawg (Mar. 10, 2022, 4:28 p.m.) .......................................................................................................4

Jennifer Elsea, *The Insurrection Bar to Office: Section 3 of the Fourteenth Amendment*, Congressional Research Service Legal Sidebar (Jan. 29, 2021) .........................4

John Kruzel, *Democrats Quietly Explore Barring Trump from Office Over Jan. 6*, The Hill (Jan. 6, 2022, 6:01 a.m.) ...............................................................................4

Tom Ginsburg, Aziz Z. Huq, & David Landau, *The Law of Democratic Disqualification*, 111 Cal. L. Rev. (forthcoming 2023) ............................................4

**INTRODUCTION**

In response to Senator Johnson's motion to dismiss, Plaintiffs argue that they—as self-appointed champions of democracy—are entitled to demand a result from this Court they cannot achieve at the ballot box. Misusing legal processes in service of nakedly partisan aims, Plaintiffs ask this Court to claim a power entrusted solely to Congress, *see* U.S. Const. art. I, § 5, and ban a duly elected U.S. Senator from office by issuing an advisory declaration that Plaintiffs promise to weaponize in a state ballot-access challenge. Plaintiffs' is a curious conception of "democracy"; one sure to destroy electoral choice in the name of protecting it.

**REPLY IN SUPPORT**

**I.     Plaintiffs Have No Claim Under the First Amendment—Nor Have They Pled One.**

Plaintiffs do not mention the First Amendment in their 80-page, 187-paragraph complaint. (*See* Pls.' Br. in Opp'n to Mot. to Dismiss of Def. Ronald J. Johnson ("Opp'n") at 9.) Yet, their opposition is replete with references to their First Amendment "rights" and "injuries," and the "safeguards" protected by the First Amendment. (*See, e.g.*, *id.* at 2, 3, 4, 8, 9, 11, 12, 14, 16.) This about-face is tacit acknowledgement that their constitutional theory is a mirage. Nonetheless, despite their newfound interest in the First Amendment, Plaintiffs are unmistakably silent on whether they intend to allege a First Amendment violation and who they believe may have committed such a violation. The closest they come is hinting that the First Amendment "protects a separate, vital right that supports Plaintiffs' claim in this case: the right to petition the government for redress of grievances." (*Id.* at 12.) But Plaintiffs do not connect petitioning rights to the questions on which they seek declaratory relief: whether January 6th constituted an "insurrection" or "rebellion" under the Disqualification Clause, and whether Senator Johnson somehow engaged in the "insurrection" or "rebellion."

The best Plaintiffs offer is a line from the district court in *Greene v. Raffensperger*: "Plaintiff's claim here wholly ignores citizens' own First Amendment rights to file complaints regarding the operation of the electoral process that [Georgia's] Challenge Act recognizes." No. 22-CV-1294-AT, 2022 WL 1136729, at *18 (N.D. Ga. Apr. 18, 2022), *appeal docketed*, No. 22-

1

11299 (Apr. 19, 2022). There, the court was responding to Congresswoman Taylor Greene's argument that Georgia's state challenge statute was unconstitutional. *Id.* In rejecting that argument, the court, in passing, pointed out that Georgia citizens may have a First Amendment right to invoke a state challenge procedure, if such procedure exists.

How this stray statement in *Greene* supports Plaintiffs' federal claim under the Declaratory Judgment Act is head scratching—nor do Plaintiffs help the Court with linking the two. To be clear, Plaintiffs do not argue that their professed rights in Wisconsin's challenge procedure have been impaired by Defendants. Nor could they—Plaintiffs made a conscious choice to bypass that administrative procedure so they could seek "discovery"—to which they are not entitled under Wisconsin's challenge procedure—in federal court. (*See* Opp'n at 17, n.9.) Nor would Defendants play a part in administering the state's challenge procedure. *See Lewis v. Casey*, 518 U.S. 343, 349, 350 (1996) (to establish right-to-petition claim plaintiff must demonstrate ***defendant caused*** "actual injury," i.e., took or was responsible for actions that "hindered [plaintiff's] efforts to pursue a legal claim").

In sum, while Plaintiffs make much ado of their First Amendment "rights" and "injuries," they allege no claim under the First Amendment. As argued in Senator Johnson's motion, this case remains one about whether Plaintiffs may seek an advisory declaration from this Court on the Disqualification Clause and January 6. They cannot.

## II.    Plaintiffs Have No Right to Seek Relief Under the Disqualification Clause.

Plaintiffs' invocation of the Disqualification Clause runs headlong into a foundational flaw: the Clause is not self-executing and there is no private right to enforce it. (*See* Def. Ronald Johnson's Memo. in Support of Mot. to Dismiss ("Memo") at 7–10.) Plaintiffs mostly duck Senator Johnson's argument on this point. (*See* Opp'n at 7–10.)

Plaintiffs first claim that Senator Johnson "cites no case law directly on point," (*id.* at 7); yet they spend a page trying to discredit ***the*** case on this issue: Chief Justice Chase's decision in *In re Griffin*, 11 F. Cas. 7 (C.C.D. Va. 1869). *Griffin* was decided less than a year after the Fourteenth Amendment's ratification and held that it is "beyond reasonable question" that the

Disqualification Clause was intended "to create a disability, to be removed in proper cases by a two-thirds vote, and *to be made operative in other cases by the legislation of [C]ongress in its ordinary course*." *Id.* at 26 (emphasis added). To the latter point, Chief Justice Chase emphasized that "the necessity of [enabling legislation] is recognized by the [Fourteenth] [A]mendment itself, in its fifth and final section, which declares that 'congress shall have power to enforce, by appropriate legislation, the provision[s] of this article.'" *Id.*

Whatever complaints Plaintiffs may have with *Griffin*, it cannot be said there is no caselaw addressing whether the Disqualification Clause is self-executing. Indeed, a few weeks ago, a court relied on *Griffin* to dismiss a complaint filed by Plaintiffs' co-operatives in Arizona that sought to disqualify Members of Congress from running for reelection:

> The express language of the United States Constitution controls this issue. The Disqualification Clause creates a condition where someone can be disqualified from serving in public office. However, the Constitution provides that legislation enacted by Congress is required to enforce the disqualification pursuant to the Disqualification Clause. … Therefore, given the current state of the law and in accordance with the United States Constitution, Plaintiffs have no private right of action to assert claims under the Disqualification Clause.

*Hansen v. Finchem*, No. CV 2022-004321, slip op. at 8 (Sup. Ct. of Ariz., Maricopa Cnty. Apr. 22, 2022) (attached as Exhibit A to the Memo), *aff'd*, No. CV-22-0099-AP/EL, slip op. (Ariz. May 9, 2022), attached as **Exhibit A**. That *Griffin* has stood the test of time is unrefuted: courts are still citing it, and Plaintiffs have identified no decision departing from it.

Perhaps this is why Plaintiffs magisterialize a single law review article to carry their water distinguishing *Griffin*. (*See* Opp'n at 9 (referring to Professor Magliocca's "magisterial" article).) No doubt Professor Magliocca's article—which was prophetically written before the events of January 6—adds to the dearth of scholarship on the Disqualification Clause. But, as is often the case with academic inquiry into first-impression issues, Professor Magliocca's view on whether the Disqualification Clause is self- executing has evolved. In subsequent writings, he has yielded to *Griffin*'s teaching:

> ***Is Section Three [Disqualification Clause] self-executing? Arguably not.*** Chief Justice Chase held on circuit in 1869 that Section Three is not self-executing. My

draft paper criticizes his opinion, though, ***and I thought (before this week) that Section Three is self-executing***.

Gerard Magliocca, *A Stroll Through Section Three of the Fourteenth Amendment As Applied to the President*, PrawfsBlawg (Jan. 21, 2021, 8:28 a.m.), https://bit.ly/3ljPbsF; *see also* Gerard Magliocca, *The 14th Amendment's Disqualification Provision and the Events of Jan. 6*, Lawfare (Jan. 19, 2021, 1:43 p.m.) ("[T]here is the question of whether Section 3 is self-enforcing. The answer is probably not."), https://bit.ly/3Mr1gs6.[1] Other "constitutional scholars" are in accord. *See* John Kruzel, *Democrats Quietly Explore Barring Trump from Office Over Jan. 6*, The Hill (Jan. 6, 2022, 6:01 a.m.) (stating scholars' agreement and noting that "applying Section 3 … would require an additional step by lawmakers to make the 14th Amendment operative"), https://bit.ly/3wkLPvY; *see also* Tom Ginsburg, Aziz Z. Huq, & David Landau, *The Law of Democratic Disqualification*, 111 Cal. L. Rev. (forthcoming 2023) (manuscript at 51) ("Since Justice Chase held after the Civil War that Section 3 is not self-executing, there is a good chance that such a statute would be a prerequisite for any modern use."), *available at* https://bit.ly/3wwiopz; Jennifer Elsea, *The Insurrection Bar to Office: Section 3 of the Fourteenth Amendment*, at 4, Congressional Research Service Legal Sidebar (Jan. 29, 2021) ("Section 3 does not appear to be self-executing and does not expressly provide a procedure for its implementation … ."), https://bit.ly/3yQGDRU.[2] Thus, the only authority Plaintiffs could muster in response to Senator Johnson is stale and cuts against them.

Nor do Plaintiffs' other arguments overcome the fact that Congress must legislate to enable the Disqualification Clause. Plaintiffs cite *Armstrong v. Exceptional Child Center, Inc.*,

---

[1] Although admittedly irrelevant, Professor Magliocca has blogged about Plaintiffs' claim in this case, expressing "skeptic[ism]," questioning Plaintiffs' "[s]tanding," and suggesting doubt on the existence of "any credible allegations that Senator Johnson or the members involved were involved in the January 6th insurrection." Gerard Magliocca, *Section Three Lawsuit in Wisconsin*, PrawfsBlawg (Mar. 10, 2022, 4:28 p.m.), https://bit.ly/3sKxFlm.

[2] Democratic legal experts also agree. *See* Blake Hounshell & Leah Askarinam, *How Jan. 6 Gave the 14th Amendment New Life*, The New York Times (Mar. 23, 2022) (noting "when Democratic legal experts investigated [the Disqualification Clause], they determined that the Disqualification Clause was not 'self-executing'—that is, Congress would need to pass a law or resolution to use it and clarify how it applies today"), https://nyti.ms/3Lqyiah.

575 U.S. 320 (2015), and argue that, even if no private right of action exists under the Disqualification Clause, the Court retains power as a "court of equity" to award equitable relief to Plaintiffs. (Opp'n at 7.) Not so. The Court may not skirt—through the guise of its equitable powers—Section 5 of the Fourteenth Amendment's express requirement that Congress first enable the Disqualification Clause. "Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988) (quoting *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893)); *see also Armstrong*, 575 U.S. at 327–28. Plaintiffs' case support (Opp'n at 8), is not to the contrary. All the cases Plaintiffs cite involved individual guarantees in the Bill of Rights (*id.* at (citing cases applying the First, Fifth, and Eighth Amendments)), and "[t]he first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action," *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997). This contrasts distinctly with the Disqualification Clause.[3]

Even if Plaintiffs convinced the Court to go against the grain and issue a first-of-its-kind decision finding the Disqualification Clause is self-executing, Plaintiffs must also satisfy the Court that they have a private right to enforce the Clause. The questions of whether a constitutional provision is "self-executing and whether it creates private rights and remedies are analytically distinct." *See Medellin v. Dretke*, 544 U.S. 660, 687 (2005). For the reasons stated in Senator Johnson's memorandum, they cannot make such a showing. (*See* Memo at 8–10.)

Lastly, Plaintiffs' reliance on *Greene v. Raffensperger*, No. 22-CV-1294-AT, 2022 WL 1136729 (N.D. Ga. Apr. 18, 2022), is misplaced. (*See* Opp'n at 8–9.) There, no party raised whether the Disqualification Clause is self-executing, or whether the Georgia citizens in that case

---

[3] Plaintiffs also argue that *Griffin* is distinguishable because they challenge Senator Johnson's "right to **run**, not the right to **serve**." (Opp'n at 10 (emphasis in original).) As argued in Section IV, *infra*, this is a distinction without a difference. Even if Plaintiffs had invoked Wisconsin's challenge process (they did not), the state statute cannot enable the Disqualification Clause or supply a private right of action to enforce the Clause. "Because federal law creates the substantive requirement that the plaintiffs seek to enforce, … federal law … determine[s] whether a private remedy is authorized." *Bauer v. Elrich*, 8 F.4th 291, 299 (4th Cir. 2021) (citing *Moor v. Cnty. of Alameda*, 411 U.S. 693, 698–710 (1973)).

had a private right to enforce the Disqualification Clause. Rather, the court addressed a different issue: whether Article I, Section 5 of the Constitution, which empowers each house of Congress to act as "the Judge of the Elections, Returns and Qualifications of its own Members," invalidated Georgia's challenge statute. *Greene*, 2022 WL 1136729, at *26. In denying Congresswoman Taylor Greene's request for a preliminary injunction on this claim, the court admonished that the parties "devoted little time and few pages to the complicated questions" and "fail[ed] to cite persuasive legal authority or even include … developed legal argument[s]" on the topic. *Id.* at *28. Because of this, and "[g]iven the preliminary stage of the proceedings," the court found Congresswoman Taylor Greene "ha[d] not established a likelihood of success on the merits." *Id.* Thus, *Greene* provides no guidance on the issues raised by Senator Johnson.

The Fourteenth Amendment plainly requires implementing legislation before the Disqualification Clause may be enforced. Even more, Plaintiffs have no private right to enforce the Disqualification Clause until Congress says otherwise.

**III.     Plaintiffs Lack Standing to Bring Their Declaratory Judgment Claim.**

In response to Defendants' motions to dismiss, Plaintiffs shift their theory of injury. Through supplemental declarations, Plaintiffs now claim their injury is based on the need (1) to divert their political activism from "substantive policy issues" to address voter distrust after the 2020 election (Opp'n at 11–12); and (2) to petition the government for redress (*id.* at 12). Neither theory establishes Plaintiffs' standing.

**A.     Plaintiffs' diversion-of-resources injury theory fails.**

Plaintiffs first latch on to diversion-of-resources injuries recognized in limited organizational standing cases and thinly allege they have been harmed because their activism has been redirected to different topics in the political debate. This theory fails for many reasons. Initially though, Plaintiffs overreach in characterizing their diversion-of-resources allegations.

While Plaintiffs state each Plaintiff has diverted resources (*see* Opp'n at 16 (cite to all 10 declarations), only five[4] allege such "diversions," and those allegations are scant:

- **Muller:** would prefer to spend more time with her family and on her organic farm rather than discussing the 2020 election. (Muller Decl. (Doc. 33) ¶ 6.)
- **Botsford:** would prefer to "debate and discuss policy issues in an effort to persuade people" and focus on "other work and projects" rather than discussing the 2020 election and the "conduct" of Defendants. (Botsford Decl. (Doc. 30) ¶¶ 5, 6.)
- **Stencil:** would prefer to "devote [her] energies to fighting for clean water" rather than discussing the 2020 election. (Stencil Decl. (Doc. 29) ¶¶ 4, 5.)
- **DeMurth:** would prefer to focus on "the essential work of understanding the choices that impact voters in the 2022 and future elections" rather than discussing the 2020 election. (DeMurth Decl. (Doc. 26) ¶ 5.)
- **Maranto:** would prefer to "focus … on matters of public policy" and "other causes of our broken political system" rather than discussing the 2020 election. (Maranto Decl. (Doc. 24) ¶¶ 4, 5.)

These threadbare allegations on how Plaintiffs choose to allocate they personal time is nowhere near the type of concrete and particularized diversion-of-resources injuries courts have found sufficient in organizational standing cases. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 951–52 (7th Cir. 2019) (voter-advocacy organizations alleged injury because the record showed they reallocated "limited financial resources" and expanded "voter education and poll monitoring program" in response to the challenged law); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (Democratic Party alleged injury because it incurred "added cost" to "devote resources to getting to the polls … supporters who would otherwise be discouraged" from voting by the new law), *aff'd*, 553 U.S. 181 (2008).

Indeed, Plaintiffs allege nothing of the sort here, nor do they persuade that the Seventh Circuit's organizational standing cases should apply to them *as individuals*. Organizations have missions and limited funds and resources to marshal to accomplish those missions. Reallocating finite funds and resources away from defined aims is, in certain circumstances, a concrete and particularized constitutional injury. But Plaintiffs, as citizen voters, allege no such

---

[4] Plaintiffs Lisi, Russler, DeMain, Kutz, and Bechen make no such allegations in their supplemental declarations; therefore, their standing must rest on another theory of injury.

circumstances. And the only case Plaintiffs cite in support of their position, *Am. Civil Liberties Union v. St. Charles*, 794 F.2d 265 (7th Cir.1986), is an Establishment Clause case involving a person who had no choice but to change her commute to avoid a religious display during Christmas. The facts in *St. Charles* are a far cry from Plaintiffs' conclusory allegations that Defendants caused them to change their behavior because they disagree with Defendants' views. The "psychological consequence presumably produced by observation of conduct with which one disagrees" is not an "injury" for the purpose of standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Nor is "the abstract injury in nonobservance of the Constitution asserted by ... citizens" a species of "injury in fact." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223 n.13 (1974).

Plaintiffs' diversion-of-resources theory fails for other reasons too.

**No invasion of a legally protected interest.** Because Plaintiffs have no protected interest in the Disqualification Clause, they cannot show constitutional injury. For standing, Plaintiffs must show the "invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Standing therefore "requires litigants to establish an injury to an interest 'that the law protects when it is *wrongfully* invaded.'" *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (quoting *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir.2006)). For instance, in *McConnell v. FEC*, the Supreme Court rejected the plaintiffs' injury theory that increases to hard-money limits "deprive[d] them of an equal ability to participate in the election process," because the Court had "never recognized a legal right comparable to the broad and diffuse injury asserted by" the plaintiffs. 540 U.S. 93, 227 (2003), *overruled on other ground by Citizens United v. FEC*, 558 U.S. 310 (2010). The same conclusion follows here. Plaintiffs have no legally protected interest in the Disqualification Clause; therefore, they have no injury and no standing to seek a declaration on the terms of the Clause.

**An advisory declaration would not redress Plaintiffs' claimed injury.** Plaintiffs' theory on redressability is also woefully deficient. Per Plaintiffs, they would no longer have to divert personal time to counteract voter distrust in response to the 2020 election if this Court declared

January 6 an insurrection against the United States and declared that Senator Johnson engaged in such an insurrection. Plaintiffs argue this follows because they could take the Court's declaration to the Wisconsin Election Commission, challenge Senator Johnson's declaration of candidacy (which requires a statement of qualification), and argue the declaration binds the Election Commission and Senator Johnson. The flaws in Plaintiffs' logic are many.

*First*, Plaintiffs cannot show their purported shift in political activism is fairly traceable to the protected actions and speech of Senator Johnson, *see* U.S. Const. art. I, § 6, cl. 1 (Speech or Debate Clause); U.S. Const., amend. I. To hear Plaintiffs tell it, the post-2020 election debate was a grand "conspiracy" and Senator Johnson played only a small role. Accepting Plaintiffs' posturing, nothing this Court says about Senator Johnson will redress Plaintiffs' injuries—they will be left with the same choice they have now. *Second*, a declaration from the Court is not necessary for Plaintiffs to seek relief before the Election Commission. They could have started there. In truth, as they admit, Plaintiffs do not like the state process and would rather seek a bolstering declaration from this Court to wield offensively. *Third*, the Disqualification Clause first requires congressional action; thus, any declaration from this Court would not affect Senator Johnson's soon-to-be-filed declaration of candidacy. The Court's declaration would be advisory on a constitutional provision in which Plaintiffs have no protected interest. *Fourth*, as explained in Section IV, *infra*, the Election Commission would not be bound by this Court's declaration on the meaning of the Disqualification Clause. Thus, a declaration on Plaintiffs' proposed questions could not redress Plaintiffs' claimed injuries; if anything, it would compound them.

**B.      Plaintiffs' right-to-petition injury theory fails.**

For many of the same reasons explained in Section I, *supra*, Plaintiffs cannot show an injury by invoking the First Amendment right to petition the government for redress. Plaintiffs argue their right-to-petition has been "implicated" because they may elect to use a declaration from this Court in subsequent proceedings before the Wisconsin Election Commission. (Opp'n at 16–17.) But Plaintiffs' understanding of constitutional injuries is exactly backwards. Plaintiffs can claim no injury associated with the state process—because they voluntarily elected to avoid

9

it in a quest for "discovery" in federal court. (*See id.* at 17, n. 9.) Nor are their "[a]llegations of *possible* future injury" sufficient to establish Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (rejecting standing theory premised on speculative chain of possibilities).

**IV.    This Court Lacks Jurisdiction to Decide Plaintiffs' Disqualification Questions.**

This Court lacks jurisdiction to entertain claims arising under Section 3 of the Fourteenth Amendment because each house of Congress is "the Judge" of its Members' "Qualifications." U.S. Const. art. I, § 5. Plaintiffs argue the Court must nevertheless entertain their case because a judgment will bear on a potential challenge to Senator Johnson's eligibility to run for office— that is, a challenge to his access to the ballot under state law—and not his eligibility to hold office. Plaintiffs reason that Article I, Section 4 of the Constitution gives states control over the "time, place and manner" of elections to federal office and therefore permits this sort of challenge. (*See* Opp'n at 17.) This is a distinction without a difference. Article I, Section 4 does not permit states—let alone federal courts of limited jurisdiction—to share in Congress's authority to adjudicate the qualifications of its Members. The jurisdiction of each house of Congress on this score is plenary and exclusive. In other words, "the command to 'be the Judge of … [Qualifications]' excludes other judges." *Morgan v. United States*, 801 F.2d 445, 450 (D.C. Cir. 1986); *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir. 1985). And *Morgan*'s holding was premised on its construction of Article I, Section 5, "without need to rely upon the amorphous and partly prudential doctrine of 'political questions.'" 801 F.2d at 447.

*Morgan* is no outlier. *See, e.g.*, *Lyons v. Gordon*, CIV.A. 05-00870RMC, 2006 WL 241230, at *3 (D.D.C. Feb. 1, 2006) (dismissing claims that winner of congressional race was ineligible to hold office under Section 3, explaining that "it is clear that the Constitution places the responsibility for determining the qualifications of all Representatives in the House of Representatives and not in the courts"); *Lyons v. Sundquist*, 41 F. App'x 832, 832 (6th Cir. 2002) (dismissing challenge predicated on Section 3 as non-justiciable); *State ex rel. Handley v. Superior Ct. of Marion Cnty.*, 151 N.E.2d 508, 513 (Ind. 1958) ("The Constitution of the United

States has delegated to the United States Senate the power to determine the qualifications of its members … and this precludes any consideration of the question by the courts."); *State ex rel. Chavez v. Evans*, 446 P.2d 445, 448 (N.M. 1968) (holding that "the question of whether or not, under the circumstances recited, [congressional candidate] can be described as a 'sojourner' so as to disqualify him from holding the office, if elected, is not for us to decide"); *cf. Sevilla v. Elizalde*, 112 F.2d 29, 36–37 (D.C. Cir. 1940) (construing similar provision in Article II, Section 3 as barring courts from judging the qualifications of diplomatic representatives).

And these holdings make sense. How could a house of Congress ever "judge" the qualifications of an aspiring Member if a state obstructs him or her from ever attaining ballot access in the first place? Indeed, how could an individual—here a sitting U.S. Senator—who is excluded from the ballot because a ***federal court*** deemed him not "qualified" submit his grievance to Congress for redress? *See generally Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 614 (1929) (indicating that House's jurisdiction under Article I, Section 5 attaches when an individual bearing a certificate of election from his home state presents himself or herself to be seated in the house).

None of Plaintiffs' authorities counsel a different result. Plaintiffs rely on two cases: *Hassan v. Colorado*, 495 F. App'x 947 (10th Cir. 2012), and *Lindsay v. Bowen*, 750 F.3d 1061 (9th Cir. 2014). But these cases, which involved candidates for ***president*** who were determined constitutionally ineligible for that office because they were not a natural born citizen (*Hassan*) and not at least 35 years old (*Lindsay*), did not address Congress's exclusive jurisdiction under Article I, Section 5. Nor does any provision of the Constitution vest power to assess presidential candidates' qualifications with any particular tribunal or branch of government. *See Lindsay*, 750 F.3d at 1065 (noting that "nothing in the Twentieth Amendment states or implies that Congress has the exclusive authority to pass on the eligibility of candidates for president"); *Elliott v. Cruz*, 137 A.3d 646, 651 (Pa. Commw. Ct.) (contrasting "the provisions [of the Constitution] regarding Presidential eligibility with those regarding the eligibility of members of Congress," in concluding that disputes concerning the latter may be justiciable), *aff'd*, 134 A.3d 51 (Pa. 2016).

Even more, both *Hassan* and *Lindsay* involved claims by the disqualified presidential candidates against the respective secretaries of state challenging qualification decisions. Thus, in neither case did the federal court decide in the first instance whether the candidates were qualified.

Finally, even if Plaintiffs were correct that Article I, Section 4 makes the states another "judge" of qualifications to serve in Congress (it does not), Wisconsin has adopted an administrative challenge process that does not give Plaintiffs the right to what they want: discovery in support of their challenge to Senator Johnson's qualifications. Indeed, it is for precisely this reason that Plaintiffs refuse to invoke Wisconsin's challenge process. (Opp'n at 17, n.9.) Hence, this Court does not have jurisdiction to entertain Plaintiffs' claims in order that they might be afforded procedural rights to which the State of Wisconsin has determined they are not entitled in a challenge to candidate ballot access.

Because Article I, Section 5, makes Congress the exclusive judge of its Members' qualification for office, and because Plaintiffs expressly seek to have this Court issue an advisory opinion they would leverage in a state challenge to Senator Johnson's qualification for office, this Court lacks jurisdiction to hear the case.

## V.     The Amnesty Act of 1872 Bars Plaintiffs' Claim.

As anticipated, Plaintiffs argue that the Amnesty Act of 1872 does not apply to Senator Johnson because that Act could not have indefinite prospective effect. (Opp'n at 24–27.) Plaintiffs dress this argument up as one that the Amnesty Act of 1872—if read on its plain language—effectively nullifies the Disqualification Clause. And of course, the Amnesty Act (as a statute) cannot supersede the Disqualification Clause (a constitutional provision). Plaintiffs begin their argument with the text of the Amnesty Act. (*Id.* at 24.) They would have done well to remind themselves of the last sentence of the Disqualification Clause which provides "[b]ut Congress may by a vote of two-thirds of each House, remove such disability." U.S. Const. amend. XIV, § 3. This is precisely what the Amnesty Act of 1872 accomplished. By removing the disability for "for all persons whomsoever, except Senators and Representatives of the thirty-sixth and thirty-seventh Congresses, officers in the judicial, military, and naval service of the

United States, heads of departments and foreign ministers of the United States," Congress did not nullify the Fourteenth Amendment, it acted according to its express language. Amnesty Act of 1872, Pub. L. No. 42-193, 17 Stat. 142 (1872). Because the Amnesty Act of 1872 did not render the Disqualification Clause in any sense superfluous, but merely effected Congress's ability to remove any disability imposed by the Disqualification Clause, the Act bars Plaintiffs' claim here.

## VI. Plaintiffs Cannot Use the Declaratory Judgment Act to Create a Private Right Where It Does Not Exist.

Because the Declaratory Judgment Act does not create positive legal rights, but only a means by which to secure a declaration of rights that exist, Plaintiffs' ability to seek a declaratory judgment under the Declaratory Judgment Act turns entirely on the existence of a private right of action to enforce the Disqualification Clause. Plaintiffs admit as much, arguing that they "have standing under the Frist Amendment because Johnson and the other Defendants continuing to seek ballot placement despite their insurrectionist conduct diverts [Plaintiffs'] scarce time and attention from substantive political engagement to the Defendants' ineligibility to run." (Opp'n at 28.) As argued in Sections I and II, *supra*, Plaintiffs have not pled any First Amendment claim and have no standing to assert such a claim. Their claimed injury is illusory and, even if somehow found to have substance is not traceable to Senator Johnson's claimed conduct. Because there is no private right of action, Plaintiffs may not use the Declaratory Judgment Act to create one. Their claim must be dismissed.

## CONCLUSION

Based on the foregoing, Senator Johnson respectfully requests that the Court dismiss Plaintiffs' complaint with prejudice.

Dated May 20, 2022

*s/ Christopher O. Murray*
Christopher O. Murray
STATECRAFT PLLC
1263 Washington Street
Denver, CO 80203
Phone: (602) 362-0034
Email: chris@statecraftlaw.com

Julian R. Ellis, Jr.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: jellis@bhfs.com

George Burnett
LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
231 S. Adams Street
Green Bay, WI 54305
Phone: (920) 437-0476
Fax: (920) 437-2868
Email: gb@lcojlaw.com

*Counsel for Senator Ronald H. Johnson*

**CERTIFICATE OF SERVICE**

I certify that on May 20, 2022, I filed **Defendant's Ronald H. Johnson's Reply**

**Memorandum in Support of Motion to Dismiss** via the CM/ECF system for the U.S. District

Court for the District of Columbia, which will cause a copy to be served on all registered parties.


*s/ Christopher O. Murray*
Christopher O. Murray