UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
(MILWAUKEE DIVISION)

NANCY A. STENCIL, DANIEL C. RUSSLER,
LISA C. MUELLER, CHERYL L. MARANTO,
GERARD D. LISI, JAMES B. KURZ,
MARGARET L. DEMUTH, PAUL DEMAIN,
JAMES R. BOTSFORD, and RICHARD BECHEN,

    *Plaintiffs*,                                Case No. 22-cv-305

vs.

RONALD H. JOHNSON, THOMAS P. TIFFANY,
and SCOTT L. FITZGERALD,

    *Defendants*.

**BRIEF OF AMICUS CURIAE**

## TABLE OF CONTENTS

Interest of Amicus Curiae ................................................................................... 1

Introduction ........................................................................................................ 1

Argument ........................................................................................................... 1

I. Wisconsin's 2020 presidential election is notable primarily for the unprecedented reaction by those who supported a losing candidate. ...................... 1

II. Accountability for those who attempted to subvert Wisconsin's 2020 presidential election is essential. ....................................................... 10

Conclusion ....................................................................................................... 13

**INTEREST OF AMICUS CURIAE**

The Wisconsin Democracy Campaign ("WDC") is a nonpartisan and nonprofit public-interest watchdog group. WDC advocates for transparency in government and fights corruption. As a watchdog organization, WDC has deep knowledge of the crucial role that accountability plays in building public trust.[1]

**INTRODUCTION**

In the immediate wake of the November 2020 election, partisan actors supporting a losing candidate engaged in unprecedented attempts to reverse the results of the election. Some of their tactics were lawful efforts to ensure all questions about the election were answered. Other tactics, however, violated longstanding norms fundamental to our democracy, sought to subvert the election results that reflected the will of the voters, and even exceeded legal limits. Such tactics are illegitimate, and as a matter of democratic preservation, those actors who pursued such tactics must be held accountable. *Amicus* submits this brief to underscore that accountability is essential and to offer guidance on how accountability should (and should not) be meted out.

**ARGUMENT**

**I.  Wisconsin's 2020 presidential election is notable primarily for the unprecedented reaction by those who supported a losing candidate.**

The 2020 presidential election was, nationwide, not particularly close. While the campaign was hotly contested, it ended with a decisive victory, both in the aggregate public vote and in the Electoral College.[2] There were, however, several states in which the vote margins were narrower.[3]

---

[1] No counsel to a party in this case authored this brief in whole or in part. No party or party's counsel mad any monetary contribution that was intended or did fund the preparation or submission of this brief. No person or entity other than amicus made any monetary contribution that was intended to or did fund the preparation or submission of this brief.

[2] *See* https://www.cnn.com/election/2020/results/president.

[3] *See id.*

Wisconsin was among those states, with a final margin of 20,682 votes out of a record total of almost 3.3 million votes cast—a difference of 0.6%.[4] Both Georgia (0.3%) and Arizona (0.4%) had smaller margins of victory.[5] And, in historical terms, Wisconsin has, just in recent years, had a number of closer statewide elections.[6] What truly sets the 2020 presidential election apart from other close Wisconsin elections is the extraordinary post-election assaults on the outcome.

To accurately determine the winner of the most recent presidential election and in accord with Wisconsin law, the record number of votes cast in 2020 were counted in a multi-step process, which included the opportunity at the time of counting for challenges individual votes as being improperly cast. The votes cast by voters residing in each ward were counted and tallied at the ward. Wis. Stat. § 7.51.[7] Those tallies were then reported to the state's 1,850 municipal clerks, each of whom convened their municipal board of canvass to canvass the results. Wis. Stat. § 7.53. Once the municipal canvass results were submitted to the state's 72 county clerks, the Clerk of each county convened their county board of canvass to canvass the election results from all municipalities within the county. Wis. Stat. § 7.60(2)–(3). Each County Clerk then transmitted to

---

[4] *See* Wis. Elections Comm'n, *County by County Report - President of the United States Post Recount*, available at https://elections.wi.gov/sites/elections/files/County%20by%20County%20Report%20-%20President%20of%20the%20United%20States%20post%20recount.pdf; Wis. Elections Comm'n, *Nov. 3, 2020 Election Data Report* 3–4, available at https://www.wispolitics.com/wp-content/uploads/2021/01/D.-November-2020-Election-Data-Report-Updated.pdf.

[5] *See* https://www.cnn.com/election/2020/results/president.

[6] Within the past 20 years, for example, Wisconsin's 2000 and 2004 presidential elections, the 2011 and 2019 elections for justices on the Wisconsin Supreme Court, and the 2018 election for Attorney General of Wisconsin were all statewide elections decided by fewer votes than separated the winner and runner-up of Wisconsin's 2020 presidential election. Notably, the margin of victory in Wisconsin's 2016 presidential election was 22,748 votes (less than 0.8%), which is analogous to the 2020 results. None of these elections, all narrowly decided, instigated an attack on the integrity of Wisconsin's elections or attempts to ignore the results that reflected the will of the voters.

[7] Some municipalities count all absentee ballots at a central count facility. *See* Wis. Stat. § 7.51(1).

2

the Wisconsin Elections Commission ("WEC") a certified statement containing their county results. Wis. Stat. § 7.60(5)(a).

Based on these county canvasses, WEC reported that the Biden-Harris ticket had received 1,630,673 votes, whereas the Trump-Pence ticket had received 1,610,065 votes.[8] On November 18, 2020, pursuant to Wis. Stat. § 9.01(1), the Trump-Pence campaign petitioned WEC for a partial recount, focused exclusively on votes cast in Dane and Milwaukee Counties.[9] The partial recount concluded on November 30, 2020, yielding updated statewide vote totals showing that Biden and Harris had received 1,630,866 votes, whereas Trump and Pence had received 1,610,184 votes.[10]

Following the recount, on November 30, 2020, after public notice and broadcast live on Wisconsin Eye, Ann S. Jacobs, the Chair of the Wisconsin Elections Commission, certified the results of Wisconsin's presidential election, pursuant to Wis. Stat. § 7.70(3)(g).[11] Later that evening, Wisconsin Governor Tony Evers executed a certificate of ascertainment, pursuant to Wis. Stat. § 7.70(5)(b), recognizing that the Biden-Harris ticket had received the greatest number of votes cast in the general election and its slate of electors were therefore the duly elected presidential electors for the State of Wisconsin.[12]

After the partial recount and certification, the Trump-Pence campaign sought judicial review of the results of the partial recount. Under Wisconsin law, any candidate aggrieved by the results of a recount has the option of appealing to circuit court, and any party aggrieved by an order

---

[8] *See County by County Report*, *supra*, n.4.

[9] *See Trump Campaign Recount Petition*, Wis. Elections Comm'n, available at https://elections.wi.gov/sites/elections/files/2020-11/Trump%20Campaign%20Recount%20Petition.pdf.

[10] *See County by County Report*, *supra*, n.4.

[11] *See* https://wiseye.org/2020/11/30/wisconsin-elections-commission-2020-presidential-canvass-and-determination-of-recount-results/.

[12] *See* https://www.archives.gov/files/electoral-college/2020/ascertainment-wisconsin.pdf.

3

of the circuit court can in turn seek review by the Wisconsin Court of Appeals. *See* Wis. Stat. § 9.01(6)–(9). This set of procedures "constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process." Wis. Stat. § 9.01(11).

When the Trump-Pence campaign filed separate circuit court actions in Dane and Milwaukee Counties, the Chief Justice of the Wisconsin Supreme Court consolidated the two actions and designated a single judge to preside over the consolidated case. *See* Wis. Stat. § 9.01(6)(b). On Friday, December 11, 2020, the circuit court affirmed the results of the partial recount. *See Trump v. Biden*, Nos. 2020CV2514 & 2020CV7092 (Milwaukee Cnty. Cir. Ct. 2020). The Trump-Pence campaign immediately appealed to the Wisconsin Court of Appeals and filed an emergency petition for bypass to the Wisconsin Supreme Court, which granted the petition; ordered expedited, simultaneous briefing that evening; held oral argument on Saturday, December 12, 2020; and affirmed the judgment of the circuit court on the morning of Monday, December 14, 2020. *See Trump v. Biden*, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568. The Wisconsin Supreme Court exercised extraordinary nimbleness in accepting, entertaining, and adjudicating the Trump-Pence campaign's appeal of the recount results to reach a final resolution of this exclusive avenue for challenging the results before the statutorily set time for the meeting of the Electoral College at noon on December 14, 2020. *See* Wis. Stat. § 7.75 and 3 U.S.C. § 7.

The recount appeal was far from the only litigation attack on the Wisconsin presidential election results. Trump had earlier unsuccessfully sought review and intervention by the Wisconsin Supreme Court. *See* Order, *Trump v. Evers*, No. 2020AP1971-OA (Wis. Dec. 3, 2020). Other pro-Trump actors had similarly, and similarly unsuccessfully, asked the Wisconsin Supreme Court to take original jurisdiction and overturn the election results. *See* Order, *Wis. Voters Alliance v. Wis.*

4

*Elections Comm'n*, No. 2020AP1930-OA (Wis. Dec. 4, 2020); Order, *Mueller v. Jacobs*, No. 2020AP1958-OA (Wis. Dec. 3, 2020). A Republican voter and Trump himself each brought collateral attacks in federal court, notwithstanding the express exclusivity of the remedy set forth in Wis. Stat. § 9.01. *See Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020), *vacated on remand after appeal dismissed as moot*, No. 20-cv-1771-PP, ECF No. 95 (E.D. Wis. Mar. 16, 2021), *petitions for extraordinary relief denied*, No. 20-859 (U.S. Mar. 1, 2021); *Trump v. Wis. Elections Comm'n*, 506 F. Supp. 3d 620 (E.D. Wis. Dec. 12, 2020), *aff'd*, 983 F.3d 919 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1516 (U.S. Mar. 8, 2021). Other states even sought in vain to have the Supreme Court of the United States set aside Wisconsin's election results. *See Texas v. Pennsylvania*, 141 S. Ct. 1230 (U.S. Dec. 11, 2020).

When Wisconsin's electoral college convened at noon on December 14, 2020, there was no further legal question about and no pending litigation against Wisconsin's presidential election results. (Two additional cases, both ultimately dismissed as frivolous and sanctionable, challenging Wisconsin's results were filed more than a week later. *See Wis. Voters Alliance v. Pence*, 514 F. Supp. 3d 117 (D.D.C. 2021); *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-cv-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021).) In an open meeting broadcast live by Wisconsin Eye, Wisconsin's presidential electors called the roll to ensure all were present, elected a chairperson and a secretary, cast and counted the necessary ballots, and signed the necessary papers. After the meeting, they sent valid, official documents reflecting the lawful disposition of Wisconsin's ten electoral votes to the President of the United States Senate, the Wisconsin Secretary of State, the Archivist of the United States, and the Chief Judge of the United States District Court for the Western District of Wisconsin, as prescribed by 3 U.S.C. § 7. These documents included official copies of the certificate of the presidential electors' votes for Biden

5

and Harris. By these actions, the duly elected presidential electors followed the requirements of state and federal law, carried out the will of Wisconsin's electorate, and advanced American democracy.

At approximately the same time that the duly elected presidential electors were convening at the Wisconsin State Capitol, a separate group of individuals gathered elsewhere in the building. Earlier in the day, these fraudulent electors had assembled at a "secret meeting place" with "armed security."[13] Notwithstanding that pandemic-related restrictions had closed the State Capitol to the public, the fraudulent electors successfully arranged to be admitted to the building, and they were able to secure a room there for their meeting.[14] The fraudulent electors were not duly elected presidential electors for the State of Wisconsin. Accordingly, they had no legal authority to meet at the State Capitol on December 14 nor to purport to act as the duly elected presidential electors for the State of Wisconsin, undertaking duties assigned by law to others.

Although the fraudulent electors learned during their meeting that the Wisconsin Supreme Court had affirmed the results of the partial recount sought by the Trump-Pence campaign, and that Biden's victory in the presidential election in Wisconsin was now settled as a matter of law with no further legal recourse, they nevertheless conducted their meeting, at which they purported to exercise the powers assigned by law to the duly elected presidential electors for the State of Wisconsin.[15] The fraudulent electors falsely certified that they had met at the State Capitol "to perform the duties enjoined upon" them, and that they had cast Wisconsin's ten electoral votes for

---

[13] Fact Check with Bill Feehan, *The Electoral College*, at 04:05–04:22 (Jan. 13, 2021), available at https://omny.fm/shows/fact-check-with-bill-feehan/the-electoral-college.

[14] *Id.* at 04:23–04:36.

[15] *Id.* at 07:04–08:07.

6

Trump and Pence.[16] The document was then transmitted—with a cover memorandum entitled "Wisconsin's Electoral Votes for President and Vice President"—to the President of the United States Senate, the Archivist of the United States, the Wisconsin Secretary of State, and the Chief Judge of the United States District Court for the Western District of Wisconsin.[17]

With fake votes in hand from the fraudulent electors and their counterparts in other swing States, Trump and his allies began exerting pressure on Pence and preparing for January 6, 2021.[18] By casting doubt on the legitimacy of the presidential election, Trump and his allies hoped to persuade state legislators, members of Congress, and Pence that any or all of them should unlawfully override the election results in Wisconsin and other swing States. Numerous members of Congress—all three Defendants here among them—endorsed this strategy.

On January 2, 2021, a group of 11 United States senators and senators-elect issued a statement in which they pledged to object, on January 6, 2021, to the counting of votes from electors from "disputed states," including Wisconsin.[19] The senators were joined by approximately 140 members of the House of Representatives, who indicated that they also planned to object to the counting of votes cast by duly elected presidential electors.[20] The senators claimed, in a joint statement, that "the 2020 election featured unprecedented allegations of voter fraud, violations and

---

[16] *See* https://www.americanoversight.org/american-oversight-obtains-seven-phony-certificates-of-pro-trump-electors.

[17] *Id.*

[18] *See* Alan Feuer, Maggie Haberman & Luke Broadwater, *Memos Show Roots of Trump's Focus on Jan. 6 and Alternate Electors*, N.Y. Times (Feb. 2, 2022), available at https://www.nytimes.com/2022/02/02/us/politics/trump-jan-6-memos.html.

[19] Bill Glauber, *U.S. Sen. Ron Johnson from Wisconsin to Join 10 Others from GOP in Refusing to Certify Electoral College Results*, Milwaukee J. Sentinel (Jan. 2, 2021), available at https://www.jsonline.com/story/news/politics/elections/2021/01/02/ron-johnson-oppose-certifying-joe-bidens-electoral-college-win/4113042001/.

[20] *See* Burgess Everett, *At Least 12 GOP Senators to Challenge Biden's Win*, Politico (Jan. 2, 2021), available at https://www.politico.com/news/2021/01/02/ted-cruz-electoral-college-challenge-453430.

lax enforcement of election law, and other voting irregularities," and they "called on Congress to appoint an Electoral Commission to conduct an emergency 10-day audit of the election returns in the disputed states."[21] In fact, according to security officials who studied the matter across the country—including the Trump Administration's own top cybersecurity expert—the 2020 presidential election was the "most secure in American history."[22] Wisconsin election officials identified only 27 potential cases of voter fraud among nearly 3.3 million votes cast—less than one-thousandth of one percent.[23]

Trump and his allies nevertheless pressed Pence to disregard the votes of the lawfully elected presidential electors from each of the targeted swing States, including Wisconsin, and to count instead the votes of the fraudulent electors, including the Fraudulent Elector Defendants, who had purported to cast those votes on December 14, 2020.[24] The pressure culminated on January 6, 2021. At noon on January 6, 2021, Trump began speaking at a rally near the White

---

[21] Glauber, *supra* n.19 (internal quotation marks omitted).

[22] *See* Stefan Becket, Melissa Quinn, Grace Segers & Caroline Linton, *2020 Election "Most Secure in History," Security Officials Say*, CBS News (Nov. 13, 2020), available at https://www.cbsnews.com/live-updates/2020-election-most-secure-history-dhs/; Zach Budryk, *Krebs Doubles Down After Threat: '2020 Election Was Most Secure in US History,'* The Hill (Dec. 2, 2020), available at https://thehill.com/policy/cybersecurity/528323-krebs-doubles-down-after-threat-2020-election-was-most-secure-in-us/.

[23] *See* Scott Bauer, *27 Possible Voter Fraud Cases in 3 Million Wisconsin Ballots*, AP News (May 21, 2021), available at https://apnews.com/article/donald-trump-wisconsin-election-2020-government-and-politics-daa3ac227c936d7fc038996af6e27cbe.

[24] *See* Dan Barry & Sheera Frenkel, *'Be There. Will Be Wild!': Trump All but Circled the Date*, N.Y. Times (Jan. 6, 2021), available at https://www.nytimes.com/2021/01/06/us/politics/capitol-mob-trump-supporters.html. Trump also placed pressure on Pence personally, telling him that "it would be politically 'damaging' for Pence to refuse to block certification." Kaitlan Collins & Jim Acosta, *Pence Informed Trump That He Can't Block Biden's Win*, CNN (Jan. 5, 2021), available at https://www.cnn.com/2021/01/05/politics/mike-pence-donald-trump-congress-election/index.html.

House.[25] He told his supporters: "We will never give up, we will never concede."[26] And he called on Pence to reject the votes of lawfully elected presidential electors, warning: "Mike Pence, I hope you're going to stand up for the good of our Constitution and for the good of our country. And if you're not, I'm going to be very disappointed in you."[27] Finally, Trump told those at the rally to "walk down to the Capitol" and "demand that Congress do the right thing and only count the electors who have been lawfully slated."[28] Less than an hour later, the attack on the Capitol began.[29]

In the wee hours of the morning of January 7, 2021, after Congress had resumed the work disrupted by the attack on the Capitol, Congress accepted Wisconsin's electoral votes as cast by the state's duly elected presidential electors.[30] Though some have suggested the Wisconsin Legislature can or should rescind those votes,[31] the Legislative Reference Bureau,[32] scholars of

---

[25] Kat Lonsdorf, Courtney Dorning, Amy Isackson, Mary Louise Kelly & Ailsa Chang, *A Timeline of How the Jan. 6 Attack Unfolded—Including Who Said What and When*, NPR (Jan. 5, 2022), available at https://www.npr.org/2022/01/05/1069977469/a-timeline-of-how-the-jan-6-attack-unfolded-including-who-said-what-and-when.

[26] *Transcript of Trump's Speech at Rally Before US Capitol Riot*, AP News (Jan. 13, 2021), available at https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27.

[27] *Id.*

[28] *Id.*

[29] Lonsdorf et al., *supra*, n.25.

[30] Melissa Quinn, Grace Segers, Kathryn Watson, Stefan Becket, Audrey McNamara & Caroline Linton, *Pence announces Biden's victory after Congress completes electoral count*, CBS News (Jan. 7, 2021), available at https://www.cbsnews.com/live-updates/electoral-college-vote-count-biden-victory/.

[31] *See, e.g.*, Shawn Johnson, *Gableman report calls for decertifying 2020 election. The Legislature's nonpartisan lawyers say that's no possible*, WPR (Mar. 1, 2022), available at https://www.wpr.org/gableman-report-calls-decertifying-2020-election-legislatures-nonpartisan-lawyers-say-thats-not.

[32] *See* Wis. Legislative Council, Memo to Senator Kathy Bernier (Nov. 1, 2021), available at http://thewheelerreport.com/wheeler_docs/files/110121bernierlegcouncil_01.pdf.

9

election law,[33] and even prominent Republican lawyers[34] have recognized that there is no legal avenue to accomplish this.

## II. Accountability for those who attempted to subvert Wisconsin's 2020 presidential election is essential.

What is the proper response to the unprecedented effort to subvert the 2020 election, disregard the will of the voters by unilaterally overturning the results of an election held to be valid by the courts, and disrupt America's tradition of peaceful transitions of power? *Amicus* submits that those involved must be held accountable for their actions to ensure that this type of attempted soft coup never again occurs. Accountability can take many forms and can be provided in multiple ways. No one individual, entity, or institution bears sole responsibility for ensuring accountability. The decentralized character of this accountability is itself a reflection of our democratic system, echoing the divisions of responsibilities among different branches of our government, and between federal and state institutions, as well as the interplay of checks and balances to prevent any one actor or institution from exercising too much power.

Decentralization, while a virtue, should not be misinterpreted as an excuse for any person, entity, or institution in a position to impose accountability to dispense with the issue as quickly as possible, assuming that someone else will do what needs to be done. Taking action to protect our democracy from future attempts at subversion of our state and federal laws and democratic institutions is far too important to be treated as a game of hot potato or musical chairs. State and

---

[33] *See, e.g.*, Brittany Shepherd, *Some Republicans continue to push for 'decertification' of 2020 election*, ABC News (Apr. 2, 2022), available at https://abcnews.go.com/Politics/republicans-continue-push-decertification-2020-election/story?id=83794526 ("[L]egal experts agree. After the fact 'decertification' is in no way feasible.").

[34] *See* Molly Beck, *Michael Gableman has promoted decertifying Wisconsin's 2020 election. His own attorney says it's impossible and pointless*, Milwaukee Journal Sentinel (Mar. 24, 2022), available at https://www.jsonline.com/story/news/politics/elections/2022/03/24/michael-gablemans-attorney-james-bopp-says-decertifying-wisconsin-election-is-impossible/7154995001/.

federal officials and institutions alike, as well as institutions and actors in all three branches of our government, bear an obligation to denounce subversion in no uncertain terms and to use the tools they have to ensure that the aftermath of the 2020 election becomes neither a blueprint for the future nor a departure point for those willing to take even more extreme measures to overrule the will of the voters.

That said, it is equally important for accountability to flow through proper, lawful channels. If individuals, entities, or institutions distort or exceed the law in pursuit of accountability, they risk inadvertently advancing the agenda of subverting our democracy. There is—and must be—room for creative application of law to redress the unprecedented actions that followed the 2020 presidential election; the novel nature of those improper actions will necessitate looking at existing authority anew, with an eye toward vindicating its animating principles in light of unanticipated improprieties. But anyone who abandons or distorts the law in an effort, however well intentioned, to address election subversion could themselves violate fundamental principles of democratic governance. No less vital than accountability for those who acted improperly around the 2020 election is careful adherence to norms and law by those who seek to protect our democracy.

Our systems of federalism and separation of powers depend not only on each actor fully and faithfully resolving the issues within their purview, but also on trusting that other actors will properly carry out the tasks that are brought to them. It follows that no one individual, entity, or institution alone bears the brunt of ensuring accountability for those who sought to subvert the voters' will in the 2020 presidential election. Instead, each individual, entity, or institution best contributes by staying within its allocated lane of expertise, playing its part in an overall orchestra of enforcement of laws and norms. To that end, this lawsuit is far from the only ongoing effort at

accountability for those who sought to subvert Wisconsin's 2020 presidential election. Other publicly known efforts include:

- A recent lawsuit against the fraudulent electors and two lawyers who schemed with them, seeking a declaratory judgment, injunctive relief, and monetary damages.[35]

- A pending request for sanctions against those who brought a baseless federal lawsuit in this district attempting to overturn the will of the voters.[36]

- A referral to the Wisconsin Department of Justice and the Dane County District Attorney for investigation and possible criminal prosecution of wrongdoing; to Amicus's knowledge, these referrals remain under active consideration.[37]

- A complaint filed with the Wisconsin Elections Commission seeking a declaration that the fraudulent electors violated state election statutes; the Elections Commission dismissed this complaint, but the matter is pending before the Dane County Circuit Court.[38]

- Existing and forthcoming reports to the Office of Lawyer Regulation, asserting that members of the Wisconsin Bar were involved in attempts to subvert the 2020 presidential election, that their efforts violated their ethical obligations as lawyers, and that they should be sanctioned.

- Ongoing investigation by the Congress's Select Committee to Investigate the January 6th Attack on the United States Capitol, which has been publicly reported to have subpoenaed information from at least two of Wisconsin's fraudulent electors.[39]

- Ongoing investigation by the United States Department of Justice, with public statements from both the Attorney General and the Deputy Attorney General that DOJ is investigating potential criminal violations by those involved in attempts to subvert the 2020 presidential

---

[35] *Penebaker v. Hitt*, No. 22CV1178 (Dane Cnty. Cir. Ct.), complaint available at https://static1.squarespace.com/static/5f88891b1bd57b085dc121d1/t/6282c1ef38cd5812db5d2abf/1652736562020/fraudulent+electors+complaint+may+2022.

[36] *See Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp, ECF No. 97 (E.D. Wis. Mar. 31, 2021).

[37] *See* https://static1.squarespace.com/static/5f88891b1bd57b085dc121d1/t/61f1f141c35b797d833b3145/1643245889247/3SY5801-2022.01.26+-+Law+Forward+letter+to+AG+Kaul+re+fraudulent+votes+%28w+o+exhs%29.PDF; https://static1.squarespace.com/static/5f88891b1bd57b085dc121d1/t/620be7310899a74a3d720e71/1644947250199/2022.02.15+LF+Letter+to+Ozanne+Re+Fraudulent+Electors.pdf.

[38] *Sickel v. Wis. Elections Comm'n*, No. 2022CV884 (Dane Cnty. Cir. Ct.), petition for review filed April 14, 2022.

[39] *See* Molly Beck, *2 Wisconsin Republicans who acted as false electors receive subpoenas from the committee investigating the Jan. 6 attack*, Milwaukee Journal Sentinel (Jan. 28, 2022), available at https://www.jsonline.com/story/news/politics/elections/2022/01/28/jan-6-committee-subpoenas-2-wisconsin-republican-false-electors/9257815002/.

election.[40] A federal grand jury has reportedly been impaneled in Washington, D.C. to hear evidence and consider indictments.[41]

Many of these efforts will be bolstered by, and more efforts may be launched in light of, a series of public hearings beginning next month in which Congress's Select Committee to Investigate the January 6th Attack on the United States Capitol will present the findings from its extensive investigation.

## CONCLUSION

The outcome of the 2020 presidential election, in Wisconsin and nationwide, was clear and definitive, declared by state and federal courts to be final and irreversibly decided. Disdainful of that outcome, several bad actors undertook unprecedented, improper, and unlawful efforts to subvert the will of the voters, even after definitive determinations by courts affirmed the outcome. Many of those efforts focused on Wisconsin. Ensuring that those people who undertook such efforts in Wisconsin are held accountable is essential to preserving our democracy and ensuring that similar improprieties never recur in our state.

Failing to hold bad actors accountable conveys that their actions were acceptable, and it invites similar, or even more extreme, actions in relation to future elections. In pursuing accountability, however, individuals, entities, and institutions must be mindful of their proper roles in applying the law. The ends of accountability do not justify every possible means; all of us must

---

[40] *See* Matt Zapotosky, *Federal prosecutors examine slates that offered Trump electoral votes that Biden won in 2020*, Washington Post (Jan. 25, 2022), available at https://www.washingtonpost.com/national-security/2022/01/25/fake-electors-investigation-justice/; Carrie Johnson, *Garland says the Jan. 6 investigation won't end until everyone is held accountable*, NPR (Mar. 10, 2022), available at https://www.npr.org/2022/03/10/1085016383/garland-says-the-jan-6-investigation-wont-end-until-everyone-is-held-to-account.

[41] *See* Alan Feuer, Katie Benner & Maggie Haberman, *Justice Dept. Widens Jan. 6 Inquiry to Range of Pro-Trump Figures*, N.Y. Times (Mar. 30, 2022), available at https://www.nytimes.com/2022/03/30/us/politics/justice-dept-widens-jan-6-inquiry.html.; Glenn Kirschner, *DOJ Expands Grand Jury Investigation into Fake Electors, Insurrection Planners & Trump Associates*, YouTube (Mar. 31, 2022), available at https://www.youtube.com/watch?v=z8v0DdSVI4Y.

fight back against election subversion in ways consistent with the fundamental principles of democratic governance. Just as the state and federal courts were called upon to uphold those principles in the immediate wake of the 2020 election—and did so—courts are one appropriate venue to ensure accountability now.

Dated: May 24, 2022.

| | |
|---|---|
| s/ *Stacie H. Rosenzweig* | s/ *Douglas M. Poland* |
| Stacie H. Rosenzweig<br>State Bar Number 1062123<br>Attorney for *amicus curiae* Wisconsin<br>　Democracy Campaign<br>HALLING & CAYO SC<br>320 East Buffalo Street<br>Suite 700<br>Milwaukee, Wisconsin 53202<br>Telephone: (414) 271-3400<br>Fax: (414) 271-3841<br>Email: shr@hallingcayo.com | Douglas M. Poland<br>State Bar Number 1055189<br>Attorney for *amicus curiae* Wisconsin<br>　Democracy Campaign<br>STAFFORD ROSENBAUM LLP<br>222 West Washington Avenue, Suite 900<br>Post Office Box 1784<br>Madison, Wisconsin 53701-1784<br>Telephone: (608) 256-0226<br>Fax: (608) 259-2600<br>Email: dpoland@staffordlaw.com |