# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NANCY A STENCIL, et al.,
        **Plaintiffs,**

    v.                            **Case No. 22-C-0305**

RONALD H. JOHNSON, et al.,
        **Defendants.**

## DECISION AND ORDER

Ten Wisconsin citizens have filed this action against Ronald H. Johnson, Thomas P. Tiffany, and Scott F. Fitzgerald. The defendants are members of Wisconsin's delegation to the 117th Congress—Johnson is a U.S. Senator, while Tiffany and Fitzgerald are members of the House of Representatives. The plaintiffs do not seek relief against the defendants in their capacities as members of Congress. Instead, the plaintiffs seek relief against them in their capacities as private citizens who are running for reelection to the 118th Congress. According to the plaintiffs, between November 8, 2020, and January 6, 2021, the defendants engaged in or assisted with an insurrection or rebellion against the United States. Section 3 of the Fourteenth Amendment provides that no person who has previously taken an oath to support the Constitution and has engaged in insurrection or rebellion against the Constitution may hold the office of Senator or Representative in Congress (among other offices). The plaintiffs contend that, because the defendants swore an oath to support the Constitution when they were first elected to Congress and, with respect to Tiffany and Fitzgerald, when they were elected to the Wisconsin Legislature, the defendants' alleged acts of insurrection or rebellion between November 2020 and January 2021 render them ineligible to serve in the 118th Congress.

The plaintiffs seek a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, establishing these matters. The plaintiffs believe that, if the court issues such a declaration, Wisconsin election administrators will remove the defendants' names from the ballots for the primary and general elections to be held later this year. The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

As discussed below, the plaintiffs' suit is procedurally improper. A voter in an election does not have a direct legal relationship with a candidate for office that may be settled through use of the Declaratory Judgment Act. A voter may oppose candidates in the political arena and choose not to vote for them. If a voter believes that a candidate is ineligible for office, he or she may seek legal redress from election administrators. However, a voter may not seek legal relief relating to the candidate's eligibility for office against the candidate directly. The voter may not, for example, seek an injunction to prevent the candidate from continuing his candidacy. Similarly, if a candidate believes that a matter relating to his or her eligibility for reelection must be settled, the candidate may seek legal redress against election officials, but not against individual voters or the entire voting population of a district. Given the absence of a legal relationship between the parties to this action, any resolution of their dispute over whether the defendants would be ineligible to hold office if reelected would be an improper use of the Declaratory Judgment Act. For these and other reasons to be discussed below, the defendants' motions to dismiss will be granted. Because the action will be dismissed on procedural grounds, I express no view on the merits of the plaintiffs' allegations that the defendants engaged in an insurrection or rebellion against the United States.

2

# I. BACKGROUND

The plaintiffs allege that the events surrounding the Joint Session of Congress on January 6, 2021, amounted to an insurrection or rebellion and that the defendants' conduct between the time of the presidential election in November 2020 and the Joint Session of Congress on January 6 amounted to participation in or assistance with the insurrection. (Compl. ¶ 3.) Through this lawsuit, the plaintiffs seek to establish their allegations and have the court declare that the defendants engaged in or aided an insurrection and therefore are prevented from holding office by Section 3 of the Fourteenth Amendment, which provides as follows:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const., amend. XIV, § 3.

The defendants have moved to dismiss the complaint on various grounds, including that the plaintiffs lack standing under Article III of the Constitution to seek relief in federal court, that any decision by this court would be an advisory opinion, and that the Declaratory Judgment Act does not authorize the plaintiffs' suit.[1]

_____

[1] In addition to the defendants' two motions to dismiss, various other motions are before the court, including requests by nonparties to file briefs as *amici curiae* and motions by the plaintiffs for oral argument, for expedited discovery, and for leave to file a response to an *amicus* brief. The motions to file *amicus* briefs and a response, as well as the motion for oral argument, will be denied because the issues are adequately presented by the

3

## II. DISCUSSION

The Declaratory Judgment Act provides in relevant part that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). For a suit for declaratory relief to be proper, it must be "definite and concrete, touching the legal relations of parties having adverse legal interests," must "be 'real and substantial,'" and must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* The Supreme Court has summarized the general requirements as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

In the present case, it is important to emphasize several prerequisites to a federal court's entertaining a suit under the Declaratory Judgment Act. First, as previously noted, the court may exercise jurisdiction only if the dispute qualifies as a "Case" or

---

parties' briefs. Because I am granting the defendants' motions to dismiss, the motion for expedited discovery will be denied as moot.

"Controversy" under Article III. Although the case-or-controversy requirement encompasses several legal doctrines, the doctrine most relevant to the present case is that of standing, which consists of three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the conduct complained of—the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561.

The second relevant prerequisite to a suit for declaratory relief is an independent source of federal jurisdiction. The Declaratory Judgment Act is "procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna*, 300 U.S. at 240). Although in passing the Act "Congress enlarged the range of remedies available in the federal courts," it "did not extend their jurisdiction." *Id.* Thus, a plaintiff seeking to obtain a declaratory judgment in federal court must identify a separate source of federal subject-matter jurisdiction. *See, e.g., DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009). Typically, that means showing either that the requirements of diversity jurisdiction are met, *see* 28 U.S.C. § 1332, or that a suit for coercive (*i.e.,* non-declaratory) relief involving the matter at issue would arise under federal law, *see* 28 U.S.C. § 1331.

A prerequisite that is closely related to the need for an independent jurisdictional source is "the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S.

5

666, 677 (1960). This requirement has been interpreted to mean that a party may not bring an action for declaratory relief if that party would not otherwise have a private cause of action. *See Alarm Detection Systems, Inc. v. Orland Fire Protection Dist.*, 929 F.3d 865, 871 n.2 (2019).

Finally, the Supreme Court has instructed that the Declaratory Judgment Act cannot be used to "carve out" or "lift[]" legal issues from a comprehensive suit for coercive relief or a state or federal administrative proceeding. *Calderon v. Ashmus*, 523 U.S. 740, 746–49 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246–47 (1952). Thus, a suit for declaratory relief may not amount to no more than a request for an advanced ruling on a matter of federal law that might be relevant in a separate proceeding. *Calderon*, 523 U.S. at 747.

As discussed in more detail below, the plaintiffs' suit for declaratory relief satisfies none of the above prerequisites. First, the plaintiffs do not have Article III standing because the challenged conduct of the defendants—seeking reelection to public office—does not invade any legally protected interests of the plaintiffs. Second, there is no independent source of federal jurisdiction. Although the plaintiffs seek a ruling on a question of federal law—whether the defendants are ineligible for membership in the 118th Congress by virtue of Section 3 of the Fourteenth Amendment—that question could only be raised against the defendants in their capacities as candidates for office in a proceeding brought under state ballot-access laws. Because the federal issue arises in the context of a state-law claim, there is no jurisdiction under § 1331. Third, even if the presence of the federal issue within the state-law claim could confer federal jurisdiction, here there is no state-law claim that the plaintiffs could bring against the defendants in

6

any court. The claim, if it exists at all, belongs to Wisconsin election administrators, and therefore the plaintiffs have no judicially remediable right that could be affected by issuance of a declaratory judgment. Finally, even if the plaintiffs could bring a private action in state court or in a state administrative agency against the defendants to block their access to the ballot, the present suit for declaratory relief represents an attempt to lift or carve out the Fourteenth Amendment issue from that separate action and obtain an advance ruling on the question of federal law. For all these reasons, the plaintiffs' complaint must be dismissed.

## A.     Standing

As I have already indicated, the doctrine of standing requires a plaintiff to establish three elements that are regarded as an "irreducible constitutional minimum": (1) injury in fact, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 560–61. I will focus on the first element—injury in fact—because it is dispositive.

I begin by noting that the plaintiffs, as the proponents of federal jurisdiction, have the burden to prove the elements of standing. *Id.* at 561. These elements must be proved with the manner and degree of evidence required at the successive stages of the litigation. *Id.* This case is at the pleading stage, and so the injury-in-fact element could be satisfied only if the plaintiffs' complaint contained "sufficient factual allegations of a legally cognizable injury resulting from the defendants' conduct." *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 695 (7th Cir. 2018) (quoting *Diedrich v. Ocwen Loan Serv., LLC*, 839 F.3d 583, 588 (7th Cir. 2016)). Here, the plaintiffs concede that their complaint contains no such allegations. However, in response to the defendants' motions to dismiss, the plaintiffs submitted declarations in which they each outline why they think they have been

7

injured by the defendants' conduct. The plaintiffs ask that I consider these declarations and, if necessary, grant them leave to amend their complaint to include the factual averments they make in their declarations.

In their declarations, the plaintiffs claim that they are harmed by the defendants' conduct because, so long as the defendants are candidates for office, the plaintiffs will choose to devote time and effort that they would otherwise spend on other matters to opposing the defendants' candidacies and the views they espouse. No declaration precisely identifies the specific actions that a plaintiff is now taking in response to the defendants' candidacies and that he or she would discontinue upon the defendants' being deemed ineligible for reelection. However, the gist of each declaration is that the plaintiff spends time debating political issues and/or engaging in political advocacy and that some of that time has been devoted to explaining to other members of the public that the claims that the defendants have made about the results of the 2020 presidential election are inaccurate. The following excerpt from the declaration of plaintiff Nancy A. Stencil is typical:

> I joined this lawsuit because I wish to see our democracy thrive. All my political work (both partisan and non-partisan) has been compelled by the belief that our democracy is in peril. Ron Johnson, Tom Tiffany, and Scott Fitzgerald have repeatedly spread "The Big Lie" of election fraud in Wisconsin, planting the seed of doubt in our elections, making citizens think their vote does not count. I have worked with other citizens in my area to counter that lie. I have watched election recounts, and then written articles and letters, as well as speaking [sic] about how elections work to try to restore faith in our electoral process. Our elections are counted professionally, with the utmost care by our very own neighbors. The proof is in the results*: the recount totals stayed nearly the same as the original election results*. Yet Defendants continue to ignore these facts, time and again spreading their blatantly dishonest rhetoric, continuing to plant doubt in the very foundation of our democratic system. If they continue spewing these lies, and if they are allowed to remain on the ballot, I will have to

continue to work to counter their conduct to protect citizens' trust—and participation—in our elections.

(Decl. of Nancy A. Stencil ¶ 4.) Stencil states that, if the defendants were disqualified from serving in Congress, she would devote her energies to fighting for clean water for her family and future generations. (*Id.* ¶ 5.)[2]

The plaintiffs' expenditure of time and effort in opposition to the defendants' candidacies for reelection is not the kind of injury in fact that produces standing under Article III. The problem is that this injury is not "particularized"; it amounts to no more than a generally available grievance. The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. In the present case, because the plaintiffs sue the defendants in their capacities as candidates rather than as elected officials, the plaintiffs are not technically raising a generally available grievance *about government*. However, the overarching principle is the same. Every

---

[2] It is arguable that the plaintiffs' injuries are being caused by the allegedly false statements of the defendants and others not before the court, rather than by the defendants' candidacies. That is, the plaintiffs state that they have diverted time and effort to combating the "Big Lie." (Stencil Decl. ¶ 4.) Even if the defendants were disqualified from office, they and others could continue spreading what the plaintiffs regard as lies about the 2020 election. Nonetheless, because the plaintiffs' alleged injury does not confer standing even if it is being caused by the defendants' candidacies, I will assume without deciding that if the defendants were declared ineligible for reelection, the plaintiffs could devote at least a little less of their time and effort to addressing false statements about election integrity. *See Sierra Club v. Franklin Cnty. Power of Ill.*, 546 F.3d 918, 925 (7th Cir. 2008) (injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice).

9

citizen and voter could claim to have suffered the same injury as the plaintiffs here, which amounts to nothing more than engaging in political advocacy against candidates for office or issue advocacy against the views the candidates hold. The relief that the plaintiffs seek would no more directly and tangibly benefit them than it would the public at large.

The plaintiffs correctly note that a widely shared injury *can* support standing, such as when a plaintiff is denied information that is supposed to be available to the public under the Freedom of Information Act ("FOIA"). *See, e.g., Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989). But the problem with the plaintiffs' injury is not that it is widely shared; it is that the same injury could be asserted by all members of the public who are in any way opposed to the defendants' candidacies or views. In the FOIA context, only those members of the public who actually request records and are denied information suffer injury. *See id*. at 449 ("Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records."). The fact that other citizens might make the same request does not defeat standing, for not every citizen in the country will make the same request. *Id*. at 450. But here, virtually any member of the public could claim to have spent at least some time debating political issues or engaging in political activities that touch upon the defendants' candidacies or views. There is simply no fact that distinguishes the plaintiffs from any other member of the public, and thus their suit raises only a generalized grievance. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019) ("For a harm to be particularized, [t]here must be some connection between the plaintiff and the defendant that differentiates the plaintiff so that

10

his injury is not common to all members of the public." (Internal quotation marks omitted)).[3]

The plaintiffs note that expenditure of time and effort has been recognized as a basis for conferring standing on organizational plaintiffs, *see Common Cause Ind. v. Lawson*, 937 F.3d 944, 952–53 (7th Cir. 2019); *Crawford v. Marion Cnty. Elec. Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), and they contend that the same rule should apply to non-organizational plaintiffs. But the plaintiffs' claimed expenditure of time and effort is not equivalent to the kinds of expenditures that confer standing on organizational plaintiffs. In the organizational-standing context, it is the organization's expenditure of resources to comply with or overcome a challenged law or practice that confers standing. For example, in the cases the plaintiffs cite, the organizations expended resources to overcome burdens placed on their operations by the challenged laws. The plaintiff in *Common Cause* was an organization that assisted with voter registration, and it challenged an Indiana law that made it harder for voters to remain registered. 937 F.3d at 951. The organization had standing because, so long as the challenged law was on the books, it caused the organization to expend additional resources helping voters remain registered. *Id.* The organizational plaintiff in *Crawford* was the Democratic Party, and it challenged an Indiana law that required voters to present a photo ID to vote. *Crawford*, 472 F.3d at 950–51. The Seventh Circuit determined that the challenged law injured the Democratic

---

[3] Although the plaintiffs might claim that their political opposition to the defendants is intensely felt and that this distinguishes them from other members of the public, that claim would be insufficient, for the Supreme Court has made clear that "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982).

Party "by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote." *Id.* at 951.

In the present case, the plaintiffs' claimed expenditure of time and effort is not equivalent to the expenditures in cases such as *Common Cause* and *Crawford* because it amounts to an expenditure of resources on political or issue advocacy. Even in organizational-standing cases, courts have made clear that an expenditure of resources on general political opposition to a law or practice is not an injury in fact. In *Common Cause*, the Seventh Circuit stated that it had "no problem ruling out standing for lobbying efforts in Indiana's legislature [to repeal the challenged law]." 937 F.3d at 956. And the First Circuit has determined that an organization's expenditure of resources on educating and informing members of the public about why the defendant's challenged practice was unlawful was not an injury in fact. *Equal Means Equal v. Ferriero*, 3 F.4th 24, 29–31 (1st Cir. 2021). These cases show that although an organization's expenditure of resources on *complying* with a challenged law or practice can confer standing, its expenditure of resources on political or issue advocacy against the law or practice itself cannot. The plaintiffs' expenditure of resources in this case involves general political advocacy against the defendants and their views, and therefore it would not qualify as an injury in fact even if the rule from organizational-standing cases were extended to individual plaintiffs.

In addition to their claim that their expenditure of time and effort confers standing, the plaintiffs contend that they have standing because this suit "implicate[s] their First Amendment right to petition for redress of grievances." (Pls.' Br. in Opp. to Tiffany & Fitzgerald at 9.) This argument is hard to understand. The defendants' conduct in seeking

12

reelection to Congress does not in any way implicate the plaintiffs' First Amendment rights. The defendants are being sued in their capacities as private citizens running for office, not as government officials, and so their conduct does not even trigger First Amendment scrutiny. *See, e.g., Manhattan Cmty. Access Corp. v. Halleck*, __ U.S. __, 139 S. Ct. 1921, 1930 (2019) (a "private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor"). Further, the defendants' running for office does not interfere with the plaintiffs' right to petition the government for redress of their grievances. The defendants have not personally interfered with the plaintiffs' efforts to file complaints or grievances in any forum.

The plaintiffs seem to invoke the First Amendment as a basis for standing because, in a case involving Marjorie Taylor Greene's attempt to enjoin a state administrative proceeding relating to her ballot eligibility, a district court observed that Greene's lawsuit "wholly ignores citizens' own First Amendment rights to file complaints regarding the operation of the electoral process that the Challenge Act recognizes." *Greene v. Raffensperger*, __ F. Supp. 3d __, 2022 WL 1136729, at *18 (N.D. Ga. 2022). But again, while the plaintiffs may have a First Amendment right to file complaints about the operation of the electoral process, the defendants' running for office or making false statements about election integrity does not interfere with that right. Unlike Marjorie Taylor Greene, the defendants have not tried to block the plaintiffs from using an appropriate forum to question their eligibility for reelection.

I also note that this case is different from the federal lawsuit involving a Section 3 challenge to Madison Cawthorn's eligibility for reelection in North Carolina. *See Cawthorn v. Amalfi*, __ F.3d __, 2022 WL 1635116 (4th Cir. 2022). Like the case involving Marjorie

13

Taylor Greene, Cawthorn's case began when citizens filed a challenge to his ballot eligibility with state election administrators. Cawthorn then filed a federal lawsuit alleging that the state challenge procedures were unconstitutional, and he sought to enjoin state election officials from entertaining the challenge. *Id.*at *2. In contrast, the defendants here have not tried to prevent the plaintiffs from filing a challenge to their ballot eligibility with the appropriate state administrators. The plaintiffs have simply decided not to file such a challenge.

In short, the plaintiffs have not demonstrated that the challenged conduct of the defendants—running for reelection—has caused them to suffer an invasion of a legally protected interest that is concrete and particularized. They therefore have not demonstrated the first element of Article III standing or shown that their request for declaratory relief involves a "case of actual controversy," as required by § 2201(a). For that reason alone, their complaint must be dismissed.

## B.      Independent Source of Jurisdiction/Judicially Remediable Right

A second defect in the plaintiffs' attempt to use the Declaratory Judgment Act is that they have not demonstrated that their dispute with the defendants would fall within a statutory grant of federal subject-matter jurisdiction. In their complaint, the plaintiffs allege that jurisdiction is proper under 28 U.S.C. § 1331 "because the case involves issues of federal law," namely, issues involving Section 3 of the Fourteenth Amendment. (Compl. ¶ 27.) However, a case does not fall within the scope of § 1331 whenever it involves issues of federal law. Instead, jurisdiction under that statute is generally conferred only when federal law creates the cause of action asserted. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Here, the plaintiffs encounter two problems. The first is that, properly

14

understood, the plaintiffs' claim does not arise under Section 3 of the Fourteenth Amendment but under a state statute that determines when a candidate's name may appear on a ballot. Thus, any cause of action that the plaintiffs might have would be created by state rather than federal law. The second problem is that the state statute at issue does not create a cause of action that a citizen and voter may bring against a candidate directly. Thus, the plaintiffs do not have any judicially remediable right at all, much less one that arises under federal law.

When assessing whether a federal court has jurisdiction over a request for declaratory relief, courts generally ask whether a suit for coercive relief relating to the matter at issue would arise under federal law. *See DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009) (in suits for declaratory relief, "jurisdiction depends upon the nature of the anticipated claims"). In the present case, the plaintiffs do not identify any federal cause of action for coercive relief, such as an injunction, that they could bring against the defendants in their capacities as candidates for reelection. The plaintiffs do not, for example, contend that Section 3 of the Fourteenth Amendment creates a cause of action to enjoin a candidate from seeking reelection to an office for which he or she is ineligible.[4] Nor do the plaintiffs identify any federal cause of action for coercive relief that the defendants could bring against them. *See GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) (noting that when plaintiff brings anticipatory suit for

---

[4] The plaintiffs note that a cause of action for an injunction will lie against a state or federal officer who is committing an ongoing violation of federal law. (Pls.' Br. in Opp. to Johnson at 7–8 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015)).) But because the plaintiffs have sued the defendants in their capacities as private citizens running for reelection rather than as government officers, that cause of action is not available here.

15

declaratory relief, "jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant"). Because the parties do not have any federal claims for coercive relief that they could assert against each other, the ordinary basis for federal-question jurisdiction is not present here.

Instead of pointing to a federal cause of action, the plaintiffs indicate that, if the court grants them the requested declaratory relief, they will take that declaration to the Wisconsin Elections Commission ("WEC") and ask the WEC to enforce a state statute that governs a candidate's ballot eligibility. Here, the plaintiffs point to Wis. Stat. § 8.21, which requires a candidate to file a declaration of candidacy before his or her name may appear on the ballot. The declaration must include, among other things, a sworn statement that the candidate "will . . . qualify for office if nominated and elected." Wis. Stat. § 8.21(2)(c). The plaintiffs contend that if Section 3 of the Fourteenth Amendment renders the defendants ineligible to serve as members of Congress, then the defendants would not "qualify for office if nominated and elected" and would not be eligible for placement on the ballot. (Pls.' Br. in Opp. to Tiffany & Fitzgerald at 14 & n.4.)

The plaintiffs' discussion of Wisconsin law shows that, to the extent the plaintiffs have a cause of action against the defendants, that cause of action is based on state rather than federal law. The plaintiffs are essentially seeking to enforce Wisconsin statutes that determine when a candidate's name may appear on a ballot. Although the plaintiffs' theory as to why the defendants are ineligible for the ballot is based on the Fourteenth Amendment, the mere presence of a federal issue within a broader state-law claim does not automatically transform the claim into one arising under federal law for purposes of § 1331.

16

That said, there is a "special and small category" of cases in which federal-question jurisdiction is proper even though the cause of action finds its origins in state rather than federal law. *See Gunn*, 568 U.S. at 258. Under this category, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Here, the plaintiffs have not attempted to show that these four elements are satisfied. Moreover, because, as I am about to explain, the plaintiffs do not have a cause of action under state law in the first place, I will not further consider whether the presence of the Fourteenth Amendment issue would cause that cause of action to arise under federal law.

The plaintiffs do not point to any provision of Wisconsin law that grants a citizen or voter a cause of action directly against a candidate through which the citizen or voter could challenge the candidates' ballot eligibility. Instead, the plaintiffs point to a state statute that allows a person to file a complaint with the Wisconsin Elections Commission that alleges a violation of state election laws. (Pls.' Br. in Opp. to Tiffany & Fitzgerald at 14 n.4 (citing Wis. Stat. § 5.05(2m)).) Such a complaint initiates an administrative proceeding in which the WEC will investigate the alleged violation. Wis. Stat. § 5.05(2m)(a). If after investigating, the WEC finds probable cause to believe that a violation has occurred, then it may authorize its administrator to file a civil complaint against the alleged violator. *Id.* § 5.05(2m)(c)6.a. The resulting civil action would be prosecuted in the name of the WEC, and the plaintiffs concede that they would have "no control over the investigation conducted into" the complaint. (Pls.' Br. at 14 n.4.) Any

17

cause of action under Wis. Stat. § 5.05(2m) against the candidates would thus belong to the WEC rather than to individual voters such as the plaintiffs.

The discussion above shows that the plaintiffs do not have a cause of action against the defendants under any law, state or federal. Accordingly, this suit could not fall within the scope of § 1331, as there is no federal cause of action and no state cause of action that could satisfy the four requirements set out in *Gunn* and *Grable & Sons*. The discussion also shows that the plaintiffs are seeking to use the Declaratory Judgment Act to improperly expand the scope of their substantive rights. The plaintiffs could not bring any cause of action for coercive relief against the defendants under any law, and so they have instead asked this court for a declaratory judgment. But the Supreme Court has made clear that "the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Schilling*, 363 U.S. at 677. Similarly, the Seventh Circuit has said that declaratory relief "cannot be pursued without a predicate right of action." *Alarm Detection Sys., Inc.*, 929 F.3d at 871 n.2. Because no such right exists here, the plaintiffs cannot proceed under the Declaratory Judgment Act.

C.    **Carving Out Federal Issues for Advance Ruling**

There is a final problem with the plaintiffs' attempt to use the Declaratory Judgment Act. Even if the plaintiffs could bring a cause of action against the defendants in a state court or a state administrative agency relating to their ballot eligibility, they could not use the Declaratory Judgment Act to lift or carve out the Section 3 issue from that broader controversy and obtain an advanced ruling on it. Two Supreme Court cases make this clear: *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237 (1952), and *Calderon v. Ashmus*, 523 U.S. 740 (1998).

18

In *Wycoff*, a transportation company sought a declaratory judgment against a Utah administrative agency establishing that the company's carriage of goods within and outside the state was all interstate commerce. *Id.* at 244. Although no administrative enforcement action was imminent, the company apparently sought this declaration to discourage the agency from commencing administrative proceedings against it. *Id.* at 246. The Supreme Court determined that, for several reasons, this request for declaratory relief was improper. One reason the Court gave is particularly relevant to the present case. The Court noted that "[s]tate administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact." *Id.* at 247. The Court determined that an "[a]nticipatory judgment by a federal court to frustrate action by a state agency" would violate principles of federalism. *Id.* The Court remarked:

> Is the declaration contemplated here to be *res judicata*, so that the Commission can not hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State Commission before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

*Id.*

Like the plaintiff in *Wycoff*, the plaintiffs here are attempting to lift an issue out of a state administrative proceeding before it could be considered by the state agency. As discussed above, the plaintiffs wish to obtain an advance ruling on the question of whether the defendants engaged in insurrection or rebellion under Section 3 of the Fourteenth Amendment and then take that ruling to the Wisconsin Elections Commission for enforcement. But under Wisconsin law, the WEC has the right to investigate ballot-eligibility issues and make its own findings and conclusions. *See* Wis. Stat. § 5.05(2m).

19

The plaintiffs state that they "did not bring this challenge before the WEC in the first instance because they have no rights to discovery under Wis. Stat. § 5.05(2m) and no control over the investigation conducted into a complaint under [that statute]." (Pls.' Br. in Opp. to Tiffany & Fitzgerald at 14 n.4.) This is essentially an admission by the plaintiffs that they have come to federal court because they wish to do an end-run around the state administrative process. Under *Wycoff*, the plaintiffs cannot use the Declaratory Judgment Act for this purpose.

A related point is that the plaintiffs cannot extract the Fourteenth Amendment issue from any cause of action that might arise under state ballot-eligibility statutes and obtain an advance ruling on it. This is made clear by the Supreme Court's decision in *Calderon*. In that case, a California capital prisoner sought to bring a class action composed of similarly situated prisoners and obtain a declaratory judgment establishing that California did not qualify for certain advantages available to states in federal habeas corpus cases subject to the Antiterrorism and Effective Death Penalty Act of 1996. *Calderon*, 523 U.S. at 743. The prisoner intended to obtain this advance ruling and then use it in a separate action seeking a writ of habeas corpus. The Supreme Court described the relationship between the prisoner's two contemplated actions as follows:

> The underlying "controversy" between [California officials] and [the prisoner] is whether [the prisoner] is entitled to federal habeas relief setting aside his sentence or conviction obtained in the California courts. But no such final or conclusive determination was sought in this action. Instead, [the prisoner] carved out of that claim only the question whether, when he sought habeas relief, California would be governed by Chapter 153 or by Chapter 154 in defending the action. Had he brought a habeas action itself, he undoubtedly would have obtained such a determination, but he seeks to have that question determined in anticipation of seeking habeas so that he will be better able to know, for example, the time limits that govern the habeas action.

20

*Id.* at 746. The Court held that the prisoner could not use the Declaratory Judgment Act for this purpose. The Court recognized that the prisoner was using the Declaratory Judgment Act to "gain a litigation advantage" by obtaining an advance ruling on certain aspects of a future suit, rather than to resolve an entire case or controversy. *Id.* at 747. The Court emphasized that the disruption such a declaratory action would cause illustrated the need "to prevent federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution." *Id.* at 748.

In the present case, the plaintiffs are attempting to do what the Supreme Court forbade in *Calderon*. To the extent there is any underlying controversy between the plaintiffs and the defendants,[5] that controversy can be completely resolved only in proceedings before the Wisconsin Elections Commission. For it is the WEC that has control over the ballot and is empowered to remove the defendants' names from it.[6] But the plaintiffs have brought this action for declaratory judgment to obtain an advance ruling

---

[5] In fact, as I have discussed, there is no controversy between the plaintiffs and the defendants because they do not have any legal rights that could be asserted against each other. Any controversy that existed would be between the plaintiffs and the WEC or the WEC and the defendants over the contents of the ballot.

[6] The plaintiffs raise the possibility of the defendants' voluntarily withdrawing from ballot eligibility if they lose this case and suggest that this means that complete resolution of the controversy is possible in this action. (Pls.' Br. in Opp. to Fitzgerald & Tiffany at 22.) But what if the plaintiffs lose this case on the merits? Because the WEC is not a party to this action, any decision by this court in the defendants' favor would not bind the WEC. Thus, an adverse judgment in this case would not preclude the plaintiffs (or other voters who wish to challenge the defendants' eligibility) from bringing a fresh challenge to the defendants' eligibility with the WEC that would continue the controversy. The defendants' inability to enjoy the preclusive effect of a judgment in their favor on the merits is yet another reason why this action for declaratory relief is improper.

21

on a single issue that would arise in that broader controversy. By their own admission, the plaintiffs have brought the separate action to gain litigation advantages not available to them in proceedings before the WEC, such as discovery and control over the proceedings. (Pls.' Br. in Opp. to Tiffany & Fitzgerald at 14 n.4.) Allowing the plaintiffs to proceed with this action would, of course, disrupt the WEC's ability to administer Wisconsin election laws. Under *Calderon*, the plaintiffs cannot "carve out one issue in the dispute for separate adjudication." 523 U.S. at 749. Accordingly, for this reason also, the plaintiffs' complaint for declaratory relief must be dismissed.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) (ECF Nos. 19 & 21) are **GRANTED**. This action will be dismissed without prejudice because it does not present a case of actual controversy within the court's jurisdiction that could be adjudicated under the Declaratory Judgment Act. The defendants' alternative motion to dismiss the complaint under Rule 12(b)(6) is moot.

**IT IS FURTHER ORDERED** that the motions to file briefs as *amici curiae* (ECF Nos. 15, 38 & 45) are **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for leave to file a response to an *amicus* brief (ECF No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for oral argument (ECF No. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for expedited discovery (ECF No. 48) is **DENIED** as moot.

22

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of June, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge